Raul Perez (SBN 174687)
Raul.Perez@capstonelawyers.com
Melissa Grant (SBN 205633)
Melissa.Grant@capstonelawyers.com
Arnab Banerjee (SBN 252618)
Arnab.Banerjee@capstonelawyers.com
Alexandria Witte (SBN 273494)
Alexandria.Witte@capstonelawyers.com
Capstone Law APC
1840 Century Park East, Suite 450
Los Angeles, California 90067
Telephone:   (310) 556-4811
Facsimile:    (310) 943-0396

[*Additional Attorneys' names follow caption page*]

Attorneys for Plaintiffs Roger Al-Chaikh,
Carolyn Salazar, Estela Slikker, Shirley Wright,
Scarleth Diaz, Jean Thompson, Kiaone Dillon,
Joshua Groce, Michael Clark, Wendy McWilson,
Tyler Nicholes, Latoya Stewart, and Janet Rebholz in association with those
listed below, individually and on behalf of all employees similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVAN HIGHTOWER and ANN ROSS, individually and on behalf of other individuals similarly situated<br><br>Plaintiffs,<br><br>vs.<br><br>JPMORGAN CHASE BANK, N.A., and DOES 1-10, Inclusive,<br><br>Defendants.<br><br>CAROLYN SALAZAR, ROGER AL-CHAIKH, and ESTELA SLIKKER, individually, and on behalf of all other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>JPMORGAN CHASE BANK, N.A.; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No.:  2:11-cv-01802-PSG-PLA<br><br>Related Action:<br><br>2:11-cv-03428-PSG-PLA<br><br>[Assigned for all purposes to Hon. Philip S. Gutierrez]<br><br>CLASS ACTION<br><br>**FOURTH AMENDED CONSOLIDATED CLASS ACTION COMPLAINT:**<br><br>(1)  Violation of Fair Labor Standards Act (29 U.S.C. § 216(B));<br>(2)  Failure to Pay Overtime Compensation in Violation of Cal. Labor Code § 1194 *et seq.*;<br>(3)  Failure to Pay Minimum Wages in Violation of Cal. Labor Code §§ 1194, *et seq.*;<br>(4)  Violation of California Labor Code §§ 226.7 and 512(a) (Unpaid Meal Period Premiums);<br>(5)  Violation of California Labor Code |

REGINA M. SIMPSON and REGINA STURDIVANT, individually, on behalf of themselves, all others similarly situated, and on behalf of the general public;

                Plaintiffs,

      vs.

JPMORGAN CHASE BANK, a New York corporation; JPMORGAN CHASE & CO., a Delaware corporation; CHASE HOME FINANCE LLC, a Delaware limited liability company; and DOES 1 to 10, inclusive,

                Defendants.

DENNIS KHUTORETSKY, MIKHAIL LIRMAN, BORIS SHULMAN, MARLENA GELBART, and MALCOLM SWEET, on behalf of themselves and all others similarly situated,

                Plaintiffs,

      vs.

J.P. MORGAN CHASE & CO., and J.P. MORGAN CHASE BANK, N.A.

                Defendants.

TANESHA GUNN, on behalf of herself and all others similarly situated,

                Plaintiff,

      vs.

JPMORGAN CHASE & CO., and JPMORGAN CHASE BANK, N.A.

                Defendants.

§ 226.7 (Unpaid Rest Period Premiums);

(6) Failure to Reimburse Business Expenses in Violation of Cal. Labor Code §§ 2800, 2802;

(7) Forfeiture of Vacation Pay in Violation of Cal. Labor Code § 227.3;

(8) Failure to Furnish Accurate Wage Statements Upon Payment of Wages in Violation of Cal. Labor Code § 226;

(9) Failure to Pay Compensation Upon Discharge in Violation of Cal. Labor Code §§ 201-203;

(10) Violation of Cal. Business & Professions Code § 17200, *et seq.*;

(11) Penalties Under California Labor Code § 2698 *et seq.* ("PAGA");

(12) Failure to Pay Overtime in Violation of New York Comp. Codes. R. & Regs. Tit. 12, § 142-2.2;

(13) Failure to Pay Wages in Violation of New York Labor Law § 191;

(14) Failure to Reimburse Uniform Costs in Violation of 12 NYCRR 142-2.5(c);

(15) Failure to Provide Meal Periods in Violation of New York Labor Law §162;

(16) Failure to Pay Overtime in Violation of the Illinois Minimum Wage Law, 820 ILCS 105/4a(1);

(17) Failure to Provide Meal Periods in Violation of Illinois Law, 820 ILCS 140/3;

(18) Failure to Pay Overtime in Violation of the Kentucky Wage and Hour Act, KRS Chap. 337;

(19) Failure to Pay Minimum Wages in Violation of the Kentucky Wage and Hour Act, KRS Chap. 337.275;

(20) Failure to Grant Meal Periods in Violation of the Kentucky Wage and Hour Act, KRS Chap. 337.355

(21) Failure to Grant Rest Periods in Violation of the Kentucky Wage and Hour Act, KRS Chap. 337.365

(22) Failure to Pay Wages Timely in Violation of the Kentucky Wage and Hour Act, KRS Chap. 337.020 and 337.055;

(23) Failure to Provide Meal and Rest Breaks in Violation of Washington

MICHELLE T. NGUYEN, an individual, on behalf of herself, and on behalf of all others similarly situated,

Plaintiff,

vs.

JP MORGAN CHASE BANK NA, an unknown business entity, and DOES 1 through 100, inclusive.

Defendants.

Admin. Code 296.126.092; and
(24) Failure to Pay Overtime in Violation of Washington Industrial Welfare law 49.12.130;
(25) Failure to Pay Minimum Wages in Violation of Washington Minimum Wage Act 49.46.005 *et seq.*;
(26) Failure to Pay Wages Timely in Violation of Washington Minimum Wage Act 49.48.010 and Washington Admin. Code 296-126-023;
(27) Failure to Pay Wages in Violation of the Arizona Minimum Wage Act A.R.S. § 23-363;
(28) Failure to Timely Pay Wages in Violation of Ariz. Rev. Stat. §§ 23-351 and 23-353;
(29) Failure to Pay Minimum Wages in Violation of Article X, Section 24 of the Florida Constitution and The Florida Minimum Wage Act §448 *et seq.*;
(30) Failure to Timely Pay Wages in Violation of Louisiana Rev. Stat. Ann. §§ 23:631 and 23:633;
(31) Failure to Pay Wages During Employment in Violation of Michigan Comp. Laws § 408.472;
(32) Failure to Pay Wages Timely Upon Termination in Violation of Michigan Comp. Laws §§408.474 and 408.475;
(33) Failure to Maintain Accurate Wage Records in Violation of Michigan Comp. Laws §408.479(1);
(34) Failure to Pay Overtime Wages in Violation of Michigan Minimum Wage Law § 408.384a and Michigan Workforce Opportunity Wage Act § 408.414a;
(35) Failure to Pay Overtime Wages in Violation of Ohio Minimum Fair Wage Standards Act § 4111.03;
(36) Failure to Pay Minimum Wages in Violation of Ohio Minimum Fair Wage Standards Act § 4111.02;
(37) Failure to Pay Wages During Employment in Violation of Ohio Revised Code § 4113.15;
(38) Failure to Maintain Accurate Wage Records in Violation of Ohio Revised Code § 4111.08;
(39) Failure to Pay Minimum Wages in Violation of Texas Labor Code §

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

62.051;
(40) Failure to Pay Wages Timely Upon
Termination in Violation of Texas
PayDay Act, Texas Labor Code
§61 *et seq;*
(41) Failure to Pay Overtime Wages in
Violation of Wis. Stats. § 103.001
*et seq.* and §109.01 *et seq.* and
Wis. Administrative Code, DWD §
274.03 *et seq*; and
(42) Failure to Pay Minimum Wages in
Violation of Wis. Stats. §§ 104.02
and 104.11 and Wis.
Administrative Code, DWD §§
272.03 and 272.12
(43) Failure to Timely Pay Wages in
Violation of Wis. Stats. § 109.03

**Demand for Jury Trial**

William B. Sullivan (SBN 171637)
yaeckel@sullivanlawgroupllp.com
**SULLIVAN & CHRISTIANI, LLP**
2330 Third Avenue
San Diego, California 92101
Telephone:  (619) 702-6760
Facsimile:  (619) 702-6761

Seeger Weiss LLP
Jonathan Shub (SBN 237708)
jshub@seegerweiss.com
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone:  (215) 564-2300
Facsimile:  (215) 851-8029

Attorneys for Plaintiffs Roger Al-Chaikh, Carolyn Salazar, Estela Slikker, Shirley Wright, Scarleth Diaz, Jean Thompson, Kiaone Dillon, Joshua Groce, Michael Clark, Wendy McWilson, Tyler Nicholes, Latoya Stewart, and Janet Rebholz in association with those listed below, individually and on behalf of all employees similarly situated

Stanley D. Saltzman (SBN 090058)
ssaltzman@marlinsaltzman.com
Louis M. Marlin (SBN 54053)
louis.marlin@marlinsaltzman.com
Marcus J. Bradley (SBN 174156)
mbradley@marlinsaltzman.com
**MARLIN & SALTZMAN, LLP**
29229 Canwood Street, Suite 208
Agoura Hills, California 91301
Telephone:  (818) 991-8080
Facsimile:  (818) 991-8081

Solomon E. Gresen (SBN 164783)
seg@rglawyers.com
Steven V. Rheuban (SBN 48538)
svr@rglawyers.com
**LAW OFFICES OF RHEUBAN & GRESEN**
15910 Ventura Boulevard, Suite 1610
Encino, California 91436
Telephone:  (818) 815-2727
Facsimile:  (818) 815-2737

Attorneys for Plaintiffs Evan Hightower, Ann Ross, Regina M. Simpson and Regina Sturdivant

D. Maimon Kirschenbaum, *Admitted Pro Hac Vice*
maimon@jhllp.com
Denise Schulman, *Admitted Pro Hac Vice*
denise@jhllp.com
**JOSEPH, HERZFELD, HESTER &KIRSCHENBAUM LLP**
233 Broadway, 5th Floor
New York, New York, 10279

1  Telephone:  (212) 688-5640
   Facsimile:  (212) 688-2548
2  David Harrison, *Admitted Pro Hac Vice*
   nycotlaw@gmail.com
3  **HARRISON, HARRISON & ASSOCIATES, LTD.**
   110 Highway 35, 2nd Floor
4  Red Bank, NJ 07701
   Telephone:  (888) 239-4410
5  Facsimile:  (718) 799-9171

6  Michael Malk (SBN 222366)
   mm@malklawfirm.com
7  **MICHAEL MALK LAW OFFICES**
   1180 S. Beverly Drive, Suite 610
8  Los Angeles, CA 90035
   Telephone:  (310) 203-0016
9  Facsimile:  (310) 499-5210

10 Attorneys for Plaintiffs Dennis Khutoretsky, Mikhail Lirman, Boris Shulman, Marlena Gelbart, Malcolm Sweet, and Tanesha Gunn, individually and on behalf
11 of all employees similarly situated

12 Richard E. Quintilone (SBN 200995)
   Jesse M. Bablove (SBN 279886)
13 req@quintlaw.com
   **QUINTILONE & ASSOCIATES**
14 22974 El Toro Road, Suite 100
   Lake Forest, CA 92630-4961
15 Telephone:  (949) 458-9675
   Facsimile:  (949) 458-9679
16
   John D. Trieu (SBN 189198)
17 john@trieulaw.com
   **LAW OFFICES OF JOHN D. TRIEU, APC**
18 9211 Bolsa Ave., Suite 222
   Westminster, CA 92683
19 Telephone:  (714) 892-2154
   Facsimile:  (714) 893-6710
20
   Attorneys for Michelle T. Nguyen, individually and on behalf of all employees
21 similarly situated

22

23

24

25

26

27

28

Plaintiffs, individually and on behalf of all other members of the general public similarly situated, allege as follows:

## NATURE OF THE ACTION

1. This matter is brought as a class action pursuant to Federal Rule of Civil Procedure Rule 23, as well as pursuant to applicable laws of the State of California, the State of New York, the State of Illinois, the State of Arizona, the State of Florida, the State of Kentucky, the State of Louisiana, the State of Michigan, the State of Ohio, the State of Texas, the State of Washington, the State of Wisconsin, and as a collective action pursuant to the Fair Labor Standards Act (29 U.S.C. § 201, et seq.).

2. The named Defendants are part of a conglomerate that form one of the world's largest financial institutions and provides financial services – including banking, lending, credit card, investment advisory and insurance services – to individual and business consumers nationwide.

3. Defendants' policy and practice is to deny earned wages, including overtime pay, to its non-exempt hourly employees at its retail branch facilities throughout the country.  In particular, Defendants require their employees to be present and perform work in excess of eight (8) hours per day and/or 40 hours per work week but fails to pay them overtime accordingly, and further fail to pay for all straight time hours worked.  Also, Defendants require such employees to perform work tasks during unpaid breaks, fails to provide meal and rest breaks, fails to timely compensate employees for all wages earned at termination, fails to reimburse uniform and business expenses, improperly edits time records, and fails to properly and accurately calculate overtime and report wages earned, hours worked, and wage rates.

4. Defendants' deliberate failure to pay its non-exempt employees at its retail branch facilities their earned wages and overtime compensation violates the federal Fair Labor Standards Act ("FLSA"), the California *Labor Code*, the

California *Business & Professions Code*, the New York *Labor Law* (and supporting New York State Department of Labor Regulations), the Illinois Minimum Wage Law, the Kentucky *Wage and Hour Act*, the Washington *Administrative Code* and *Industrial Welfare* law, the Arizona *Minimum Wage Act*, the Florida *Minimum Wage Act,* the Louisiana Wage Payment Act, Michigan's Payment of Wages and Fringe Benefits Act, the Ohio *Minimum Fair Wage Standards Act*, the Texas PayDay Act, and Wisconsin state employment regulations, as well as other state labor laws nationwide.

5.     Plaintiffs, on behalf of themselves and all other similarly situated non-exempt retail branch employees nationwide, bring a collective action claim under § 216(b) of the FLSA against defendants for unpaid overtime compensation.

6.     California Plaintiffs, on behalf of themselves, and on behalf of all non-exempt retail branch employees employed in California, bring a class action claim under Federal Rule of Civil Procedure 23 for unpaid compensation; unpaid overtime  compensation; forfeiture of vacation pay; unreimbursed business expenses; penalties for failing to provide meal and rest periods; failing to provide itemized wage statements; waiting time penalties; penalties under the California Private Attorneys General Act; and other related penalties and damages under the California *Labor Code* and California *Business & Professions Code*.

7.     New York Plaintiffs, on behalf of themselves, and on behalf of all non-exempt retail branch employees employed at any New York location, bring a class action claim under Federal Rule of Civil Procedure 23 for unpaid compensation, unpaid overtime compensation, failing to provide meal periods, and unreimbursed uniform expenses, and seek penalties and damages under the New York *Labor Law* and supporting New York State Department of Labor regulations.

8.     Plaintiff Gunn, on behalf of herself and all non-exempt retail branch

employees employed in Illinois, brings a class action claim under Federal Rule of Civil Procedure 23 for unpaid overtime compensation and failing to provide meal periods, and seeks penalties and damages, including punitive damages, under the Illinois *Minimum Wage Law*.

9.   Plaintiff Shirley Wright, on behalf of herself and all non-exempt retail branch employees employed in Arizona, brings a class action claim under Federal Rule of Civil Procedure 23 for unpaid compensation and for failure to timely pay wages, and to timely pay all wages due upon termination and seeks damages under the Arizona *Minimum Wage Act*.

10.   Plaintiff Scarleth Diaz, on behalf of herself and all non-exempt retail branch employees employed in Florida, brings a class action claim under Federal Rule of Civil Procedure 23 for unpaid compensation and seeks damages and attorneys' fees under the Florida Constitution and Florida *Minimum Wage Act*.

11.   Plaintiff Jean Thompson, on behalf of herself and all non-exempt retail branch employees employed in Kentucky, brings a class action claim under Federal Rule of Civil Procedure 23 for unpaid compensation, unpaid overtime compensation, failing to provide meal and rest periods, and failure to timely pay wages, and to timely pay all wages due upon termination and seeks damages under the Kentucky *Wage and Hour Act*.

12.   Plaintiff Kiaone Dillon, on behalf of herself and all non-exempt retail branch employees employed in Louisiana, brings a class action claim under Federal Rule of Civil Procedure 23 for failure to timely pay wages, and to timely pay all wages due upon termination and seeks damages under Louisiana state law.

13.   Plaintiff Joshua Groce, on behalf of himself and all non-exempt retail branch employees employed in Michigan, brings a class action claim under Federal Rule of Civil Procedure 23 for unpaid overtime compensation, failure to timely pay wages, failure to timely pay all wages due upon termination, and

failure to provide accurate wage statements and seeks damages under Michigan state law, the Michigan *Minimum Wage Law*, and the Michigan *Workforce Opportunity Wage Act*.

14.     Plaintiff Michael Clark, on behalf of himself and all non-exempt retail branch employees employed in Ohio, brings a class action claim under Federal Rule of Civil Procedure 23 for unpaid compensation, unpaid overtime compensation, failure to timely pay wages, and failure to provide accurate wage statements and seeks compensatory and liquidated damages under Ohio state law and the Ohio *Fair Minimum Wage Standards Act*.

15.     Plaintiff Wendy McWilson, on behalf of herself and all non-exempt retail branch employees employed in Texas, brings a class action claim under Federal Rule of Civil Procedure 23 for unpaid compensation, for failure to timely pay wages, and for failure to timely pay all wages due upon termination and seeks damages under the Texas *Minimum Wage Act* and the Texas *PayDay Law*.

16.     Plaintiff Tyler Nichols, on behalf of himself and all non-exempt retail branch employees employed in Washington, brings a class action claim under Federal Rule of Civil Procedure 23 for unpaid compensation, unpaid overtime compensation, failure to provide meal and rest periods, failure to timely pay wages, and failure to timely pay wages at termination and seeks compensatory and exemplary damages under the Washington Administrative Code, Washington Industrial Welfare Law, and Washington *Minimum Wage Act*.

17.     Plaintiffs Latoya Stewart and Janet Rebholz, on behalf of themselves and all non-exempt retail branch employees employed in Wisconsin, bring a class action claim under Federal Rule of Civil Procedure 23 for unpaid compensation, unpaid overtime compensation, failure to timely pay wages, and failure to timely pay all wages due upon termination and seek penalties and damages under Wisconsin state law.

## JURISDICTION AND VENUE

18.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201, *et seq.*  This Court has supplemental jurisdiction for all claims asserted under the California *Labor Code*, the California *Business & Professions Code*, the New York *Labor Law,* the Illinois *Minimum Wage Law,* the Kentucky *Wage and Hour Act*, the Washington *Administrative Code* and *Industrial Welfare* law, the Arizona *Minimum Wage Act*, the Florida *Minimum Wage Act,* the Louisiana Wage Payment Act, Michigan's Payment of Wages and Fringe Benefits Act, the Ohio *Minimum Fair Wage Standards Act*, the Texas PayDay Act, and Wisconsin state employment regulations, in that the claims under these state laws are part of the same case and controversy as the FLSA claims, the state and federal claims derive from a common nucleus of operative fact, the state claims will not substantially dominate over the FLSA claims, and exercising supplemental jurisdiction would be in the interests of judicial economy, convenience, fairness and comity.

19.     Independently, this Court has original jurisdiction for the California, New York, Illinois, Kentucky, Washington, Arizona, Florida, Kentucky, Louisiana, Michigan, Ohio, Texas, and Wisconsin state law claims pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332, in that the estimated damages involved in these claims will exceed $5,000,000 and the parties to this action are residents of different states.

20.     The United States District Court for the Central District of California has personal jurisdiction because Defendants conduct business within this district.

21.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) in that defendants were subject to personal jurisdiction in this district at the time action was commenced and, pursuant to 28 U.S.C. §§ 1391(b)–(c), because a substantial part of the events or omissions giving rise to the claims asserted

1    herein occurred and had their primary effect in this judicial district.

2           22.    The FLSA authorizes Court actions by private parties to recover

3    damages for violations of the FLSA's wage and hour provisions.  Jurisdiction

4    over Plaintiffs' FLSA claims is based upon 29 U.S.C. § 216(b) and 28 U.S.C. §

5    1331.

6                                        **PARTIES**

7           23.    JPMorgan Chase Bank, N.A., ("Chase Bank") is a nationally

8    chartered bank with its main office in Columbus, Ohio.  Chase does business in

9    this judicial district and nationwide.

10          24.    JPMorgan Chase Bank ("JPMorgan") is a New York corporation

11   licensed to do business throughout the State of California.

12          25.    JPMorgan Chase & Co. ("Chase & Co.") is a Delaware corporation

13   with its principal place of business in New York.  Chase & Co. is a financial

14   services company that operates thousands of bank branches in the United States.

15   Chase & Co. is licensed to do business throughout the State of California.

16          26.    Chase Home Finance, LLC ("Chase Home") is a Delaware limited

17   liability company licensed to do business throughout the State of California.

18          27.    Chase Bank, JPMorgan, Chase & Co. and Chase Home are herein

19   collectively referred to as "Chase" or "Defendants."

20          28.    Chase was at all times doing business throughout the state of

21   California and had various offices located in the county of Los Angeles.  Many

22   of the putative class members, including some of the representative Plaintiffs

23   named herein, have been employed during the class period in Los Angeles

24   County.  The practices and policies which are complained of are enforced

25   throughout the state of California, including Los Angeles County.

26          29.    At all relevant times herein, Plaintiff Roger Al-Chaikh was and is an

27   individual domiciled in the county of San Diego, California.  Since July 2009,

28   Mr. Al-Chaikh was employed as a "teller," a non-exempt, hourly position, in

1  Chase Bank's branch offices located in Los Angeles, California.  Mr. Al-
2  Chaikh's employment with Chase Bank continued until May 2010.  Mr. Al-
3  Chaikh performed his job duties in a capable and competent manner.

4      30.    At all relevant times herein, Plaintiff Carolyn Salazar was and is an
5  individual domiciled in the County of Imperial, California.  Since November,
6  2009, Ms. Salazar was employed as a "teller," a non-exempt, hourly position, in
7  Chase Bank's branch office located in Imperial County, California.  Ms.
8  Salazar's employment with Chase Bank continued until September 2010.  Ms.
9  Salazar performed her job duties in a capable and competent manner.

10     31.    At all relevant times herein, Plaintiff Estela Slikker was and is an
11  individual domiciled in the county of Contra Costa, California.  Since, March
12  2011, Ms. Slikker was employed during the class period by Chase Bank as a
13  "Personal Banker," a non-exempt, hourly position, in Chase Bank's branch
14  office in Martinez, located in Contra Costa County, California.  Ms. Slikker's
15  employment with Chase Bank continued until November 2011.  Despite
16  performing her job duties in a capable and competent manner, Ms. Slikker was
17  constructively terminated by Chase.  Accordingly, provided Chase ceases its
18  widespread violations of the federal and state labor laws, Ms. Slikker is
19  interested in returning to work for Chase in the future.

20     32.    At all relevant times herein, Plaintiff Evan Hightower was and is an
21  individual domiciled in the county of Los Angeles, California.  Mr. Hightower
22  was employed during the class period by Chase Bank as a "banker," a non-
23  exempt, hourly position, in Chase Bank's branch office in Marina Del Rey,
24  located in Los Angeles County, California.  Mr. Hightower was originally hired
25  by Washington Mutual in or about April 2007 as a "personal banker."  In
26  September 2008, his title was changed to "banker" and his employment with
27  Chase Bank ended in or about April 2010.

28     33.    At all relevant times herein, Plaintiff Ann Ross was and is an

individual domiciled in the county of Los Angeles, California.  Ms. Ross was employed during the class period by Chase Bank as a "teller," a non-exempt, hourly position, in Chase Bank's branch office located in Los Angeles County, California.  Ms. Ross was originally hired by Washington Mutual in or about April 2006 as a "personal financial representative."  In June of 2009, she became a "teller," a position she held until her employment with Chase Bank ended in or about October 2009.

34.   At all relevant times herein, Plaintiff Regina M. Simpson was an individual residing in California.  Ms. Simpson is a former employee of JPMorgan, Chase & Co. and Washington Mutual Bank, a former division of Chase & Co. and JPMorgan and Chase & Co.'s predecessor-in-interest.  Ms. Simpson worked for JPMorgan and Chase & Co. directly and/or for Washington Mutual Bank continuously in California in a retail branch on a full-time basis from in or about 1998 to in or about February 3, 2009.

35.   At all relevant times herein, Plaintiff Regina Sturdivant was an individual residing in California.  She is a former employee of JP Morgan and Chase Home.  Ms. Sturdivant worked for JPMorgan and Chase Home in California in the capacity of an "REO Specialist" on a full-time basis from in or about May 1, 2006 to in or about May 11, 2007.

36.   At all relevant time herein, Plaintiff Michelle T. Nguyen was and is an individual domiciled in the county of Orange, California.  Ms. Nguyen was hired by Defendant in 1989 and was employed during the class period by Chase Bank as a "Financial Service Representative," "Personal Banker" and "Teller," all non-exempt, hourly positions, in Chase Bank's branch office in Garden Grove, California.  Ms. Nguyen performed her job duties in a capable and competent manner.

37.   Plaintiff Dennis Khutoretsky was employed by Chase Bank as a Personal Banker at two Manhattan branches in New York City, one from in or

around July 2007 until in or around September 2008, and the other from in or around November 2009 until in or around November 2010.

38.     Plaintiff Mikhail Lirman was employed by Chase Bank as a Personal Banker at a midtown Manhattan branch in New York City from in or around June 2006 until in or around April 2008.

39.     Plaintiff Boris Shulman was employed by Chase Bank as a Personal Banker at Chase's 305 Seventh Avenue branch in Manhattan (New York City) from approximately September 2007 until June 29, 2011.

40.     Plaintiff Marlena Gelbart was employed by Chase Bank as a "teller" and/or as a "senior teller" (collectively referred to herein as a "teller") in two different Brooklyn (New York City) Chase branches from in or about 2002 until 2006 and again from approximately August 2010 until May 2011.  Plaintiff Gelbart was also employed by Chase Bank as a Personal Banker at a Chase branch in Brooklyn (New York City) from in or about 2006 until in or about August 2010.

41.     Plaintiff Malcolm Sweet was employed by Chase Bank as a "teller" in a Brooklyn (New York City) Chase branch from in or about late 2008 until March 2010.

42.     Plaintiff Tanesha Gunn was employed by Chase Bank as a Personal Banker at three different Chase locations in Chicago, Illinois from in or around April 2007 until June 2011.

43.     Plaintiff Shirley Wright was employed by Chase Bank as a non-exempt, hourly Teller at two different Chase locations in Phoenix, Arizona from around 1996 until about May 2012.

44.     Plaintiff Scarleth Diaz was employed by Chase Bank as a non-exempt, hourly Teller at from in or around 2007 until 2010 at a Chase branch location in Orange City, Florida.

45.     Plaintiff Jean Thompson was employed by Chase Bank as a non-

1   exempt, hourly Teller at a Chase branch location in Louisville, Kentucky from or
2   around August 2010 until around April 2012.

3          46.    Plaintiff Kiaone Dillon was employed by Chase Bank as a non-
4   exempt, hourly Personal Banker from around February 2008 to June 2008 at the
5   Chase branch locations in Metairie, Louisiana and Terrytown, Louisiana.

6          47.    Plaintiff Joshua Groce was employed by Chase Bank as a non-
7   exempt, hourly Personal Banker from July 2007 to May 2009 at a Chase branch
8   location in Flint, Michigan.

9          48.    Plaintiff Michael Clark was employed by Chase Bank as a non-
10  exempt, hourly Personal Banker and Branch Manager from January 2008 to
11  October 2010 at Chase branch locations in Cincinnati, Ohio and Loveland, Ohio.

12         49.    Plaintiff Wendy McWilson was employed by Chase Bank as a non-
13  exempt, hourly Personal Banker from September 2009 to March 2011 at the
14  Chase branch location in Arlington, Texas.

15         50.    Plaintiff Tyler Nicholes was employed by Chase Bank as a Teller
16  and Personal Financial Representative, both non-exempt, hourly positions, from
17  2003 to 2009 at a Chase branch location in Seattle, Washington.

18         51.    Plaintiff Latoya Stewart was employed by Chase Bank as a non-
19  exempt, hourly Vault Teller/Senior Teller from April 2008 to December 2008 at
20  the Chase branch location in Janesville, Wisconsin.

21         52.    Plaintiff Janet Rebholz has been employed by Chase Bank since
22  1996 at a Chase branch location in Milwaukee, Wisconsin.  Plaintiff Rebholz
23  currently works as a Teller, but has also worked as a Lead Teller, Vault Teller
24  and Personal Banker during her employment with Chase.

25         53.    Salazar, Al-Chaikh, Slikker, Hightower, Ross, Simpson, Sturdivant,
26  Nguyen, Khutoretsky, Lirman, Shulman, Gelbart, Sweet, Gunn, Wright, Diaz,
27  Thompson, Dillon, Groce, Clark, McWilson, Nicholes, Stewart and Rebholz are
28  hereinafter collectively referred to as the "Plaintiffs."  Salazar, Al-Chaikh,

Slikker, Hightower, Ross, Simpson, Sturdivant, and Nguyen are at times referred to as the "California Plaintiffs."  Khutoretsky, Lirman, Shulman, Gelbart and Sweet are also at times referred to as the "New York Plaintiffs," and Gunn is hereinafter referred to as the "Illinois Plaintiff."  Wright is hereinafter referred to as the "Arizona Plaintiff."  Diaz is hereinafter referred to as the "Florida Plaintiff."  Thompson is hereinafter referred to as the "Kentucky Plaintiff." Dillon is hereinafter referred to as the "Louisiana Plaintiff."  Groce is hereinafter referred to as the "Michigan Plaintiff."  Clark is hereinafter referred to as the "Ohio Plaintiff."  McWilson is hereinafter referred to as the "Texas Plaintiff." Nicholes is hereinafter referred to as the "Washington Plaintiff," and Stewart and Rebholz are hereinafter referred to as the "Wisconsin Plaintiffs."

54.     Plaintiffs are presently unaware of the true names, capacities and liability of defendants named herein as DOES 1 through 10, inclusive. Accordingly, Plaintiffs will seek leave of court to amend this Third Amended Consolidated Class Action Complaint to allege their true names and capacities after the same have been ascertained.

55.     Plaintiffs are informed and believe and thereon allege that each of the fictitiously named defendants is responsible in some manner for the wrongs and damages as herein alleged, and in so acting was functioning as the agent, servant, partner, and employee of the co-defendants, and in doing the actions mentioned below, was acting within the course and scope of his or her authority as such agent, servant, partner, and employee with the permission and consent of the co-defendants.  Plaintiffs' injuries as herein alleged were proximately caused by Chase.  Wherever it is alleged herein that any act or omission was done or committed by any specially named defendant or defendants, Plaintiffs intend thereby to allege and does allege that the same act or omission was also done and committed by each and every defendant named as a DOE, both separately and in concert or conspiracy with the named defendant or defendants.

56.     Plaintiffs are informed and believe and thereon allege that Chase, including DOES 1 through 10, are and, at all times herein mentioned, were either individuals, sole proprietorships, partnerships, registered professionals, corporations, alter egos, or other legal entities which were licensed to do and/or were doing business in the states of California, New York, Illinois, Arizona, Florida, Kentucky, Louisiana, Michigan, Ohio, Texas, Washington and/or Wisconsin at all times relevant to the subject matter of this action.

## FACTUAL ALLEGATIONS

57.     Chase is one of the world's largest financial institutions, serving millions of customers worldwide and generating over $100 billion in revenues.[1]

58.     To service the financial needs of its individual and business customers, Chase operates over 5,200 retail locations in 23 states throughout the United States.[2]  Defendants operate these retail locations under the name of "CHASE."

59.     At all relevant times, Chase has been, and continues to be, an *employer* engaged in the interstate *commerce* and or in the production of *goods* for *commerce*, within the meaning of FLSA, 29 U.S.C. § 203.  At all relevant times, Chase has employed, and/or continues to employ *employees*, including each of the Plaintiffs and all putative class members.  At all times relevant herein, each of the Chase defendants has generated gross operating revenues in excess of $500,000, meeting the threshold "enterprise" requirement under the FLSA.

60.     At all relevant times, Chase has been, and continues to be, a "person" as that term is defined under the California *Business & Professions*

---

[1] *See* 2010 Form 10-K Filing, available at:
http://www.sec.gov/Archives/edgar/data/19617/000095012311019773/y86143e10vk.htm#Y86143123

[2] *Id.*

1   *Code* § 17021 and the California *Labor Code* §§ 1–29.5.

2       61.   In its retail branch locations throughout the nation, including

3   California, New York, Illinois, Arizona, Florida, Kentucky, Louisiana,

4   Michigan, Ohio, Texas, Washington and/or Wisconsin, Chase employs non-

5   exempt workers under several job titles, including, but not limited to "Teller,"

6   "Banker," "Sales & Service Associate," and "Assistant Branch Manager –

7   Trainee" (collectively "Retail Branch Employees").

8       62.   These Retail Branch Employees are all classified as non-exempt by

9   Chase and are entitled to receive overtime pay.  Retail Branch Employees are

10  paid an hourly wage, usually based upon a forty hour work week.

11      63.   The primary job of Retail Branch Employees is to assist customers

12  with their banking needs, including: opening and closing the bank branch,

13  counting money, maintaining the cashier's drawer, performing bank transactions

14  (including withdrawals and deposits), offering and selling financial products and

15  services, taking loan applications, and handling other customer service requests.

16      64.   All Retail Branch Employees are similarly situated in that they share

17  common job duties and descriptions and are all subject to Chase's policy and

18  practice that requires them to perform work, including overtime, without

19  compensation.

20      65.   The requirement to work off-the-clock and overtime by Retail

21  Branch Employees was frequent and unavoidable.  Retail Branch Employees

22  were required to work off-the-clock and overtime hours in order to complete

23  their job duties, requiring work to be performed both before and after their

24  scheduled shifts, as well as on their uncompensated meal and rest breaks.  Chase

25  enforced such policies especially when cash discrepancies arose among

26  employees who worked the closing shift.  Specifically, Chase's closing policy

27  required Plaintiffs and employees to remain inside the bank whenever "cash was

28  out of balance"—Chase's common parlance to explain cash shortages.  When

1   this occurred, all closing shift employees were required to remain inside the store

2   under complete control of their employer until the cash discrepancy was

3   satisfactorily addressed.  Retail Branch Employees regularly had to wait at the

4   bank for fifteen (15) to thirty (30) minutes despite being clocked out.  However,

5   Plaintiffs and class members were paid wages only until the conclusion of their

6   shift.  The remainder of the work time Plaintiffs and class members spent inside

7   the bank thereafter was not paid.  As a result of such policy, Plaintiffs and class

8   members were not compensated for minimum wages or overtime.  Chase knew

9   Plaintiffs and class members worked overtime on a regular basis but it

10  discouraged employees from accurately reporting all hours through an

11  oppressive policy and practice that subjected its employees to reprimands or

12  reprisals when they sought approval of overtime hours.  Chase also enforced a

13  practice where bank managers or supervisorial employees responsible for

14  approving timesheets were encouraged to adjust down the overtime hours

15  reflected in Plaintiffs' and class members' timesheets.  Bank managers or

16  supervisorial employees were the only persons with authority to approve and

17  change timesheets to avoid payment of overtime.

18       66.    The identification of the individual class members may be

19  effectuated by reference to Chase records.  The total amount of unpaid wages

20  and/or overtime compensation denied class members during the class period is

21  also readily ascertainable from Chase's records, which have yet to be completely

22  produced by Chase.

23       67.    Retail Branch Employees in California further allege Chase Bank

24  failed to pay all wages due, including overtime compensation, in that Chase

25  Bank managers would erase or modify, or "computer edit," Retail Branch

26  Employees' recorded work hours to avoid the payment of overtime.  This

27  "computer edit" process involved Retail Branch Employees arriving early or

28  staying late (time in excess of eight (8) hours per day and/or forty (40) hours per

week) at the request of either the assistant manager or branch manager.  Upon completion of such early and late work, the assistant manager or branch manager would access Retail Branch Employees' time records, and change the times when Retail Branch Employees clocked in, claiming that they clocked in later than they actually clocked in, or clocked out, claiming that they clocked out earlier than they actually clocked out, for purposes of calculating time worked. This "computer edit" resulted in Retail Branch Employees being underpaid for hours worked in a single time-period, including, for example, in a single work day, and denied all wages due, and, more specifically, overtime compensation.

68.     Chase Bank failed to pay class members all compensation (including overtime compensation) due, in violation of, *inter alia*, the California Labor Code and FLSA.  This failure was caused by and through Defendant's standard and uniform system of accounting and compensation practice. Specifically, after recording time worked, Chase Bank would edit or modify the recorded work-time, transferring the work-time to a different numerical system. The work-time (recorded on a system of 1 to 60 minutes) is transferred to a separate system, based on 1 through 100.  For example, 20 (out of a possible 60) work-minutes will be transferred to a 0.33 (out of a possible 1.00).  This edit process is standard and uniform as to Chase Bank and the classes.  The damage to the classes is caused in the transfer of numerical systems.  For example, if an employee is making $15.00 per hour and works 20 minutes, that employee should receive $5.00 (or exactly one-third of $15).  However, under the Chase Bank system, the employee would receive only $4.95 ($15.00 divided by 100 equals 0.15; 0.15 multiplied by 33 equals $4.95).  This is true because, although 20 is exactly one-third of 60, 33 is not exactly one-third of 100.  Such an underpayment is true for all other pay categories, including, but not limited to, vacation pay and paid time off.

69.     Chase Bank's willful re-calculation of time worked, into a separate

configuration, results in a failure to pay all amounts owing to its employees.  For instance, between April 19, 2010 and May 5, 2010, Plaintiff Salazar worked 5 minutes at her overtime rate of pay.  However, Chase Bank re-calculated the 5 minute amount from a fractional system to a decimal system, calculating 5 minutes as .08 of an hour.  Five (5) minutes is actually 5/60 or .83333 repeating to infinity, of an hour.  Multiplying this by overtime rate shows that Salazar lost five cents of overtime for this pay period, in violation of the FLSA and Labor Code.  For the same pay period, Salazar worked 52 hours and 20 minutes at her regular rate of pay.  Chase Bank re-calculated the 20 minutes as .33 of an hour.  20 minutes is actually 20/60 or .3333 repeating to infinity of an hour.  Multiplying her actual minutes times the regular rate of pay shows that Salazar lost 3 cents for this pay period, in violation of the California Labor Code.

70.    Plaintiffs believe that Salazar's experiences described in the above paragraph are shared amongst the other class members in California insofar as over a period of time Chase's recalculation of time worked failed to compensate employees for all the time they actually worked, in violation of California law which is more protective of employee's rights than federal law.  The identification of the individual class members may be effectuated by reference to Chase records.  The total amount of unpaid wages and/or overtime compensation denied class members during the class period is also readily ascertainable from Chase's records, which have yet to be completely produced by Chase.

71.    Chase Bank did not allow Retail Branch Employees to leave the bank by themselves at the end of their shifts.  Thus, after clocking out for the day at the end of their shifts, Retail Branch Employees had to wait five (5) to ten (10) minutes in the bank for another Retail Branch Employee to accompany them when they left the bank.  This occurred on a regular basis.  This waiting time was not reasonably related to or necessary for any purported security checks.  At all times the Retail Branch Employees remained under the control of Chase.  This

idle waiting time could have been recorded by Chase but it refused to do so to avoid payment of additional wages.  The aggregate amount of unpaid waiting time totalled 25 to 50 minutes a week, or 3 to 4 hours a month. This translates into an additional $30 to $50 a month per employee, and in these hard economic times, such unpaid compensation cannot be characterized as trivial.  None of the above off-the-clock work was ever recorded or compensated.  As described below, Retail Branch Employees were also required to work during their meal and rest periods in violation of applicable state law (if any) and were not paid for this off-the-clock work.  Missed meals and rest breaks occurred several times a week throughout Plaintiffs' employment, often without any compensation or payment of premiums, if required under applicable state law such as California. The total amount of unpaid wages, premiums and/or overtime compensation denied class members during the class period may be readily ascertainable from Chase's records, which have yet to be completely produced by Chase.

72.    Throughout the period of time covered by this lawsuit, Chase has used the same practices, procedures, computer software and forms to set the work for all of its Personal Bankers and tellers throughout the state of New York.

73.    Chase branch/managers in New York have been required to draft and post weekly work schedules for non-exempt employees such as Personal Bankers and tellers.  These schedules set forth Personal Bankers' and tellers' scheduled workdays and work hours.  Managers do not typically schedule Personal Bankers or tellers to work more than 40 hours per week.  "Part-time tellers" were scheduled to work fewer than 40 hours per week.

74.    However, New York Plaintiffs and other similarly situated class members routinely worked in excess of 45-50 hours per week without compensation for their overtime hours.  For example, Plaintiff Khutoretsky estimates that he typically worked 45-55 hours per week without being paid for his overtime hours.  Similarly, Plaintiff Shulman usually worked substantially

more than 40 hours per week, often working 60 hours per week, but was paid for only 40 hours per week.  Part-time tellers like Plaintiff Sweet also worked more hours than they were scheduled for, and they occasionally worked overtime.  However, Plaintiff Sweet was only paid for his scheduled hours, regardless of how many hours he worked, even though Chase agreed to pay him an hourly rate for all hours worked.

75.    The New York Plaintiffs and other Personal Bankers and tellers were often required to work through their lunch-breaks and to remain at work after their scheduled shifts to attend meetings with their branch managers or to deal with customers/clients.

76.    Although Plaintiff Khutoretsky was scheduled to take a one hour lunch break, he was usually only able to take between 5 and 30 minutes for lunch.  His lunch was interrupted almost every day because he would be called on to help a customer.  Plaintiff Lirman's scheduled lunch break was also interrupted – to help with customers or for other work reasons – almost daily. Plaintiff Shulman's lunch was interrupted approximately 3 times a week to attend to a customer or perform other work.  Plaintiff Gelbart's lunch was also interrupted – usually to deal with customers – approximately 2 to 3 times each week.  Plaintiff Sweet's lunch break was also frequently interrupted; due to high volume, his branch manager or the head teller called him back early from his lunch break to return to work.

77.    Every day, Plaintiffs Khutoretsky, Lirman and Shulman were required to attend meetings – called "debriefs" -- with their managers after the end of their scheduled shifts.  These "debriefs" were implemented, and/or required, by Defendants' upper-management for the purpose of  discussing sales figures, goals, and what was going on in each branch and what  the  personal bankers needed to focus on.  These meetings generally lasted between 20 to 30 minutes and 1.5 hours.

78.     The New York Plaintiffs and other Personal Bankers often had to remain at work after their scheduled shifts and sometimes come to work on scheduled days off to engage in additional promotional work for Chase.  The New York Plaintiffs and other Personal Bankers were not paid for the time they worked on such mandatory promotional events.  For example, Plaintiffs Khutoretsky and Lirman were required, along with other Personal Bankers, to attend call nights once a week, usually every Tuesday.  These call nights would last for approximately 2.5 to 3 hours after the end of their shifts.  Plaintiff Shulman also had to attend weekly call nights after his scheduled shift that lasted roughly 2 to 3 hours.  During the call nights, Personal Bankers had to call potential customers to schedule appointments.  However, Plaintiffs Khutoretsky and Lirman and other Personal Bankers were never paid any wages for the time worked during the promotional events.

79.     In an effort to meet the strict quotas for opening new accounts set by Chase, Plaintiff Gelbart and other Personal Bankers often worked on Saturdays. This resulted in the Personal Bankers working and not being compensated for overtime work. Plaintiff Khutoretsky was required to work approximately one Saturday a month for roughly 3 to 4 hours on top of his regular, Monday to Friday schedule.  Plaintiff Shulman had to work 1 or 2 Saturdays a month at his branch for several hours in addition to his normal schedule.

80.     Chase's New York tellers, including Plaintiffs Gelbart and Sweet, regularly had to work late after the end of their scheduled shifts, resulting in them not being paid for this time.  At least one to two times per week, Plaintiff Sweet's branch manager told him to clock out but then instructed Plaintiff Sweet that he could not leave because he needed to finish working.

81.     Chase strictly monitored any significant payment of overtime by its branches.  Chase counselled branch managers not to pay significant overtime and reprimanded them for doing so.  Upon and information and belief, Chase treated

significant payment of overtime by a Chase branch as an act of poor performance by the branch manager which was reflected negatively in the offending branch manager's performance evaluations and compensation.

82.   Chase required branch managers to sign off on Personal Bankers' and tellers' time sheets, and the branch managers uniformly refused to sign off on any time sheets that included overtime.  In fact, New York Plaintiffs' branch managers instructed them and all other Personal Bankers and tellers to exclude all overtime worked when submitting their time sheets at the end of each week.

83.   As a result of the above uniform practices and policies, New York Plaintiffs and other Personal Bankers and tellers were seldom, if ever, paid for overtime, even though they routinely worked overtime.

84.   Chase branch/managers in Illinois have been required to draft and post weekly work schedules for non-exempt employees such as Personal Bankers.  These schedules set forth Personal Bankers' scheduled workdays and work hours.  Managers do not typically schedule Personal Bankers or tellers to work more than 40 hours per week.

85.   However, Plaintiff Gunn and other Illinois Personal Bankers often were required to work through their lunch-breaks and to remain at work after their scheduled shifts (i) for branch closing related work, and (ii) to deal with customers and account paperwork.

86.   Plaintiff Gunn was normally scheduled to work a 9-hour shift, with one hour off for lunch, five days a week.

87.   While Plaintiff Gunn was supposed to receive a one-hour break for lunch, her manager often interrupted her and ordered her, and other Personal Bankers, back to work when the branch was busy and they needed help with customers.

88.   Plaintiff Gunn and the other Personal Bankers also worked through, without pay, parts of their one-hour lunch break on days that when the District

1    Manager would come to visit their branch.

2         89.    Plaintiff Gunn also worked an extra 15 to 30 minutes at the end of

3    her scheduled shift, without pay, approximately two times per week.

4         90.    As a result of the above uniform practices and policies, Plaintiff

5    Gunn and other Personal Bankers employed by Chase in Illinois were seldom, if

6    ever, paid for overtime, even though they routinely worked overtime.

7         91.    California Retail Branch Employees, including Plaintiff Hightower,

8    were routinely denied meal and rest breaks.  Meal breaks were not scheduled and

9    could not be taken without prior approval from the assistant manager or the

10   branch manager.  Retail Branch Employees were often denied meal breaks and

11   rest breaks by their managers because the bank was too busy for Retail Branch

12   Employees to take a meal or rest break.  For example, Plaintiff Hightower was

13   often denied a meal break because other employees had beaten him to lunch or

14   because he needed to assist a customer.   Although Hightower routinely was

15   denied meal breaks, he was instructed by his manager, Frank Knight, to record

16   meal breaks on his time sheets everyday, even on the days when he did not

17   receive a meal break.  On at least one occasion, Mr. Knight informed Hightower

18   that he had changed his timesheets by adding a meal period when the meal had

19   been neither taken nor lodged.  This incident was not isolated to Hightower, as

20   managers would often go into Retail Branch Employees' time records, and

21   "computer edit" them to represent a meal break was taken, when, in fact, none

22   had been taken.  No meal period payments were provided to Retail Branch

23   Employees in such instances.  Similarly, throughout the course of his

24   employment, Plaintiff Hightower was almost never provided with rest breaks.

25   Although he specifically requested breaks, his managers denied his requests.

26   Retail Branch Employees are informed and believe and thereon allege that all

27   other class members in California suffered the same experience by their

28   managers.

92.     During her time with Chase, Plaintiff Ross was routinely denied statutorily required breaks.  Ross never received rest breaks.  Plaintiff Ross requested such breaks from her manager but her request was denied. Additionally, Ross was not provided with all of the uninterrupted thirty minutes meal periods to which she was entitled.  At least once per month, Ross was interrupted during her lunch period by her manager and/or assistant manager to service a customer or otherwise perform her duties as a teller.  Plaintiff Hightower's meal breaks also were interrupted by his managers so that he could assist customers.  Additionally, California Retail Branch Employees were interrupted during their meal and rest periods by managers, other employees, and customers.

93.     California Retail Branch Employees and New York Retail Branch Employees allege that Chase utilized a uniform policy whereby Chase would require Retail Branch Employees to purchase, with their personal funds, uniform items, including uniform shirts bearing a "CHASE" logo.  Since Chase implemented and enforced this uniform policy, Chase was thus aware at all times that Chase employees purchased from their personal funds uniform items yet never offered and/or willfully refused to reimburse employees for such items. As a result of this policy and practice, Plaintiffs and class members were forced to purchase clothing sold by, or pursuant to the request of, Chase and were not reimbursed for such necessary business expenses. For example, Plaintiffs purchased at least one uniform shirt bearing a "CHASE" logo for approximately $50, but were never reimbursed for this expense.  Chase's policy made it clear that any effort by Plaintiffs to seek reimbursement for these necessary business expenses was futile.

94.     Chase had, and continues to have, a policy of not reimbursing employees, including Plaintiffs and class members, for cell phones costs necessarily incurred during the performance of their job duties.  For example,

Chase enforced a policy that required Plaintiffs and Retail Branch Employees to own and use their personal cell phones to (i) communicate with other employees when opening the bank and checking for unauthorized persons in the bank, (ii) sell financial products offered by Chase, and (iii) communicate with other employees regarding Chase's day to day operations, especially when out of the office where use of texts and cell phone calls was expected as the method to stay in touch with the branch.  This policy applied to all Plaintiffs and Retail Branch employees and was communicated and enforced by bank managers and/or supervisorial employees.  Specifically as to the opening procedures, Chase enforced a policy where one employee was required to remain outside the bank while another employee inspected the bank interior.  The employee waiting outside could not enter the bank until after a call from the employee inside the bank.  Chase did not provide any telephones outside the branch for this purpose.  As a result of Chase's practice and policy with respect to its opening procedures, Plaintiffs and Retail Branch Employees were required to use their cell phones when opening the bank.  Retail Branch Employees incurred monthly charges to maintain the cell phones they were required to use at work.  Since Chase implemented and enforced the foregoing polices,  Chase was thus aware at all times that Chase employees were using their personal cell phones for these work-related activities yet never offered and/or willfully refused to reimburse employees for such business-related expenses.  Plaintiffs and Retail Branch employees incurred out-of-pocket expenses they would have otherwise not incurred because they were obligated to maintain cell phone contracts to comply with the above Chase policies.

95.    Chase Bank required its employees to attend days-long training courses.  Plaintiffs believe personal bankers were required to attend a 10-day orientation and tellers a 1-week training course.  As a result of Chase's practice and policy, Plaintiffs and class members attended at least one training course

throughout their tenure with Chase.  All training courses were held outside the branch at a remote location that required Plaintiffs and class members to incur out of pocket transportation expenses, such as mileage or subway fare.  Plaintiffs and class members also incurred expenses for meals during all-day training courses.  Chase Bank willfully refused to reimburse its employee for all or part expenses incurred to attend these mandatory training sessions, did not offer such reimbursement for these expenses or failed to adequately inform employees of what expenses were reimbursable, if any, to discourage reimbursement requests.

96.    Chase wilfully failed to pay Retail Branch Employees in California, who are no longer employed by Chase Bank, their earned and unpaid wages, including, but not limited to, unpaid overtime, minimum wages, and/or meal and rest period premiums, either at the time of discharge, or within seventy-two (72) hours of their leaving Chase's employ.  Chase's failure to pay Retail Branch Employees who are no longer employed by Chase their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Chase's employ, is in violation of California *Labor Code* §§ 201, 202, and entitles Retail Branch Employees to recover statutory penalties, which is defined as Retail Branch Employees' regular daily wages for each day they were not paid, at their regular hourly rate of pay, up to a thirty (30) day maximum pursuant to California *Labor Code* § 203.

97.    At all times relevant hereto, JPMorgan, Chase & Co. and Chase Home had in effect various written nondiscretionary bonus plans applicable to its non-exempt employees whereby these defendants provided such employees nondiscretionary paid bonuses as part of their regular compensation.  These nondiscretionary bonuses were part of Chase's compensation plan designed to motivate and reward employees for meeting certain sales goals set by Chase.  For example,  Plaintiff Slikker and other class members earned various amounts of "points" for selling Chase's products and services, such as savings and

checking accounts, credit cards, direct deposit accounts, loans, "Bill Pay" accounts, IRA's, and online banking accounts, amongst other products and services. The "points" were then redeemed at the end of the month for monetary, nondiscretionary bonus payments. By implementing this system, Chase did not retain discretion as to whom the bonus would be paid, or the amount of the bonus payment. The nondiscretionary bonuses were paid as part of a regular compensation plan. In fact, the nondiscretionary bonuses often exceeded the amount of hourly wages earned by Plaintiff Slikker and other class members. Although these nondiscretionary bonus payments constituted a very large portion of each class member's income, Chase excluded these bonuses when calculating each class member's regular rate of pay, such as the overtime rate, in violation of applicable state law.

98.    At all times relevant hereto, JPMorgan, Chase & Co. and Chase Home had in effect various written compensation plans applicable to its non-exempt employees whereby these defendants provided such employees commissions as part of their regular compensation.

99.    At all times relevant hereto, Plaintiff Simpson worked in excess of forty (40) hours in a week and/or eight (8) hours in a day and earned nondiscretionary bonus pay and/or commissions pursuant to JPMorgan and Chase & Co.'s written compensation policies. Plaintiff Sturdivant also worked in excess of forty (40) hours in a week and/or eight (8) hours in a day and earned nondiscretionary bonus pay and/or commissions pursuant to JPMorgan and Chase Home's written compensation policies. However, JPMorgan, Chase & Co. and Chase Home failed to include the nondiscretionary bonus payments and/or the commissions it paid to its non-exempt employees in computing the amount of overtime compensation due such employees. Based on information and belief, Chase utilized a standardized calculation methodology that did not consider non-discretionary bonus pay and/or commissions.

100.   At all times relevant hereto, JPMorgan, Chase & Co. and Chase Home had in effect various written vacation policies whereby such Defendants' employees were provided paid time off in the form of vacation as part of their compensation.

101.   Pursuant to JPMorgan, Chase & Co. and Chase Home's vacation policies, employees are forced to forfeit, without compensation, all unused paid vacation accrued in a calendar month of employment if such employees are not employed on the last day of the calendar month during which such paid vacation accrued.

102.   In sum, Chase implements its unlawful policy and practice of failing to pay for all overtime hours worked by Retail Branch Employees under the following means: (a) Chase does not allow Retail Branch Employees to record all hours worked, including hours in excess of forty per work week; (b) it erases or modifies Retail Branch Employees' recorded hours, or requires them to erase or modify their recorded hours, to eliminate or reduce hours worked, including hours in excess of forty per work week; (c) its requires Retail Branch Employees to work during uncompensated breaks, and/or (d) fails to include all earned wages, including commissions and nondiscretionary bonuses, in computing the amount of overtime compensation due to employees.

103.   Chase could easily and accurately record the actual time worked by all Retail Branch Employees, including, for example, by providing a punch card clock at the door of the retail branches.  However, Chase has failed to install an immutable time-keeping system that was not subject to manipulation.

104.   In light of Chase's failure to accurately record time worked, Chase failed to provide accurate wage statements to Retail Branch Employees identifying all hours worked.

105.   Non-exempt Chase workers employed nationwide, including without limitation those employed in the state of California, New York, Illinois,

Arizona, Florida, Kentucky, Louisiana, Michigan, Ohio, Texas, Washington and/or Wisconsin, suffered the same unlawful practices and procedures described above.

106.   Chase engaged in systematic and uniform time-keeping practices with respect to its overtime eligible associates that were unlawful, unfair and deceptive to Chase's overtime eligible associates.

107.   The net effect of Chase's policy and practice, instituted and approved by company managers, is that Chase willfully fails to pay overtime compensation and willfully fails to keep accurate time records, in order to save payroll costs.  Chase enjoys millions of dollars in ill-gained profits at the expense of its hourly employees.

108.   Plaintiffs who filed suit in California exhausted their administrative remedies and pre-filing requirements to California *Labor Code* § 2699.3.  On October 13, 2010, Plaintiff Salazar gave written notice, via certified mail, to the California Labor & Workforce Development Agency ("LWDA"), as well as to Chase, of the specific provisions of the Labor Code alleged to have been violated, including the facts and theories to support the alleged violations. Plaintiffs Hightower and Ross timely provided similar notices on March 1, 2011 to the LWDA and to Chase.   Plaintiff Al-Chaikh timely provided a similar notice on May 13, 2011 to the LWDA and to Chase.  Plaintiff Slikker timely sent a similar notice on November 18, 2011.

## COLLECTIVE AND CLASS ALLEGATIONS

### A.   FLSA Collective Actions

109.   FLSA Retail Branch Class: Plaintiffs bring the First Cause of Action, the FLSA claim, as a nationwide "opt-in" collective action pursuant to 29 U.S.C. § 216(b), on behalf of Retail Branch Employees, including themselves, and, as the named class representatives, the following persons:

All current and former nonexempt employees of Chase

who have worked in the United States at a Chase retail branch at any time within the three years preceding the filing of the original complaint in the Southern District of California by Plaintiff Salazar on February 17, 2011, plus periods of applicable tolling.

110.   The FLSA claim may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b) and who have previously filed consent to join forms in any of the transferred actions.

111.   Plaintiffs individually and on behalf of other similarly situated employees, seek relief on a collective basis challenging, among other FLSA violations, Chase's practice of failing to accurately record all hours worked, failing to pay employees for all hours worked, including overtime compensation, and failing to properly calculate and pay overtime compensation that was recorded. The number and identity of other plaintiffs yet to opt in and consent to be party plaintiffs may be determined from Chase's records, and potential class members may easily and quickly be notified of the pendency of this action.

**B.   California Rule 23 Classes**

112.   California Retail Branch Class:  Plaintiffs bring the Second through Tenth Causes of Action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3), on behalf of California Retail Branch Employees, including themselves, and, as the named class representatives, the following persons:

All current and former nonexempt employees of Chase who have worked in California at a retail bank branch at any time since September 25, 2008, plus periods of applicable tolling.

Sub-class No. 1: All class members whose employment with Chase Bank has ended.

113.   Excluded from the California Retail Branch Class are Chase, any entity in which Chase has a controlling interest or which has a controlling interest in Chase, and Chase's legal representatives, assignees and successors. Also excluded is the judge presiding over this case and any member of the

1 judge's immediate family.

2      114.   The California state law claims, if certified for class-wide treatment,

3 are pursued on behalf of all similarly situated persons who do not opt-out of the

4 California Retail Branch Class.

5 **C.**    **New York Rule 23 Classes**

6      115.   New York Retail Branch Class:  Plaintiffs bring the Twelfth through

7 Fifteenth Causes of Action as a class action pursuant to Federal Rule of Civil

8 Procedure 23(b)(3), on behalf of all Retail Branch Employees who were

9 employed by Chase at any New York location on or after the date that is six

10 years before the filing of the original complaint in the Southern District of New

11 York on September 9, 2011, plus periods of applicable tolling.

12      116.   Excluded from the New York Retail Branch Class are Chase, any

13 entity in which Chase has a controlling interest or which has a controlling

14 interest in Chase, and Chase's legal representatives, assignees and successors.

15 Also excluded is the judge presiding over this case and any member of the

16 judge's immediate family.

17      117.   The New York state law claims, if certified for class-wide treatment,

18 are pursued on behalf of all similarly situated persons who do not opt-out of the

19 New York Retail Branch Class.

20 **D.**    **Illinois Rule 23 Classes**

21      118.   Illinois Retail Branch Class:  Plaintiffs bring the Sixteenth and

22 Seventeenth Causes of Action as a class action pursuant to Federal Rule of Civil

23 Procedure 23(b)(3), on behalf of all Retail Branch Employees who were

24 employed by Chase at any Illinois location on or after the date that is three years

25 before the filing of the original complaint in this matter, plus periods of

26 applicable tolling.

27      119.   Excluded from the Illinois Retail Branch Class are Chase, any entity

28 in which Chase has a controlling interest or which has a controlling interest in

1   Chase, and Chase's legal representatives, assignees and successors. Also
2   excluded is the judge presiding over this case and any member of the judge's
3   immediate family.

4       120.   The Illinois state law claims, if certified for class-wide treatment,
5   are pursued on behalf of all similarly situated persons who do not opt-out of the
6   Illinois Retail Branch Class.

7   **E.    Kentucky Rule 23 Classes**

8       121.   Kentucky Retail Branch Class:  Plaintiffs bring the Eighteenth
9   through Twenty-Second Causes of Action as a class action pursuant to Federal
10  Rule of Civil Procedure 23(b)(3), on behalf of all Retail Branch Employees who
11  were employed by Chase at any Kentucky location on or after the date that is
12  three years before the filing of the original complaint in this matter, plus periods
13  of applicable tolling.

14      122.   Excluded from the Kentucky Retail Branch Class are Chase, any
15  entity in which Chase has a controlling interest or which has a controlling
16  interest in Chase, and Chase's legal representatives, assignees and successors.
17  Also excluded is the judge presiding over this case and any member of the
18  judge's immediate family.

19      123.   The Kentucky state law claims, if certified for class-wide treatment,
20  are pursued on behalf of all similarly situated persons who do not opt-out of the
21  Kentucky Retail Branch Class.

22  **F.    Washington Rule 23 Classes**

23      124.   Washington Retail Branch Class:  Plaintiffs bring the Twenty-Third
24  through Twenty-Sixth Causes of Action as a class action pursuant to Federal
25  Rule of Civil Procedure 23(b)(3), on behalf of all Retail Branch Employees who
26  were employed by Chase at any Washington location on or after the date that is
27  three years before the filing of the original complaint in this matter, plus periods
28  of applicable tolling.

FOURTH AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

125.   Excluded from the Washington Retail Branch Class are Chase, any entity in which Chase has a controlling interest or which has a controlling interest in Chase, and Chase's legal representatives, assignees and successors. Also excluded is the judge presiding over this case and any member of the judge's immediate family.

126.   The Washington state law claims, if certified for class-wide treatment, are pursued on behalf of all similarly situated persons who do not opt-out of the Washington Retail Branch Class.

**G.     Arizona Rule 23 Classes**

127.   Arizona Retail Branch Class:  Plaintiffs bring the Twenty-Seventh and Twenty-Eighth Causes of Action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3), on behalf of all Retail Branch Employees who were employed by Chase at any Arizona location on or after the date that is three years before the filing of the original complaint in this matter, plus periods of applicable tolling.

128.   Excluded from the Arizona Retail Branch Class are Chase, any entity in which Chase has a controlling interest or which has a controlling interest in Chase, and Chase's legal representatives, assignees and successors. Also excluded is the judge presiding over this case and any member of the judge's immediate family.

129.   The Arizona state law claims, if certified for class-wide treatment, are pursued on behalf of all similarly situated persons who do not opt-out of the Arizona Retail Branch Class.

**H.     Florida Rule 23 Classes**

130.   Florida Retail Branch Class:  Plaintiffs bring the Twenty-Ninth Cause of Action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3), on behalf of all Retail Branch Employees who were employed by Chase at any Florida location on or after the date that is three years before the

filing of the original complaint in this matter, plus periods of applicable tolling.

131.   Excluded from the Florida Retail Branch Class are Chase, any entity in which Chase has a controlling interest or which has a controlling interest in Chase, and Chase's legal representatives, assignees and successors. Also excluded is the judge presiding over this case and any member of the judge's immediate family.

132.   The Florida state law claims, if certified for class-wide treatment, are pursued on behalf of all similarly situated persons who do not opt-out of the Florida Retail Branch Class.

**I.    Louisiana Rule 23 Classes**

133.   Louisiana Retail Branch Class:  Plaintiffs bring the Thirtieth Cause of Action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3), on behalf of all Retail Branch Employees who were employed by Chase at any Louisiana location on or after the date that is three years before the filing of the original complaint in this matter, plus periods of applicable tolling.

134.   Excluded from the Louisiana Retail Branch Class are Chase, any entity in which Chase has a controlling interest or which has a controlling interest in Chase, and Chase's legal representatives, assignees and successors. Also excluded is the judge presiding over this case and any member of the judge's immediate family.

135.   The Louisiana state law claims, if certified for class-wide treatment, are pursued on behalf of all similarly situated persons who do not opt-out of the Louisiana Retail Branch Class.

**J.    Michigan Rule 23 Classes**

136.   Michigan Retail Branch Class:  Plaintiffs bring the Thirty-First through Thirty-Fourth Causes of Action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3), on behalf of all Retail Branch Employees who were employed by Chase at any Michigan location on or after the date that is

three years before the filing of the original complaint in this matter, plus periods of applicable tolling.

137.   Excluded from the Michigan Retail Branch Class are Chase, any entity in which Chase has a controlling interest or which has a controlling interest in Chase, and Chase's legal representatives, assignees and successors. Also excluded is the judge presiding over this case and any member of the judge's immediate family.

138.   The Michigan state law claims, if certified for class-wide treatment, are pursued on behalf of all similarly situated persons who do not opt-out of the Michigan Retail Branch Class.

**K.    Ohio Rule 23 Classes**

139.   Ohio Retail Branch Class:  Plaintiffs bring the Thirty-Fifth through Thirty-Eighth Causes of Action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3), on behalf of all Retail Branch Employees who were employed by Chase at any Ohio location on or after the date that is three years before the filing of the original complaint in this matter, plus periods of applicable tolling.

140.   Excluded from the Ohio Retail Branch Class are Chase, any entity in which Chase has a controlling interest or which has a controlling interest in Chase, and Chase's legal representatives, assignees and successors. Also excluded is the judge presiding over this case and any member of the judge's immediate family.

141.   The Ohio state law claims, if certified for class-wide treatment, are pursued on behalf of all similarly situated persons who do not opt-out of the Ohio Retail Branch Class.

**L.    Texas Rule 23 Classes**

142.   Texas Retail Branch Class:  Plaintiffs bring the Thirty-Ninth and Fortieth Causes of Action as a class action pursuant to Federal Rule of Civil

Procedure 23(b)(3), on behalf of all Retail Branch Employees who were employed by Chase at any Texas location on or after the date that is three years before the filing of the original complaint in this matter, plus periods of applicable tolling.

143.   Excluded from the Texas Retail Branch Class are Chase, any entity in which Chase has a controlling interest or which has a controlling interest in Chase, and Chase's legal representatives, assignees and successors. Also excluded is the judge presiding over this case and any member of the judge's immediate family.

144.   The Texas state law claims, if certified for class-wide treatment, are pursued on behalf of all similarly situated persons who do not opt-out of the Texas Retail Branch Class.

**M.     Wisconsin Rule 23 Classes**

145.   Wisconsin Retail Branch Class:  Plaintiffs bring the Forty-First through Forty-Third Causes of Action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3), on behalf of all Retail Branch Employees who were employed by Chase at any Wisconsin location on or after the date that is three years before the filing of the original complaint in this matter, plus periods of applicable tolling.

146.   Excluded from the Wisconsin Retail Branch Class are Chase, any entity in which Chase has a controlling interest or which has a controlling interest in Chase, and Chase's legal representatives, assignees and successors. Also excluded is the judge presiding over this case and any member of the judge's immediate family.

147.   The Wisconsin state law claims, if certified for class-wide treatment, are pursued on behalf of all similarly situated persons who do not opt-out of the Wisconsin Retail Branch Class.

**N.     Commonality, Numerosity, Typicality, Adequacy and Superiority.**

148.   Commonality: There are questions of law and fact common to the classes that predominate over any questions affecting only individual members, in satisfaction of Federal Rules of Civil Procedure 23(a)(2) and (b)(3). Adjudication of these common issues in a single action has important and desirable advantages of judicial economy. Moreover, there are no unusual difficulties likely to be encountered in the management of this case as a class action.  The questions of law and fact common to the classes arising from Chase's actions include, without limitation, the following:

(a)     Whether Chase's policies and practices described in this Complaint were and are illegal;

(b)     Whether Chase failed to properly pay class members all of the wages, including overtime, double-time wages, and agreed wages, due and owing to them in accordance with federal, California, New York, Illinois, Arizona, Florida, Kentucky, Louisiana, Michigan, Ohio, Texas, Washington and Wisconsin law;

(c)     Whether Chase has engaged in a common course of failing to factor in all forms of remuneration to calculate overtime pay rates, including without limitation commissions and nondiscretionary bonuses;

(d)     Whether Chase has engaged in a common course of requiring or permitting its non-exempt employees not to report all hours worked;

(e)     Whether Chase failed to properly pay non-exempt employees the minimum wages due and owed to them in accordance with federal and applicable state  law;

(f)     Whether Chase failed to properly pay class members the

1          regular-time wages due and owed to them in accordance with

2          federal and California law;

3     (g)   Whether Chase has engaged in a common course of failing to

4          maintain true and accurate time records for all hours worked

5          by its non-exempt employees;

6     (h)   Whether Chase has engaged in a common course of altering

7          the time records of its non-exempt employees in volation of

8          applicable state law;

9     (i)   Whether Chase has failed to pay all wages due, including

10         overtime compensation, by causing Chase managers to

11         "computer edit" Plaintiffs' and all other class members' work-

12         times in violation of applicable state law;

13    (j)   Whether Chase failed to provide its non-exempt employees

14         with uninterrupted meal breaks as required by applicable state

15         law;

16    (k)   Whether Chase failed to provide its non-exempt employees

17         with uninterrupted rest breaks as required by applicable state

18         law;

19    (l)   Whether Chase failed to possess compliant policies for meal

20         and rest periods as required by applicable state law;

21    (m)   Whether Chase to pay all compensation due and owing to

22         class members at termination of employment as required by

23         applicable state law;

24    (n)   Whether Chase has engaged in a common course of failing to

25         pay its non-exempt employees for all vested and unused

26         vacation pay at the time of termination in violation of

27         applicable state law;

28    (o)   Whether Chase failed to reimburse Plaintiffs and class

members for all necessary business and uniform expenses incurred in violation of applicable state law;

(p)     Whether Chase failed to provide accurate itemized wage statements to class members in violation of applicable state law;

(q)     Whether Chase failed to maintain accurate time records in accordance with federal and applicable state law;

(r)     Whether Chase has engaged in unfair competition by the above-listed conduct in violation of California Business & Professions Code § 17200 *et seq.*;

(s)     Whether Chase's actions were willful; and

(t)     The appropriate amount of damages, restitution, fees or monetary penalties resulting from Chase's violations of federal, California, New York, Illinois, Arizona, Florida, Kentucky, Louisiana, Michigan, Ohio, Texas, Washington and Wisconsin law.

149.    Numerosity:  The classes satisfy the numerosity prerequisite under Federal Rule of Civil Procedure 23(a)(1).  Plaintiffs are informed and believe, and on that basis allege, that during the class period, hundreds, if not thousands of class members have been employed by Chase as "Tellers," "Bankers," "Sales & Service Associates," and "Assistant Branch Manager-Trainees," throughout the nation and in the states of California, Illinois, New York, Arizona, Florida, Kentucky, Louisiana, Michigan, Ohio, Texas, Washington and Wisconsin. Because so many persons have been employed by Chase as "Tellers," "Bankers," "Sales & Service Associates," and "Assistant Branch Manager-Trainees," the members of the plaintiff classes are so numerous that joinder of all members is impossible and or impracticable.

150.    Typicality:  Plaintiffs satisfy the typicality prerequisite under

Federal Rule of Civil Procedure 23(a)(3).  Plaintiffs' claims are typical of the members of the plaintiff class.  Plaintiffs, like other members of the class of "Tellers," "Bankers," "Sales & Service Associates," and "Assistant Branch Manager-Trainees," working for Chase throughout the nation, including California, Illinois, New York, Arizona, Florida, Kentucky, Louisiana, Michigan, Ohio, Texas, Washington and Wisconsin, were subjected to Chase's policies and practices of refusing to pay overtime in violation of federal, California, Illinois, New York, Arizona, Florida, Kentucky, Louisiana, Michigan, Ohio, Texas, Washington and Wisconsin wage and hour laws.  Plaintiffs' job duties also were and are typical of those other class members who worked for Chase as "Tellers," "Bankers," "Sales & Service Associates," and "Assistant Branch Manager-Trainees," throughout the nation, including California, Illinois, New York, Arizona, Florida, Kentucky, Louisiana, Michigan, Ohio, Texas, Washington and Wisconsin.

151.  <u>Adequacy</u>:  Plaintiffs satisfy the adequacy of representation prerequisite under Federal Rule of Civil Procedure 23(a)(4).  Plaintiffs are adequate representatives of the class because they are members of the class and their interests do not conflict with the interests of class members whom they seeks to represent.  The class representatives have retained competent and capable attorneys who are experienced trial lawyers with significant experience in complex and class action litigation, including employment litigation.  The class representatives and their counsel are committed to prosecuting this action vigorously on behalf of the various classes and have the financial resources to do so.  Neither the class representatives nor their counsel has interests that are contrary to or that conflict with those of the proposed classes.

152.  <u>Superiority</u>:  Class certification of the respective classes is appropriate under Federal Rule of Civil Procedure 23(b).  The class action mechanism is superior to any alternatives that might exist for the fair and

efficient adjudication of these claims.  Proceeding as a class action would permit the large number of injured parties to prosecute their common claims in a single forum simultaneously, efficiently and without unnecessary duplication of evidence, effort and judicial resources.  A class action is the only practical way to avoid the potentially inconsistent results that numerous individual trials are likely to generate.  Moreover, class treatment is the only realistic means by which Plaintiffs can effectively litigate against a large, well-represented corporate defendant like Chase.  In the absence of a class action, Chase would be unjustly enriched because they would be able to retain the benefits and fruits of the many wrongful violations of the federal, California, Illinois, New York, Arizona, Florida, Kentucky, Louisiana, Michigan, Ohio, Texas, Washington and Wisconsin laws.  Numerous repetitive individual actions would also place an enormous burden on the courts as they are forced to take duplicative evidence and decide the same issues relating to Chase's conduct over and over again.

153.   <u>Public Policy Considerations</u>:  Employers in the States of California, Illinois, New York, Arizona, Florida, Kentucky, Louisiana, Michigan, Ohio, Texas, Washington and Wisconsin violate employment and labor laws every day.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing actions because they believe their former employers might damage their future endeavors through negative references and/or other means.  Class actions provide the class members who are not named in the complaint with a type of anonymity that allows for the vindication of their rights at the same time as their privacy is protected.  Plaintiffs assert this litigation as a concerted action which seeks to improve the wages and working conditions for all putative class members who experience Chase's illegal policies and/or practices.

154.   Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class

1    action.

2         155.   Chase has acted or refused to act on grounds generally applicable to

3    the classes, thereby making final injunctive relief or corresponding declaratory

4    relief appropriate with respect to the classes as a whole.  Prosecution of separate

5    actions by individual members of the classes would create the risk of

6    inconsistent or varying adjudications with respect to individual members of the

7    classes that would establish incompatible standards of conduct for Chase.

8                              **FIRST CAUSE OF ACTION**

9              **Violation of Fair Labor Standards Act (29 U.S.C. § 216(b))**

10            **(Brought by Plaintiffs and the FLSA Retail Branch Class)**

11        156.   Plaintiffs incorporate by reference and re-allege as if fully stated

12   herein each and every allegation set forth above.

13        157.   At all times material herein, Plaintiffs have been entitled to the

14   rights, protections, and benefits provided under the FLSA, codified as 29 U.S.C.

15   §§ 201, *et seq.*

16        158.   The FLSA regulates, among other things, the payment of overtime

17   pay by employers whose employees are engaged in interstate commerce, or

18   engaged in the production of goods for commerce, or employed in an enterprise

19   engaged in commerce or in the production of goods for commerce.  29 U.S.C.

20   § 207(a)(1).

21        159.   Chase is subject to the overtime pay requirements of the FLSA

22   because it is an enterprise engaged in interstate commerce and its employees are

23   engaged in commerce.

24        160.   Chase violated the FLSA by failing to pay and properly calculate

25   and/or pay overtime to Plaintiffs and all other employees similarly situated as

26   alleged in this complaint.

27        161.   Chase failed to compensate Plaintiffs and the FLSA Retail Branch

28   Class at a rate of not less than one and one-half times the regular rate of pay for

work performed in excess of 40 hours in a work week, and therefore, Chase has violated, and continues to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.,* including 29 U.S.C. § 207(a)(1).

162.   FLSA record-keeping requirements, codified under Code of Federal Regulations, title 29, § 516.2 require, *inter alia*, employers to maintain and preserve records containing its employees' "[h]ours worked each workday and total hours worked each workweek. . . ."  29 Code Fed. Regs. § 516.2(a)(7).

163.   Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from overtime pay obligations.  None of the FLSA exemptions apply to Plaintiffs and the FLSA Retail Branch Class.

164.   As a direct result of Chase's uniform policy and practice of, *inter alia,* "computer editing" Plaintiffs' and class members' time records, and thereby not paying them for all time worked, Chase failed to accurately maintain and preserve records containing Plaintiffs' and class members' hours worked each workday and total hours worked each workweek.

165.   Chase further failed to compensate the time that tellers were required to wait, off-the-clock, until cash discrepancies were resolved, as described herein.  Plaintiffs and class members were also required to work during their meal and rest periods.  Plaintiffs and class members were not paid for this off-the-clock overtime work.

166.   Plaintiffs and the FLSA Retail Branch Class are victims of a uniform and company-wide compensation policy. Upon information and belief, Chase is applying this uniform policy of illegally reducing or modifying recorded hours, including overtime to all non-exempt Retail Branch Employees employed nationwide during the last three years. Additionally, Chase is applying its uniform policies of refusing to allow Plaintiffs and the FLSA Retail Branch Class to properly record all hours worked, including hours worked in excess of forty per work week; erasing or modifying time sheets to eliminate or reduce

1  hours worked, including overtime hours; providing "comp time" in lieu of

2  paying overtime; requiring Retail Branch Employees to work during

3  uncompensated breaks; and failing to pay overtime on commissions and bonus

4  pay.

5       167.   Plaintiffs and all other similarly situated employees are entitled to

6  damages equal to the mandated overtime premium pay within the three years

7  preceding the filing of the Plaintiff Carolyn Salazar's complaint on February 17,

8  2011, plus periods of equitable tolling, because Chase acted willfully and knew,

9  or showed reckless disregard of whether, its conduct was prohibited by the

10  FLSA.

11       168.   Chase has acted neither in good faith nor with reasonable grounds to

12  believe that its actions and omissions were not a violation of the FLSA, and as a

13  result thereof, Plaintiffs and all other similarly situated employees are entitled to

14  recover an award of liquidated damages in an amount equal to the amount of

15  unpaid overtime pay described pursuant to § 16(b) of the FLSA, codified at 29

16  U.S.C. § 216(b).  Alternatively, should the Court find Chase did act with good

17  faith and reasonable grounds in failing to pay overtime compensation, Plaintiffs

18  and all other similarly-situated employees are entitled to an award of

19  prejudgment interest at the applicable legal rate.

20       169.   As a result of the aforementioned willful violations of the FLSA's

21  overtime pay provisions, overtime compensation has been unlawfully withheld

22  by Chase from Plaintiffs and all other similarly situated employees.

23  Accordingly, Chase is liable for compensatory damages pursuant to 29 U.S.C. §

24  216(b), together with an additional amount as liquidated damages, pre- and post-

25  judgment interest, reasonable attorneys' fees and, costs of this action, and such

26  other legal and equitable relief as the Court deems just and proper.

27       170.   Plaintiffs seek, among other remedies as set forth within the Prayer

28  for Relief, recovery, individually and on behalf of the classes, of all money and

penalties withheld.

## SECOND CAUSE OF ACTION

**Violation of California Labor Code §§ 1194,** *et seq.* **– Unpaid Overtime**

**(Brought on Behalf of California Plaintiffs and the California Retail Branch Class)**

171.   Plaintiffs incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

172.   Pursuant to Industrial Welfare Commission Order 4; California *Code of Regulations,* Title 8, Chapter 5, § 11040, § 12; and California *Labor Code* §§ 200, 226, 500, 510, 512, 1194, and 1198, Chase was required to compensate California Plaintiffs and members of the class for all overtime, which is calculated at one and one-half (1½) times the regular rate of pay for hours worked in excess of eight (8) hours per day and/or forty (40) hours per week, and for the first eight (8) hours on the seventh consecutive work day; with double time after eight (8) hours on the seventh day of any work week, or after 12 hours in any work day.

173.   California Plaintiffs and members of the class were and are non-exempt employees entitled to the protections of Industrial Welfare Commission Order 4; California *Code of Regulations,* Title 8, Chapter 5, § 11040, § 12; and California *Labor Code* §§ 200, 204, 226, 500, 510, 512, 1194, and 1198. During the course of California Plaintiffs' employment, and during the course of the employment of the members of the class, Chase failed to compensate Plaintiffs and the class for overtime hours worked as required under the aforementioned labor codes and regulations.

174.   Under the aforementioned wage orders, statutes, and regulations, California Plaintiffs and members of the class are entitled to one and one-half (1½) times and/or double their regular rate of pay for overtime work performed during the four (4) years preceding the filing of this Complaint, based on

1     appropriate calculations of the "total remuneration" for each workweek.

2         175.  In violation of California state law, Chase knowingly and willfully

3  refused to perform their obligations to compensate California Plaintiffs and the

4  class for all wages earned and all hours worked.  As a direct result, California

5  Plaintiffs and the class have suffered, and continue to suffer, substantial losses

6  related to the use and enjoyment of such wages, lost interest on such wages, and

7  expenses and attorneys' fees in seeking to compel Chase to fully perform its

8  obligations under state law, all to their respective damage in amounts according

9  to proof at time of trial, but in amounts in excess of the minimum jurisdiction of

10  this Court.

11         176.  Chase committed the acts alleged herein knowingly and willfully,

12  with the wrongful and deliberate intention of injuring California Plaintiffs and

13  the class, from improper motives amounting to malice, and in conscious

14  disregard of California Plaintiffs' rights and the rights of the class.  California

15  Plaintiffs and the class are thus entitled to recover nominal, actual,

16  compensatory, punitive, and exemplary damages in amounts according to proof a

17  time of trial, but in amounts in excess of the minimum jurisdiction of this Court.

18         177.  Chase's conduct as described herein violates Industrial Welfare

19  Commission Order 4; California *Code of Regulations,* Title 8, § 11040, § 12; and

20  California *Labor Code* §§ 200, 204, 226,500,510,512 and 1198.  Therefore,

21  pursuant to *Labor Code* §§ 200, 203, 218, 218.6, 226, 226.7, 512, 558 and 1194,

22  Plaintiffs and the class are entitled to recover the unpaid balance of overtime

23  compensation, plus interest, penalties, attorneys' fees, expenses, and costs of suit.

24     //

25     //

26     //

27     //

28

1
2
3
4
5

**THIRD CAUSE OF ACTION**

**Violation of California Labor Code §§ 1194, 1197, 1197.1, *et seq*. – Unpaid Minimum Wages**

**(Brought on Behalf of California Plaintiffs And the California Retail Branch Class)**

6
7

178.   Plaintiffs incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

8
9
10
11

179.   At all relevant times, California *Labor Code* §§ 1194, 1197 and 1197.1 provide that the minimum wage for employees fixed by the Industrial Welfare Commission is the minimum wage to be paid to employees, and the payment of a lesser wage than the minimum so fixed is unlawful.

12
13
14
15
16
17
18
19
20
21

180.   During the relevant time period, California Plaintiffs and class members were required to work off-the-clock and were not paid for the off-the-clock hours worked.  For example, Chase required California Plaintiffs and class members to remain at their banks, after clocking out, when tellers at the bank had a shortage in their cash drawers.  Chase required all tellers at the bank, including California Plaintiffs and class members, to wait at the bank until they resolved the cash discrepancies, as described herein.  California Plaintiffs and class members were also required to work during their meal and rest periods. California Plaintiffs and class members were not paid for this off-the-clock work.

22
23
24

181.   During the relevant time period, Chase failed to pay at least minimum wage to California Plaintiffs and class members for this off-the-clock work as required, pursuant to California *Labor Code* §§ 1194, 1197 and 1197.1.

25
26
27
28

182.   Chase's failure to pay California Plaintiffs and class members the minimum wage as required violates California *Labor Code* §§ 1194, 1197 and 1197.1.  Pursuant to those sections, California Plaintiffs and class members are entitled to recover the unpaid balance of their minimum wage compensation as

1   well as interest, costs, and attorney's fees.

2       183.   Pursuant to California *Labor Code* § 1194.2, California Plaintiffs

3   and class members are entitled to recover liquidated damages in an amount equal

4   to the wages unlawfully unpaid and interest thereon.

5       184.   In violation of state law, Chase knowingly and willfully refused to

6   perform their obligations to compensate California Plaintiffs and the class for all

7   wages earned and all hours worked.  As a direct result, California Plaintiffs and

8   the class have suffered, and continue to suffer, substantial losses related to the

9   use and enjoyment of such wages, lost interest on such wages, and expenses and

10  attorneys' fees in seeking to compel Chase to fully perform their obligations

11  under state law, all to their respective damage in amounts according to proof at

12  time of trial, but in amounts in excess of the minimum jurisdiction of this Court.

13      185.   Chase committed the acts alleged herein knowingly and willfully,

14  with the wrongful and deliberate intention of injuring California Plaintiffs and

15  the class, from improper motives amounting to malice, and in conscious

16  disregard of California Plaintiffs' rights and the rights of the class. California

17  Plaintiffs and the class are thus entitled to recover nominal, actual,

18  compensatory, punitive, and exemplary damages in amounts according to proof a

19  time of trial, but in amounts in excess of the minimum jurisdiction of this Court.

20      186.   Chase's conduct described herein violates California *Labor Code* §§

21  1194, 1197 and 1197.1.  Therefore, California Plaintiffs and the class are entitled

22  to recover the unpaid minimum wages, liquidated damages, plus interest,

23  penalties, attorneys' fees, expenses, and costs of suit.

24      //

25      //

26      //

27      //

28

FOURTH AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

**FOURTH CAUSE OF ACTION**

**Violation of California Labor Code §§ 226.7, 512(a) – Unpaid Meal Period Premiums**

**(Brought on Behalf of California Plaintiffs And the California Retail Branch Class)**

187. Plaintiffs incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

188. At all relevant times herein set forth, the applicable California Industrial Welfare Commission (IWC) Wage Order(s) and California Labor Code sections 226.7 and 512(a) were applicable to California Plaintiffs and California Retail Branch Employees employed by Chase.

189. At all relevant times herein set forth, California Labor Code section 226.7 provides that no employer shall require an employee to work during any meal period mandated by an applicable order of the California Industrial Welfare Commission (IWC).

190. At all relevant times herein set forth, California Labor Code section 512(a) provides that an employer may not require, cause, or permit an employee to work for a period of more than five (5) hours per day without providing the employee, by relieving him or her of all duty, with a meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee.

191. At all relevant times, California Plaintiffs and the other class members who were scheduled to work for a period of time no longer than six (6) hours, and who did not waive their legally mandated meal periods by mutual consent, were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes, and for which Chase did not relinquish Plaintiffs and class members from its control. Further,

Plaintiffs and class members who were scheduled to work for a period of time in excess of six (6) hours were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes, and for which Defendants did not relinquish Plaintiffs and class members from their control.

192.   At all relevant times, Chase willfully failed to relinquish control over Plaintiffs and California Retail Branch Employees during meal periods and failed to compensate Plaintiffs and class members for work performed during meal periods.  Also, Plaintiffs and class members did not receive timely, uninterrupted meal periods of at least thirty (30) minutes.  Likewise, Chase also failed to pay these employees meal period penalties owed under California Labor Code sections 226.7 and 512(a).  For example, Plaintiffs and the California Retail Branch Employees were often forced to forgo meal breaks due to Chase's policy and practice that impeded and discouraged employees from taking a compliant meal break.  Additionally, when Plaintiffs and the California Retail Branch Employees did take meal breaks, Chase failed to relieve them of all duties by enforcing a policy and practice that permitted their meal breaks to be interrupted for work.  Despite these violations, Chase failed to pay Plaintiffs and class members full meal period premium due pursuant to California Labor Code section 226.7.

193.   Defendants' conduct violates applicable Industrial Welfare Commission (IWC) Wage Order(s), and California Labor Code sections 226.7 and 512(a).

194.   Pursuant to the applicable Industrial Welfare Commission (IWC) Wage Order(s) and California Labor Code section 226.7(b), Plaintiff and class members are entitled to recover from Defendants one additional hour of pay at the employee's regular hourly rate of compensation for each work day that the meal period was not provided.

# FIFTH CAUSE OF ACTION

**Violation of California Labor Code § 226.7 – Unpaid Rest Period Premiums**

**(Brought on Behalf of California Plaintiffs And the California Retail Branch Class)**

195.   Plaintiffs incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

196.   At all relevant times herein set forth, the applicable IWC Wage Order and California Labor Code section 226.7 were applicable to California Plaintiffs and California Retail Branch Employees employed by Chase.

197.   At all relevant times, California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC.

198.   At all relevant times, the applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3½) hours.

199.   During the relevant time period, Chase required California Plaintiffs and class members to work four (4) or more hours without authorizing or permitting a ten (10) minute rest period per each four (4) hour period worked in which Chase completely relinquished control over Plaintiffs and class members. Also, during the relevant time period, Chase required Plaintiffs and class members to work without authorizing or permitting ten (10) minute rest periods per each four (4) hour period worked or major fraction thereof.

200.   During the relevant time period, Chase willfully required California Plaintiffs and California Retail Branch Employees to work during rest periods, not completely relinquished control over Plaintiffs and class members during

their rest periods, to work without authorizing or permitting ten (10) minute rest periods per each four (4) hour period worked or major fraction thereof, and failed to compensate Plaintiffs and class members for work performed during rest periods.  Likewise, Chase also failed to pay these employees rest period penalties owed under California Labor Code sections 226.7 and 512(a).  For example, Plaintiffs and the California Retail Branch Employees were often forced to forgo rest breaks due to Chase's policy and practice that impeded and discouraged employees from taking a compliant rest break.  Additionally, when Plaintiffs and the California Retail Branch Employees did take rest breaks, Chase failed to relieve them of all duties by enforcing a policy and practice that permitted their rest breaks to be interrupted for work..  Despite these violations, Chase failed to pay Plaintiffs and class members the full rest period premium due pursuant to California Labor Code section 226.7.

201.   Chase's conduct violates the applicable IWC Wage Orders and California Labor Code section 226.7.

202.   Pursuant to the applicable IWC Wage Order and California Labor Code section 226.7(b), California Plaintiffs and class members are entitled to recover from Chase one additional hour of pay at the employee's regular hourly rate of compensation for each work day that the rest period was not provided.

**SIXTH CAUSE OF ACTION**

**Violation Of California Labor Code §§ 2800, 2802 – Failure to Reimburse Business Expenses**

**(Brought on Behalf of California Plaintiffs and the California Retail Branch Class)**

203.   Plaintiffs incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

204.   At all times herein set forth California *Labor Code* §§ 2800, 2802 provide that an employer must reimburse employees for all necessary

1    expenditures.

2         205.   Chase failed to indemnify the California Retail Branch Class and all

3    other class members for necessary expenditures or losses incurred by the

4    California Retail Branch Class and all other class members in direct consequence

5    of the completion of their duties, in violation of California *Labor Code* § 2802,

6    in that Chase utilized a uniform policy whereby Chase would require Plaintiffs

7    and all other class members to purchase, with their personal funds, uniform

8    items, including uniform shirts bearing a "CHASE" logo.  Chase also required

9    the California Retail Branch Class and all other class members to use their cell

10   phones to communicate with other employees when (i) opening the bank, (ii)

11   checking for unauthorized persons in the bank, (iii) to sell Chase products to

12   customers, and (iv) communicate with the branch when out of the office.  Chase

13   further failed to reimburse the California Retail Branch Class and all other class

14   members for expenses related to mandatory training sessions. Chase failed to

15   reimburse the California Retail Branch Class for any of the above necessary

16   expenses, in violation of, among others, federal law and California *Labor Code*

17   §§ 221, 224, 2800 and 2802.  Chase at all times during the relevant period knew

18   that the Retail Brand Class incurred the foregoing expenses because Chase

19   implemented and enforced the policies in question, yet never offered to

20   reimburse its employees for such expenses.

21        206.   Chase had, and continues to have, a policy and practice of requiring

22   employees to pay for such costs from their own funds.  Chase had, and continues

23   to have, a policy of not reimbursing employees for such business-related

24   expenses and costs.

25        207.   Chase intentionally and willfully failed to fully reimburse the

26   California Retail Branch Class and all other similarly situated class members for

27   necessary business-related expenses and costs.

28        208.   The California Retail Branch Class and all other similarly situated

class members are entitled to recover from Chase, pursuant to California *Labor Code* §§ 2800 and 2802, their business-related expenses incurred during the course and scope of their employment, plus interest, attorneys' fees, and costs.

### SEVENTH CAUSE OF ACTION

### Forfeiture Of Vacation Pay

### (Violation of California Labor Code § 227.3)

### (Brought on Behalf of California Plaintiffs and the California Retail Branch Class)

209.   Plaintiffs incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

210.   California Labor Code § 227.3 makes it unlawful for an employer to cause an employee to forfeit vacation pay without compensating the employee for the vacation time at the rate of pay in effect at the time of forfeiture.  During the Class Period, Chase caused the California Retail Branch Class to forfeit vested paid vacation days without providing monetary compensation for it, based on their rate of pay in effect at that time.

211.   The California Retail Branch Class are informed and believe and thereon allege that Chase has maintained a policy and/or practice of causing the members of the California Retail Branch Class to forfeit vested paid vacation days without compensating them for forfeited days based on their rates of pay in effect at the time of forfeiture.

212.   As a result of the above, the California Retail Branch Class seek damages and restitution, plus interest, penalties, attorneys' fees, expenses and costs of suit, on behalf of both themselves and the other California Class Members, for forfeited vacation days in amounts subject to proof at trial.

//

//

FOURTH AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

# EIGHTH CAUSE OF ACTION

## Violation of California Labor Code § 226 – Failure to Furnish Accurate Itemized Wage Statements

## (Brought on Behalf of California Plaintiffs and the California Retail Branch Class)

213.   Plaintiffs incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

214.   California *Labor Code* § 226(a) sets forth reporting requirements for employers when they pay wages, as follows: "Every employer shall ... at the time of each payment of wages, furnish his or her employees . . . an itemized statement in writing showing (1) gross wages earned; (2) total hours worked by the employee . . . (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis. . . ."  Section (e) provides: "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) shall be entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4000), and shall be entitled to an award of costs and reasonable attorney's fees."

215.   Chase failed to accurately record the overtime and off-the-clock hours worked by California Plaintiffs and the California Retail Branch Class, and failed to state the proper regular rate for purposes of calculating overtime pay as a result of not accounting for nondiscretionary bonuses and commissions.  Chase also failed to accurately account for meal/rest break violations as detailed above, and to pay premiums at the proper regular rate after failing to account for nondiscretionary bonuses and commissions.  This injured the Retail Branch Class because Chase's wage statements do not accurately reflect the total hours

1   worked by its employees, as mandated by section 226(a)(2), nor the consequent

2   gross wages earned, as mandated by section 226(a)(1).

3       216.   Additionally, Chase failed to accurately itemize the piece-rate units

4   earned by California Plaintiffs and the California Retail Branch Class, by failing

5   to break down their incentive pay for production goals set for the amount of

6   loans closed in a month and/or pay period.

7       217.   As a result of Chase's violation of California Labor Code section

8   226(a), California Plaintiffs and class members have suffered injury and damage

9   to their statutorily protected rights.  Specifically, California Retail Branch

10  Employees have been injured by Chase's intentional violation of California

11  Labor Code section 226(a) because they were denied both their legal right to

12  receive, and their protected interest in receiving, accurate, itemized wage

13  statements under California Labor Code section 226(a).  In addition, because

14  Chase failed to provide the accurate number of total hours worked on wage

15  statements, California Retail Branch Employees have been prevented by Chase

16  from determining if all hours worked were paid and the extent of the

17  underpayment.  California Plaintiffs have had to file this lawsuit, conduct

18  discovery, reconstruct time records, and perform computations in order to

19  analyze whether in fact they was paid correctly and the extent of the

20  underpayment, thereby causing them to incur expenses and lost time.  California

21  Plaintiffs would not have had to engage in these efforts and incur these costs had

22  Chase provided the accurate number of total hours worked and made payments at

23  the proper regular rate.  This has also delayed California Plaintiffs' ability to

24  demand and recover the underpayment of wages from Defendants.

25      218.   California Plaintiffs and the California Retail Branch Class request

26  recovery of California Labor Code § 226(e) penalties according to proof, as well

27  as interest, attorney's fees and costs pursuant to California Labor Code § 226(e),

28  in a sum as provided by the California Labor Code and/or other statutes, and

injunctive relief to ensure compliance with this section, pursuant to California Labor Code section 226(h).

## NINTH CAUSE OF ACTION

### Violation of California Labor Code §§ 201–203 – Failure to Pay Wages Upon Discharge

### (Brought on Behalf of California Plaintiffs and the California Retail Branch Class)

219.   Plaintiffs incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

220.   California *Labor Code* § 201 provides, in relevant part, "[I]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

221.   California *Labor Code* § 202 provides, in relevant part, "[I]f an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting."

222.   Plaintiffs and class members were not provided their final paycheck within the required time pursuant to sections 201 and 202.  For instance, Defendants did not make Plaintiff Slikker's final paycheck available until approximately two weeks after her last date of employment.  Further, pursuant to California *Labor Code* § 201, upon California Plaintiffs' and class members' termination dates, Chase was required to pay California Plaintiffs and the California Retail Branch Class (Sub-class No. 1) all wages earned.  At the time of California Plaintiffs' and the California Retail Branch Class (Sub-class No. 1) members' respective termination dates, California Plaintiffs and class members had unpaid wages, which wages included earned and unpaid commissions and

monthly "draws," vacation pay, overtime and waiting time penalties.  Chase failed to pay California Plaintiffs and the California Retail Branch Class (Sub-class No. 1) members all of the amount of wages due and owing them, in amounts to be proven at the time of trial, and in excess of the jurisdiction of this Court.

223.   Chase's failure to pay California Plaintiffs and the California Retail Branch Class (Sub-class No. 1) members' respective wages was willful, and done with the wrongful and deliberate intention of injuring California Plaintiffs and the California Retail Branch Class members (Sub-class No. 1), from improper motives amounting to malice, and in conscious disregard of their rights.

224.   Chase's willful failure to pay California Plaintiffs and the class all of the wages due and owing them constitutes violations of California *Labor Code* §§ 201 and 203; which provides that an employee's wages will continue as a penalty up to thirty (30) days from the time the wages were due.  Therefore, California Plaintiffs and the California Retail Branch Class (Sub-class No. 1) members are each entitled to penalties pursuant to California *Labor Code* § 203.

## TENTH CAUSE OF ACTION

**Violation of California Business & Professions Code § 17200, *et seq*. – Unfair Competition Law**

**(Brought on Behalf of California Plaintiffs and the California Retail Branch Class)**

225.   Plaintiffs incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

226.   The conduct of Chase, as alleged herein, has been, and continues to be, unfair, unlawful, fraudulent, deceptive and harmful to California Plaintiffs, class members, and to the general public.  California Plaintiffs seek to enforce important rights affecting the public interest within the meaning of Code of Civil

1   Procedure section 1021.5.

2      227.   The violation of the statutes and regulations as laid out in this

3   complaint by Chase constitute unfair and unlawful practices in violation of

4   California's Unfair Competition Law, codified under *California Business &*

5   *Professions Code* § 17200 *et seq.* ("UCL").

6      228.   A violation of California *Business & Professions Code* sections

7   17200, *et seq.* may be predicated on the violation of any state or federal law.

8   Here, Chase's policies and practices (i) of requiring non-exempt employees,

9   including the California Retail Branch Class and other class members, to work

10   overtime without paying them proper compensation violate California *Labor*

11   *Code* sections 510 and 1198; (ii) of not paying at least minimum wage to non-

12   exempt employee violate California *Labor Code* sections 1194, 1197 and 1197.1;

13   (iii) of failing to timely pay all earned wages violate California *Labor Code*

14   sections 201, 202, and 204; (iv) of requiring non-exempt employees to work

15   through their meal and rest periods without paying them proper compensation

16   violate California *Labor Code* sections 226.7 and 512(a); (v) of failing to

17   reimburse non-exempt employees for business expenses necessarily incurred

18   violate California *Labor Code* sections 2800 and 2802.

19      229.   Additionally, the policy and practice of Chase in unfairly deducting

20   wages for "errors" from the California Retail Branch Class and other class

21   members' pay, and failing to furnish an accurate itemized wage statement

22   constitute unfair and unlawful business practices under the UCL.

23      230.   Similarly, the policies and practices of JPMorgan, Chase & Co., and

24   Chase Home in failing to reimburse business expenses, failing to pay overtime,

25   and forcing forfeiture of unused vacation pay also violated various provisions of

26   the California *Labor Code*, including sections 201, 202, 203, 204, 218, 510,

27   1198, 2800 and 2802, and Civil Code sections 1708 and 1712.

28      231.   Chase's violations of California wage and hour laws and illegal

payroll practices or payment policies constitute a business practice because it was done repeatedly over a significant period of time, and in a systematic manner to the detriment of California Plaintiffs and the class members. Additionally, the above-described failure to pay wages owed to California Plaintiffs and other class members constitute an unlawful and/or unfair business practice under the UCL in that the failure violates the FLSA as described herein, as well as the California *Labor Code*, and California *Civil Code* section 1770(a)(5), which bars "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they not have..."

232.   The harm of the above-described failure to pay wages owed to California Plaintiffs and all other class members outweighs the utility of the practices by Chase, and consequently, constitutes an unfair business act or practice within the meaning of the UCL.

233.   Upon information and belief, Chase continues its fraudulent and/or unlawful and/or unfair conduct as previously described.  As a result of this conduct, Chase has fraudulently and/or unlawfully and/or unfairly obtained monies due to California Plaintiffs and all other class members, thereby unfairly competing in the marketplace.

234.   Pursuant to California *Business & Professions Code* sections 17200, *et seq.*, California Plaintiffs and class members are entitled to restitution of the wages withheld and retained by Chase, as well as disgorgement of the ill-gotten gains by Chase, from a period that commences at least four years prior to the filing of the Salazar complaint in the Southern District of California on February 17, 2011; a permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiffs and class members; an award of attorneys' fees for enforcing an important right affecting the interest of a large class of persons, pursuant to California *Code of Civil Procedure* section 1021.5 and other

1   applicable laws; and an award of costs.

2   235.   California Plaintiffs reserve the right to amend the complaint at the

3   time of trial to include additional employees who continued to be subject to

4   Chase's unlawful, unfair and/or deceptive business practices until such time as

5   the practice has been enjoined.  Further, Plaintiffs reserve the right to supplement

6   the restitution award after time of trial and until an injunction is issued to include

7   additional persons who have been damaged by the unfair, unlawful and/or

8   deceptive business practices of Chase.

9   **ELEVENTH CAUSE OF ACTION**

10   **Penalties Under California Labor Code § 2698,** *et seq.* **– Private Attorneys**

11   **General Act**

12   **(Brought on Behalf of California Plaintiffs and the California Retail Branch**

13   **Class)**

14   236.   Plaintiffs incorporate by reference and re-allege as if fully stated

15   herein each and every allegation set forth above.

16   237.   At all times mentioned herein, Chase was subject to the California

17   Labor Codes and Industrial Welfare Commission wage orders of the state of

18   California, including, but not limited to, California Labor Code § 2698 *et seq.*

19   238.   As set forth above, California Plaintiffs have exhausted their

20   administrative remedies and pre-filing requirements pursuant to California Labor

21   Code § 2699.3.

22   239.   At all times mentioned herein, Chase is and was an "employer," as

23   that term is used within the relevant sections of the California Labor Code.

24   240.   Throughout the class period, Chase committed the above-referenced

25   and incorporated wage and hour violations of the California Labor Code and

26   IWC wage orders against California Plaintiffs and the putative class members.

27   241.   Chase's conduct, as alleged herein, violates numerous sections of

28   the California *Labor Code*, including, but not limited to, the following:

(a)  Violation of *Labor Code* §§ 510, 1198 for Chase's failure to compensate California Plaintiffs and other aggrieved employees with all required overtime pay as herein alleged;

(b)  Violation of *Labor Code* §§ 1194, 1197, and 1197.1 for Chase's failure to compensate California Plaintiffs and other aggrieved employees for all hours worked with at least minimum wages, as herein alleged;

(c)  Violation of *Labor Code* § 226.7, 512 for Chase's failure to provide California Plaintiffs and other aggrieved employees with all applicable meal and rest periods and meal and rest period premiums, as herein alleged;

(d)  Violation of *Labor Code* §§ 2800, 2802 for Chase's failure to reimburse California Plaintiffs and other aggrieved employees for necessary business-related expenses incurred, as herein alleged;

(e)  Violation of *Labor Code* §§ 204 for failure to timely pay all wages owed during employment, as herein alleged; and

(f)  Violation of *Labor Code* §§ 201, 202 for failure to timely pay all wages owed upon termination, as herein alleged.

242.  California *Labor Code* § 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month.  California *Labor Code* § 204 also requires that all wages earned for labor in excess of the

normal work period shall be paid no later than the payday for the next regular payroll period.  During the relevant time period, Chase failed to pay California Plaintiffs and other aggrieved employees all wages due to them within any time period specified by California *Labor Code* § 204 including, but not limited to, overtime, minimum wages, and premium wages for meal and rest breaks that were not provided.

243.   Pursuant to California *Labor Code* §§ 2699(a), 2699.3, 2699(g)(1), and 2699.5, California Plaintiffs and all other aggrieved employees are entitled to recover civil penalties, costs, attorneys' fees, and interest against Chase, in addition to other remedies, for violations of California *Labor Code* §§ 201, 202, 203, 204, 226.7, 510, 512(a), 1194, 1197, 1197.1, 1198, 2800, and 2802.

## TWELFTH CAUSE OF ACTION

### New York Overtime Violations, N.Y. Comp. Codes. R. & Regs. Tit. 12, § 142-2.2

### (Brought on Behalf of New York Plaintiffs and the New York Retail Branch Class)

244.   Plaintiffs incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

245.   At all relevant times, Chase operated under a policy and practice of refusing to pay overtime compensation to New York Plaintiffs and class members for the hours they worked in excess of 40 hours per week and demanding, encouraging, allowing, suffering and/or knowingly permitting New York Plaintiffs and the class members to work off-the-clock.

246.   At all relevant times, Chase wilfully, regularly and repeatedly failed to pay New York Plaintiffs and class members at the required overtime rate of one-and-one half times their regular rate for hours worked in excess of forty (40) hours per workweek.

247.   New York Plaintiffs, on behalf of themselves and class members,

seek damages in the amount of their respective unpaid compensation, liquidated damages as provided for by the New York *Labor Law,* attorneys' fees and costs, pre-and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## THIRTEENTH CAUSE OF ACTION

### New York Agreed Rate Violations, N.Y. Lab. L. § 191

### (Brought on Behalf of New York Plaintiffs and the New York Retail Branch Class)

248.   Plaintiffs incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

249.   At all relevant times, Chase operated under a policy and practice of refusing to pay agreed upon compensation to the New York Plaintiffs and class members for all of the hours they worked and demanding, encouraging, allowing, suffering and/or knowingly permitting the New York Plaintiffs and the class members to work off-the-clock.

250.   At all relevant times, Chase wilfully, regularly and repeatedly failed to pay the New York Plaintiffs and class members for all of their hours worked for Defendants.

251.   New York Plaintiffs, on behalf of themselves and class members, seek damages in the amount of their respective unpaid compensation, liquidated damages as provided for by the New York *Labor Law,* attorneys' fees and costs, pre-and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## FOURTEENTH CAUSE OF ACTION

### New York Uniform Reimbursement Violations, 12 NYCRR 142-2.5(c)

### (Brought on Behalf of New York Plaintiffs and the New York Retail Branch Class)

252.   Plaintiffs, on behalf of the New York Retail Branch Class,

incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

253.   12 NYCRR 142-2.5(c) provides that employers must reimburse employees for costs of purchasing required uniforms.

254.   At all relevant times, Chase operated under a uniform policy and practice, in violation of New York law, of refusing to reimburse the New York Plaintiffs and class members for the costs of their required uniforms.

255.   At all relevant times, Chase intentionally, wilfully, regularly and repeatedly failed to reimburse the New York Plaintiffs and class members for the costs of their required uniforms.

256.   New York Plaintiffs, on behalf of themselves and class members, seek damages in the amount of their respective unreimbursed uniform costs, liquidated damages as provided for by the New York *Labor Law,* attorneys' fees and costs, pre-and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## FIFTEENTH CAUSE OF ACTION

### New York Meal Break Violations, N.Y. Lab. Law §§ 162

### (Brought on Behalf of the New York Plaintiffs and New York Retail Branch Class)

257.   Plaintiffs, on behalf of the New York Retail Branch Class, incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

258.   At all relevant times, N.Y. Lab. Law § 162 required that employers grant employees who worked more than six hours in a shift at least a 30-minute noon day meal during the period extending from 11:00 a.m. to 2:00 p.m.

259.   At all relevant times, New York Plaintiffs and the New York Retail Branch Class worked more than six hours and did not receive a 30-minute noon day meal as required by N.Y. Lab. Law § 162.

260.   At all relevant times, Chase willfully failed to relinquish control over New York Plaintiffs and the New York Retail Branch Class during meal periods and failed to compensate Plaintiffs and class members for work performed during meal periods.  New York Plaintiffs and the New York Retail Branch Class were often forced to forgo meal breaks due to Chase's policy and practice that impeded and discouraged employees from taking a compliant meal break.  Additionally, when New York Plaintiffs and the New York Retail Branch Class did take meal breaks, Chase failed to relieve them of all duties by enforcing a policy and practice that permitted their meal breaks to be interrupted for work.

261.   The New York Plaintiffs, on behalf of themselves and the New York Retail Branch Class, seek damages in the amount of their respective unpaid compensation, and such other legal and equitable relief as this Court deems just and proper.

**SIXTEENTH CAUSE OF ACTION**

**Illinois Overtime Violations, 820 ILCS 105/4a(1)**

**(Brought on Behalf of the Illinois Plaintiff and the Illinois Retail Branch Class)**

262.   Plaintiffs, on behalf of the Illinois Retail Branch Class, incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

263.   At all relevant times, Chase operated under a policy and practice of refusing to pay overtime compensation to the Illinois Retail Branch Class for the hours they worked in excess of 40 hours per week and demanding, encouraging, allowing, suffering and/or knowingly permitting the Illinois Retail Branch Class to work off-the-clock.

264.   At all relevant times, Chase wilfully, regularly and repeatedly failed to pay the Illinois Retail Branch Class at the required overtime rate of one-and-

1    one half times their regular rate for hours worked in excess of forty (40) hours
2    per workweek.

3         265.   The Illinois Plaintiff, on behalf of herself and the Illinois Retail
4    Branch Class, seeks damages in the amount of their respective unpaid
5    compensation, punitive damages as provided for by the Illinois Minimum Wage
6    Law, attorneys' fees and costs, pre-and post-judgment interest, and such other
7    legal and equitable relief as this Court deems just and proper.

8                        **SEVENTEENTH CAUSE OF ACTION**
9              **Illinois Meal Break Violations, 820 Ill. Comp. Stat. 140/3**
10   **(Brought on Behalf of the Illinois Plaintiffs and Illinois Retail Branch Class)**

11        266.   Plaintiffs, on behalf of the Illinois Retail Branch Class, incorporate
12   by reference and re-allege as if fully stated herein each and every allegation set
13   forth above.

14        267.   At all relevant times, 820 Ill. Comp. Stat. 140/3 required that
15   employers grant employees who worked more than seven-and-one-half
16   continuous hours or longer in a shift at least a 20-minute meal period beginning
17   no later than five hours after the starts of the work period.

18        268.   At all relevant times, Illinois Plaintiffs and the Illinois Retail Branch
19   Class worked more than seven-and-one-half hours and did not receive a 20-
20   minute meal period as required by 820 Ill. Comp. Stat. 140/3.

21        269.   At all relevant times, Chase willfully failed to relinquish control
22   over Illinois Plaintiffs and the Illinois Retail Branch Class during meal periods
23   and failed to compensate Plaintiffs and class members for work performed
24   during meal periods.  Illinois Plaintiffs and the Illinois Retail Branch Class were
25   often forced to forgo meal breaks due to Chase's policy and practice that
26   impeded and discouraged employees from taking a compliant meal break.
27   Additionally, when Illinois Plaintiffs and the Illinois Retail Branch Class did
28   take meal breaks, Chase failed to relieve them of all duties by enforcing a policy

1    and practice that permitted their meal breaks to be interrupted for work.

2        270.   The Illinois Plaintiffs, on behalf of themselves and the Illinois Retail

3    Branch Class, seek damages in the amount of their respective unpaid

4    compensation, penalties, and such other legal and equitable relief as this Court

5    deems just and proper.

6                        **EIGHTEENTH CAUSE OF ACTION**

7                **Kentucky Overtime Violations, KRS Chapter 337**

8            **(Brought on Behalf of the Kentucky Plaintiff and the Kentucky Retail**

9                               **Branch Class)**

10       271.    Plaintiffs, on behalf of the Kentucky Retail Branch Class,

11   incorporate by reference and re-allege as if fully stated herein each and every

12   allegation set forth above.

13       272.   At all relevant times, Chase operated under a policy and practice of

14   refusing to pay overtime compensation to the Kentucky Retail Branch Class for

15   the hours they worked in excess of 40 hours per week and demanding,

16   encouraging, allowing, suffering and/or knowingly permitting the Kentucky

17   Retail Branch Class to work off-the-clock.

18       273.   At all relevant times, Chase wilfully, regularly and repeatedly failed

19   to pay the Kentucky Retail Branch Class at the required overtime rate of one-

20   and-one half times their regular rate for hours worked in excess of forty (40)

21   hours per workweek.

22       274.   The Kentucky Plaintiff, on behalf of herself and the Kentucky Retail

23   Branch Class, seeks damages in the amount of their respective unpaid

24   compensation, punitive damages as provided for by the Kentucky Wage and

25   Hour Act, KRS Chapter 337, attorneys' fees and costs, pre-and post-judgment

26   interest, and such other legal and equitable relief as this Court deems just and

27   proper.

28

## NINETEENTH CAUSE OF ACTION

### Kentucky Minimum Wage Violations, KRS Chapter 337.275

### (Brought on Behalf of the Kentucky Plaintiff and the Kentucky Retail Branch Class)

275.   Plaintiffs, on behalf of the Kentucky Retail Branch Class, incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

276.   At all relevant times, the Kentucky Wage and Hour Act, KRS Chapter 337.275 provided that every employer shall pay to each of his employees wages at a rate of the effective minimum wage.  The payment of a lesser wage than the minimum so fixed is unlawful.

277.   During the relevant time period, Chase failed to pay at least minimum wages to the Kentucky Plaintiff and the Kentucky Retail Branch Class for off-the-clock work performed by the Kentucky Plaintiff and the Kentucky Retail Branch Class as required, pursuant to KRS Chapter 337.275.

278.   During the relevant time period, the Kentucky Plaintiff and the Kentucky Retail Branch Class were required to work off-the-clock and were not paid for the off-the-clock hours worked.  For example, the Kentucky Plaintiff and the Kentucky Retail Branch Class were required to work during their meal periods.  In addition, the Kentucky Plaintiff and the Kentucky Retail Branch Class were required to work off-the-clock after their shifts ended to continue to assist customers and complete closing tasks.  Further, on closing shifts, the Kentucky Plaintiff and the Kentucky Retail Branch Class could not just leave the branch and go home once their shifts ended.  Chase required that employees leave in pairs, which meant that once the Kentucky Plaintiff and the Kentucky Retail Branch Class finished their closing duties, they still had to wait in the branch for another employee to be finished so they could walk to their cars together.

279.   The Kentucky Plaintiff and the Kentucky Retail Branch Class were not paid for the time they spent waiting to be released from the branch or the time they spent working during meal periods and performing work after they clocked out.

280.   The Kentucky Plaintiff, on behalf of herself and the Kentucky Retail Branch Class, seeks damages in the amount of their respective unpaid compensation, liquidated damages, punitive damages as provided for by the Kentucky Wage and Hour Act, KRS Chapter 337, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**TWENTIETH CAUSE OF ACTION**

**Kentucky Meal Period Violations, KRS Chapter 337.355**

**(Brought on Behalf of the Kentucky Plaintiff and the Kentucky Retail Branch Class)**

281.   Plaintiffs, on behalf of the Kentucky Retail Branch Class, incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

282.   At all relevant times, the Kentucky Wage and Hour Act, KRS Chapter 337.355 required that employers grant employees a reasonable period for lunch, and such time shall be as close to the middle of the employee's scheduled work shift as possible.  In no case shall and employee be required to take a lunch period sooner than three (3) hours after his or her work shift commences, nor more than five (5) hours from the time his work shift commences.

283.   At all relevant times, Kentucky Plaintiff and the Kentucky Retail Branch Class worked more than five hours and did not receive a reasonable period for lunch as required by KRS Chapter 337.355.

284.   At all relevant times, Chase willfully failed to relinquish control

over Kentucky Plaintiff and the Kentucky Retail Branch Class during meal periods and failed to compensate Plaintiffs and class members for work performed during meal periods.  Kentucky Plaintiff and the Kentucky Retail Branch Class were often forced to forgo meal breaks due to Chase's policy and practice that impeded and discouraged employees from taking a compliant meal break.  Additionally, when Kentucky Plaintiff and the Kentucky Retail Branch Class did take meal breaks, Chase failed to relieve them of all duties by enforcing a policy and practice that permitted their meal breaks to be interrupted for work.

285.   The Kentucky Plaintiff, on behalf of herself and the Kentucky Retail Branch Class, seeks damages in the amount of their respective unpaid compensation, punitive damages as provided for by the Kentucky Wage and Hour Act, KRS Chapter 337.385, attorneys' fees and costs, pre-and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### TWENTY-FIRST CAUSE OF ACTION

### Kentucky Rest Period Violations, KRS Chapter 337.365

### (Brought on Behalf of the Kentucky Plaintiff and the Kentucky Retail Branch Class)

286.   Plaintiffs, on behalf of the Kentucky Retail Branch Class, incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

287.   At all relevant times, the Kentucky Wage and Hour Act, KRS Chapter 337.365 required that no employer shall require any employee to work without a rest period of at least ten (10) minutes during each four (4) hours worked.  This shall be in addition to the regularly scheduled lunch period.

288.   At all relevant times, Kentucky Plaintiff and the Kentucky Retail Branch Class did not receive rest periods of at least ten (10) minutes during each

four (4) hours worked.

289.   The Kentucky Plaintiff, on behalf of herself and the Kentucky Retail Branch Class, seeks damages in the amount of their respective unpaid compensation, punitive damages as provided for by the Kentucky Wage and Hour Act, KRS Chapter 337, attorneys' fees and costs, pre-and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### TWENTY-SECOND CAUSE OF ACTION

### Failure to Pay Wages Timely in Violation of the Kentucky Wage and Hour Act, KRS Chap. 337.020 and 337.055

### (Brought on Behalf of the Kentucky Plaintiff and the Kentucky Retail Branch Class)

290.    Plaintiffs, on behalf of the Kentucky Retail Branch Class, incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

291.   At all relevant times, the Kentucky Wage and Hour Act, KRS Chapter 337.020 provided that an employer must pay an employee all wages or salary earned no later than eighteen (18) days after the employee earned the wages or salary.  Any employee who is absent at the time fixed for payment by an employer, or who, for any other reason, is not paid at that time, shall be paid thereafter at any time or upon six (6) days' demand.

292.   At all relevant times, the Kentucky Wage and Hour Act, KRS Chapter 337.055 provided that any employee who leaves or is discharged from his employment shall be paid in full all wages or salary earned by him; not later than the next normal pay period following the date of dismissal or voluntary leaving or fourteen (14) days following such date of dismissal or voluntary leaving whichever last occurs.  Any employee who is absent at the time fixed for payment by an employer, or who, for any other reason, is not paid at that time,

1   shall be paid thereafter at any time or upon fourteen (14) days' demand.

2       293.   During the relevant time period, Defendants willfully failed to pay

3   the Kentucky Plaintiff and the Kentucky Retail Branch Class wages within the

4   requisite time periods, in violation of the Kentucky Wage and Hour Act, KRS

5   Chapters 337.020 and 337.055.

6       294.   The Kentucky Plaintiff, on behalf of herself and the Kentucky Retail

7   Branch Class, seeks damages in the amount of their respective unpaid

8   compensation, punitive damages as provided for by the Kentucky Wage and

9   Hour Act, KRS Chapter 337, attorneys' fees and costs, pre-and post-judgment

10   interest, and such other legal and equitable relief as this Court deems just and

11   proper.

12   **TWENTY-THIRD CAUSE OF ACTION**

13   **Washington Meal and Rest Period Violations, Washington Administrative**

14   **Code 296-126-092 (Brought on Behalf of the Washington Plaintiff and the**

15   **Washington Retail Branch Class)**

16       295.   Plaintiffs, on behalf of the Washington Retail Branch Class,

17   incorporate by reference and re-allege as if fully stated herein each and every

18   allegation set forth above.

19       296.   At all relevant times, the Washington Administrative Code 296-126-

20   092 and Washington Industrial Welfare law 49.12.020  required that employees

21   shall be allowed a meal period of at least thirty (30) minutes which commences

22   no less than two hours nor more than five hours from the beginning of the shift.

23   Meal periods shall be on the employer's time when the employer's time when

24   the employee is required by the employer to remain on duty on the premises or at

25   a prescribed work site in the interest of the employer.  No employee shall be

26   required to work more than five consecutive hours without a meal period.

27   Employees working three or more hours longer than a normal work day shall be

28   allowed at least one 30-minute meal period prior to or during the overtime

period.  In addition, employees shall be allowed a rest period of not less than 10 minutes, on the employer's time, for each four (4) hours or working time.  No employee shall be required to work more than three hours without a rest period.

297.   At all relevant times, the Washington Plaintiff and the Washington Retail Branch Class did not receive meal and rest periods in accordance with the applicable state laws.

298.   The Washington Plaintiff, on behalf of himself and the Washington Retail Branch Class, seeks damages in the amount of their respective unpaid compensation, punitive damages as provided for by the Washington Administrative Code, attorneys' fees and costs, pre-and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### TWENTY-FOURTH CAUSE OF ACTION

### Washington Overtime Violations, Washington Industrial Welfare law 49.12.130 (Brought on Behalf of the Washington Plaintiff and the Washington Retail Branch Class)

299.   Plaintiffs, on behalf of the Washington Retail Branch Class, incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

300.   At all relevant times, Washington Industrial Welfare law 49.12.130 required that employers pay employees one and one-half times the regular rate at which they are employed for all hours worked over 40 per work week.

301.   At all relevant times, the Washington Plaintiff and the Washington Retail Branch Class consistently worked more than 40 hours per week, and were not paid for all overtime hours worked in accordance with the applicable state laws.

302.   The Washington Plaintiff, on behalf of himself and the Washington Retail Branch Class, seeks damages in the amount of their respective unpaid compensation, punitive damages as provided for by Washington Industrial

Welfare law 49.46.090, attorneys' fees and costs, pre-and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### TWENTY-FIFTH CAUSE OF ACTION

### Violation of Washington Minimum Wage Act RCW 49.46.005 *et seq.*

### (Brought on Behalf of the Washington Plaintiff and the Washington Retail Branch Class)

303.   Plaintiffs, on behalf of the Washington Retail Branch Class, incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

304.   At all relevant times, the Washington Minimum Wage Act, RCW 49.46.020 provided that every employer shall pay to each of his employees wages at a rate of the effective minimum wage.  The payment of a lesser wage than the minimum so fixed is unlawful.

305.   During the relevant time period, Chase failed to pay at least minimum wages to the Washington Plaintiff and the Washington Retail Branch Class for off-the-clock work as required, pursuant to RCW 49.46.005.

306.   During the relevant time period, the Washington Plaintiff and the Washington Retail Branch Class were required to work off-the-clock and were not paid for the off-the-clock hours worked.  For example, the Washington Plaintiff and the Washington Retail Branch Class were required to work during their meal periods.  In addition, the Washington Plaintiff and the Washington Retail Branch Class were required to work off-the-clock both before their shifts started and after their shifts ended to complete opening and closing tasks.

307.   The Washington Plaintiff and the Washington Retail Branch Class were not paid for the time they spent working during meal periods and performing pre-shift and post-shift off the clock work.

308.   The Washington Plaintiff, on behalf of himself and the Washington Retail Branch Class, seeks damages in the amount of their respective unpaid

compensation as provided for by Washington Minimum Wage Act, attorneys' fees and costs, pre-and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## TWENTY-SIXTH CAUSE OF ACTION

**Failure to Timely Pay Wages in Violation of Washington Minimum Wage Act RCW 49.48.010 and Washington Administrative Code 296-126-023 (Brought on Behalf of the Washington Plaintiff and the Washington Retail Branch Class)**

309.   Plaintiffs, on behalf of the Washington Retail Branch Class, incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

310.   At all relevant times, the Washington Minimum Wage Act, RCW 49.48.010 provided that when any employee shall cease to work for an employer, whether by discharge or by voluntary withdrawal, the wages due him or her on account of his or her employment shall be paid to him or her at the end of the established pay period.

311.   At all relevant times, the Washington Administrative Code 296-126-023 provided that an employer shall pay overtime wages owed to an employee on the regular pay day for the pay period in which the overtime wages were earned.

312.   During the relevant time period, Defendants willfully failed to pay the Washington Plaintiff and the Washington Retail Branch Class wages within the requisite time periods.

313.   The Washington Plaintiff, on behalf of himself and the Washington Retail Branch Class, seeks damages in the amount of their respective unpaid compensation as provided for by the Washington Minimum Wage Act and Washington Administrative Code, attorneys' fees and costs, pre-and post-judgment interest, and such other legal and equitable relief as this Court deems

1    just and proper.

2    **TWENTY-SEVENTH CAUSE OF ACTION**

3    **Arizona Minimum Wage Violations, Arizona Rev. Stat. §23-363 *et seq.***

4    **(Brought on Behalf of the Arizona Plaintiff and the Arizona Retail Branch**

5    **Class)**

6    314.   Plaintiffs, on behalf of the Arizona Retail Branch Class, incorporate

7    by reference and re-allege as if fully stated herein each and every allegation set

8    forth above.

9    315.   At all relevant times, the Arizona Minimum Wage Act A.R.S. §23-

10   362-365 required that employers pay employees wages at the mandated rate of

11   minimum wage under Arizona law.

12   316.   At all relevant times, Defendants required the Arizona Plaintiff and

13   the Arizona Retail Branch Class to work off-the-clock, for which hours they

14   were not compensated.  Defendants' failure to pay the Arizona Plaintiff and the

15   Arizona Retail Branch Class was wilful and in violation of the Arizona

16   Minimum Wage Act.

17   317.   The Arizona Plaintiff, on behalf of herself and the Arizona Retail

18   Branch Class, seeks damages in the amount of their respective unpaid

19   compensation, attorneys' fees and costs, pre-and post-judgment interest, the

20   additional amount equal to twice the underpaid wages as provided for by A.R.S.

21   §23-364(G), and such other legal and equitable relief as this Court deems just

22   and proper.

23   **TWENTY-EIGHTH CAUSE OF ACTION**

24   **Failure to Pay Wages Timely, Arizona Rev. Stat. §§23-351 and 23-353**

25   **(Brought on Behalf of the Arizona Plaintiff and the Arizona Retail Branch**

26   **Class)**

27   318.   Plaintiffs, on behalf of the Arizona Retail Branch Class, incorporate

28   by reference and re-allege as if fully stated herein each and every allegation set

1     forth above.

2         319.   At all relevant times, Ariz. Rev. Stat. §23-351 provides that

3     employers must, on each regular payday, pay to employees all wages due to the

4     employees up to such date.

5         320.   At all relevant times, Ariz. Rev. Stat. §23-353(A) provides that

6     when an employee is discharged from the service of an employer, the employee

7     shall be paid wages due within seven working days or the end of the next regular

8     pay period, whichever is sooner.

9         321.   At all relevant times, Ariz. Rev. Stat. 23-353(B) provides that when

10    an employee quits the service of an employer he shall be paid in the usual

11    manner all wages due him no later than the regular payday for the pay period

12    during which the termination occurred.

13        322.   During the relevant time period, Defendants failed to pay the

14    Arizona Plaintiff and the Arizona Retail Branch Class all wages due within the

15    requisite statutory time limits.

16        323.   The Arizona Plaintiff, on behalf of herself and the Arizona Retail

17    Branch Class, seeks damages, attorneys' fees and costs, pre-and post-judgment

18    interest, and such other legal and equitable relief as this Court deems just and

19    proper.

20                    **TWENTY-NINTH CAUSE OF ACTION**

21    **Florida Minimum Wage Violations, Article X, Section 24 of the Florida**

22    **Constitution and The Florida Minimum Wage Act §448 *et seq.* (Brought on**

23        **Behalf of the Florida Plaintiff and the Florida Retail Branch Class)**

24        324.   Plaintiffs, on behalf of the Florida Retail Branch Class, incorporate

25    by reference and re-allege as if fully stated herein each and every allegation set

26    forth above.

27        325.   At all relevant times, Article X, Section 24 of the Florida

28    Constitution provides that employers must pay employees wages no less than the

1  minimum wage for all hours worked in Florida.

2     326.   At all relevant times, Defendants required the Florida Plaintiff and

3  the Florida Retail Branch Class to work off-the-clock, for which hours they were

4  not compensated.  Defendants' failure to pay the Florida Plaintiff and the Florida

5  Retail Branch Class was wilful and in violation of the Florida Minimum Wage

6  Act and Article X, Section 24 of the Florida Constitution .

7     327.   The Florida Plaintiff, on behalf of herself and the Florida Retail

8  Branch Class, seeks damages, attorneys' fees and costs, pre-and post-judgment

9  interest, and such other legal and equitable relief as this Court deems just and

10  proper.

11     328.   The Florida Plaintiff and Florida Retail Branch Class are entitled to

12  recover the costs of this action and reasonable attorneys' fees pursuant to the

13  Florida Minimum Wage Act section 448.08.

14                          **THIRTIETH CAUSE OF ACTION**

15     **Failure to Timely Pay Wages, Louisiana Rev. Stat. Ann. §§ 23:631 and**

16     **23:633 (Brought on Behalf of the Louisiana Plaintiff and the Louisiana**

17                          **Retail Branch Class)**

18     329.   Plaintiffs, on behalf of the Louisiana Retail Branch Class,

19  incorporate by reference and re-allege as if fully stated herein each and every

20  allegation set forth above.

21     330.   At all relevant times, Louisiana Revised Statutes Annotated section

22  23:631 *et seq.* provides that all "earned" wages must be paid upon termination or

23  resignation.

24     331.   At all relevant times, section 631 A(1)(a) required that upon the

25  discharge of any laborer or other employee of any kind whatever, the employer

26  must pay the employee the amount then due under the terms of employment,

27  whether the employment is by the hour, day, week, or month, on or before the

28  next regular payday or no later than fifteen days following the date of discharge,

1    whichever occurs first.

2         332.   At all relevant times, section 631 A(1)(b) required that upon the

3    resignation of any laborer or other employee of any kind whatever, it shall be the

4    duty of the employer to pay the employee the amount then due under the terms

5    of employment, whether the employment is by the hour, day, week, or month, on

6    or before the next regular payday for the pay cycle during which the employee

7    was working at the time of separation or no later than fifteen days following the

8    date of resignation, whichever occurs first.

9         333.   At all relevant times, section 633 required that an employer must

10   designate the frequency of payment at the time of hire or pay employees on the

11   first and sixteeneth days of the month or as near as practicable to those days.

12        334.    At all relevant times, Defendants required the Louisiana Plaintiff

13   and the Louisiana Retail Branch Class to work off-the-clock, for which hours

14   they were not compensated.  During the relevant time period, Defendants

15   willfully failed to pay the Louisiana Plaintiff and the Louisiana Retail Branch

16   Class all wages due to them including, but not limited to, wages for off-the-clock

17   hours worked.  Defendants' failure to pay the Louisiana Plaintiff and the

18   Louisiana Retail Branch Class wages for this off-the-clock work within the

19   requisite time periods is in violation of Louisiana Rev. Stat. Ann. §§ 23:631 and

20   23:633.

21        335.   The Louisiana Plaintiff, on behalf of herself and the Louisiana

22   Retail Branch Class, seeks damages in the amount of her respective unpaid

23   compensation, attorneys' fees and costs, pre-and post-judgment interest, and

24   such other legal and equitable relief as this Court deems just and proper.

25      //

26      //

27      //

28

## THIRTY-FIRST CAUSE OF ACTION

**Failure to Pay Wages Timely During Employment, Michigan Comp. Laws § 408.472 (Brought on Behalf of the Michigan Plaintiff and the Michigan Retail Branch Class)**

336.   Plaintiffs, on behalf of the Michigan Retail Branch Class, incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

337.   At all relevant times, Michigan Compiled Laws section 408.472(1)(a) provided that an employer must pay an employee on or before the first day of each calendar month, the wages earned by the employee during the first 15 days of the preceding calendar month.

338.   At all relevant times, Michigan Compiled Laws section 408.472(1)(b) provides that an employer must pay an employee on or before the fifteenth day of each calendar month, the wages earned during the preceding calendar month from the sixteenth day through the last day.

339.   During the relevant time period, Defendants willfully failed to pay the Michigan Plaintiff and the Michigan Retail Branch Class all wages due to them including, but not limited to, wages for off-the-clock hours worked.  In addition, Defendants' failed to pay the Michigan Plaintiff and the Michigan Retail Branch Class wages for this off-the-clock work within the requisite time periods during their employment, in violation of Michigan Compiled Laws section 408.472.

340.   The Michigan Plaintiff, on behalf of himself and the Michigan Retail Branch Class, seeks damages in the amount of their respective unpaid compensation, attorneys' fees and costs, pre-and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

//

//

1

**THIRTY-SECOND CAUSE OF ACTION**

2

**Failure to Pay Wages Timely Upon Termination, Michigan Comp. Laws §§**

3

**408.474 and 408.475 (Brought on Behalf of the Michigan Plaintiff and the**

4

**Michigan Retail Branch Class)**

5       341.   Plaintiffs, on behalf of the Michigan Retail Branch Class,

6   incorporate by reference and re-allege as if fully stated herein each and every

7   allegation set forth above.

8       342.   At all relevant times, Michigan Compiled Laws section 408.474

9   provided that employers shall not withhold payment of compensation due to

10   employees as a fringe benefit to be paid at a termination date.

11       343.   At all relevant times, Michigan Compiled Laws section 408.475(1)

12   provides that an employer shall pay to an employee voluntarily leaving

13   employment all wages earned and due, as soon as the amount can with due

14   diligence be determined.

15       344.   At all relevant times, Michigan Compiled Laws section 408.475(2)

16   provides that an employer shall immediately pay to an employee who has been

17   discharged from employment all wages earned and due, as soon as the amount

18   can with due diligence be determined.

19       345.   During the relevant time period, Defendants willfully failed to pay

20   the Michigan Plaintiff and the Michigan Retail Branch Class all wages due to

21   them including, but not limited to, wages for off-the-clock hours worked.  In

22   addition, Defendants' failed to pay the Michigan Plaintiff and the Michigan

23   Retail Branch Class wages for this off-the-clock work within the requisite time

24   periods upon their separation from Defendants, in violation of Michigan

25   Compiled Laws sections 408.474 and 408.475.

26       346.   The Michigan Plaintiff, on behalf of himself and the Michigan

27   Retail Branch Class, seeks damages in the amount of their respective unpaid

28   compensation, attorneys' fees and costs, pre-and post-judgment interest, and

such other legal and equitable relief as this Court deems just and proper.

## THIRTY-THIRD CAUSE OF ACTION

**Failure to Maintain Accurate Wage Records, Michigan Comp. Laws §§ 408.479 (Brought on Behalf of the Michigan Plaintiff and the Michigan Retail Branch Class)**

347.    Plaintiffs, on behalf of the Michigan Retail Branch Class, incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

348.    At all relevant times, Michigan Compiled Laws section 408.479(1) provided that employers shall maintain a record for each employee which indicates the employee's name, address, birth date, occupation or classification in which employed, total basic rate of pay, total hours worked in each pay period, total wages paid each pay period, a separate itemization of deductions and a listing or itemization of fringe benefits. In the case of an employer who has a group of 10 or more employees who have identical fringe benefits, 1 central itemization or listing may be kept for each group, providing the record identifies what group they belong to.

349.    During the relevant time period, Defendants have intentionally and willfully failed to provide employees with complete and accurate wage statements.  The deficiencies include, among other things, the failure to state all hours worked as a result of not recording or stating the hours the Michigan Plaintiff and the Michigan Retail Branch Class worked off-the-clock.

350.    As a result of Defendants' violation of Michigan Compiled Laws section 408.479(1), the Michigan Plaintiff and the Michigan Retail Branch Class have suffered injury and damage to their statutorily protected rights.

351.    The Michigan Plaintiff, on behalf of himself and the Michigan Retail Branch Class, seeks damages, attorneys' fees and costs, pre-and post-judgment interest, and such other legal and equitable relief as this Court deems

1  just and proper.

2  ## THIRTY-FOURTH CAUSE OF ACTION

3  **Michigan Overtime Violations, Michigan Minimum Wage Law § 408.384a**

4  **and Michigan Workforce Opportunity Wage Act § 408.414a**

5  **(Brought on Behalf of the Michigan Plaintiff and the Michigan Retail**

6  **Branch Class)**

7  352.   Plaintiffs, on behalf of the Michigan Retail Branch Class,

8  incorporate by reference and re-allege as if fully stated herein each and every

9  allegation set forth above.

10  353.   At all relevant times, the Michigan Minimum Wage Law section

11  408.384a and Michigan Workforce Opportunity Wage Act section 408.414a

12  required that employers pay employees one and one-half times the regular rate at

13  which they are employed for all hours worked over 40 per work week.

14  354.   At all relevant times, the Michigan Plaintiff and the Michigan Retail

15  Branch Class consistently worked more than 40 hours per week, and were not

16  paid for all overtime hours worked in accordance with the applicable state laws.

17  355.   The Michigan Plaintiff, on behalf of himself and the Michigan

18  Retail Branch Class, seeks damages in the amount of their respective unpaid

19  overtime compensation, attorneys' fees and costs, pre-and post-judgment

20  interest, and such other legal and equitable relief as this Court deems just and

21  proper.

22  ## THIRTY-FIFTH CAUSE OF ACTION

23  **Ohio Overtime Violations, Ohio Revised Code Section 4111.01 *et seq*.**

24  **(Brought on Behalf of the Ohio Plaintiff and the Ohio Retail Branch Class)**

25  356.   Plaintiffs, on behalf of the Ohio Retail Branch Class, incorporate by

26  reference and re-allege as if fully stated herein each and every allegation set

27  forth above.

28  357.   At all relevant times, the Ohio Fair Minimum Wage Standards Act,

Revised Code Section 4111.03(A), required that employers pay employees for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of 40 hours in one workweek.

358.   At all relevant times, the Ohio Plaintiff and the Ohio Retail Branch Class consistently worked more than 40 hours per week, and were not paid for all overtime hours worked in accordance with the applicable state laws.

359.   The Ohio Plaintiff, on behalf of himself and the Ohio Retail Branch Class, seeks damages in the amount of their respective unpaid overtime compensation, attorneys' fees and costs, pre-and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### THIRTY-SIXTH CAUSE OF ACTION

### Ohio Minimum Wage Violations, Ohio Revised Code Section 4111.02
### (Brought on Behalf of the Ohio Plaintiff and the Ohio Retail Branch Class)

360.   Plaintiffs, on behalf of the Ohio Retail Branch Class, incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

361.   At all relevant times, the Ohio Fair Minimum Wage Standards Act, Revised Code Section 4111.02, provided that every employer shall pay to each of his employees wages at a rate of the effective minimum wage.  The payment of a lesser wage than the minimum so fixed is unlawful.

362.   During the relevant time period, Chase failed to pay at least minimum wages to the Ohio Plaintiff and the Ohio Retail Branch Class for off-the-clock work as required, pursuant to Revised Code Section 4111.02.

363.   During the relevant time period, the Ohio Plaintiff and the Ohio Retail Branch Class were required to work off-the-clock and were not paid for the off-the-clock hours worked.  For example, the Ohio Plaintiff and the Ohio Retail Branch Class were required to work during their meal periods.  In addition, the Ohio Plaintiff and the Ohio Retail Branch Class were required to

work off-the-clock both before their shifts started and after their shifts ended to complete opening and closing tasks.

364.   The Ohio Plaintiff and the Ohio Retail Branch Class were not paid for the time they spent working during meal periods and performing pre-shift and post-shift off the clock work.

365.   The Ohio Plaintiff, on behalf of himself and the Ohio Retail Branch Class, seeks damages in the amount of their respective unpaid minimum wages, as provided for by the Ohio Revised Code Section 4111.10, attorneys' fees and costs, pre-and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## THIRTY-SEVENTH CAUSE OF ACTION

**Failure to Pay Wages Timely During Employment, Ohio Revised Code Section 4113.15 (Brought on Behalf of the Ohio Plaintiff and the Ohio Retail Branch Class)**

366.   Plaintiffs, on behalf of the Ohio Retail Branch Class, incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

367.   At all relevant times, Ohio Revised Code section 4113.15(A) provides that an employer must pay an employee on or before the first day of each month, pay all its employees the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and shall, on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month.

368.   At all relevant times, Ohio Revised Code section 4113.15(B) provides that where wages remain unpaid for thirty days beyond the regularly scheduled payday or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employee of a claim or for sixty days beyond the date of the agreement, award, or other act making wages

1  payable and no dispute of any wage claim including the assertion of a
2  counterclaim exists accounting for nonpayment, the employer, in addition, as
3  liquidated damages, is liable to the employee in an amount equal to six per cent
4  of the amount of the claim still unpaid and not in contest or disputed or two
5  hundred dollars, whichever is greater.

6      369.   During the relevant time period, Defendants willfully failed to pay
7  the Ohio Plaintiff and the Ohio Retail Branch Class all wages due to them
8  including, but not limited to, wages for off-the-clock hours worked.  In addition,
9  Defendants' failed to pay the Ohio Plaintiff and the Ohio Retail Branch Class
10  wages for this off-the-clock work within the requisite time periods during their
11  employment, in violation of Ohio Revised Code section 4113.15.

12      370.   The Ohio Plaintiff, on behalf of himself and the Ohio Retail Branch
13  Class, seeks damages in the amount of their respective unpaid compensation,
14  attorneys' fees and costs, pre-and post-judgment interest, liquidated damages
15  pursuant to Ohio Rev. Code §4113.15(B), and such other legal and equitable
16  relief as this Court deems just and proper.

17                    **THIRTY-EIGHTH CAUSE OF ACTION**
18    **Failure to Maintain Accurate Wage Records, Ohio Revised Code Section**
19    **4111.08 (Brought on Behalf of the Ohio Plaintiff and the Ohio Retail Branch**
20                                    **Class)**

21      371.   At all relevant times, Ohio Revised Code section 4111.08 provides
22  that employers shall maintain for a period not less than three years a record of
23  the name, address, and occupation of each of the employer's employees, the rate
24  of pay and the amount paid each pay period to each employee, the hours worked
25  each day and each work week by the employee, and other information as the
26  director of commerce prescribes.

27      372.   During the relevant time period, Defendants have intentionally and
28  willfully failed to provide employees with complete and accurate wage

statements.  The deficiencies include, among other things, the failure to state all hours worked as a result of not recording or stating the hours the Ohio Plaintiff and the Ohio Retail Branch Class worked off-the-clock.

373.  As a result of Defendants' violation of Ohio Revised Code section 4111.08, the Ohio Plaintiff and the Ohio Retail Branch Class have suffered injury and damage to their statutorily protected rights.

374.  The Ohio Plaintiff, on behalf of himself and the Ohio Retail Branch Class, seeks damages, attorneys' fees and costs, pre-and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**THIRTY-NINTH CAUSE OF ACTION**

**Failure to Pay Minimum Wages in Violation of Texas Labor Code Section 62.051 (Brought on Behalf of the Texas Plaintiff and the Texas Retail Branch Class)**

375.  Plaintiffs, on behalf of the Texas Retail Branch Class, incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

376.  At all relevant times, Texas Labor Code Section 62.051 provided that every employer shall pay to each employee wages the effective federal minimum wage under Section 6, Fair Labor Standards Act of 1938 (29 U.S.C. Section 206).  The payment of a lesser wage than the minimum so fixed is unlawful.

377.  During the relevant time period, Chase failed to pay at least minimum wages to the Texas Plaintiff and the Texas Retail Branch Class for off-the-clock work as required, pursuant to Texas Labor Code section 62.051.

378.  During the relevant time period, the Texas Plaintiff and the Texas Retail Branch Class were required to work off-the-clock and were not paid for the off-the-clock hours worked.  For example, the Texas Plaintiff and the Texas Retail Branch Class were required to work off-the-clock both before their shifts

started and after their shifts ended to complete opening and closing tasks.  In addition, on closing shifts, Chase required that employees leave in pairs.  This meant that once the Texas Plaintiff and the Texas Retail Branch Class were finished with their closing duties, they could not just leave the branch and go home.  Instead, the Texas Plaintiff and the Texas Retail Branch Class had to wait in the branch for the next employee to be finished so they could walk to their cars together.

379.   The Texas Plaintiff and the Texas Retail Branch Class were not paid for the time they spent completing pre-shift and post-shift tasks while off the clock or for the time they spent waiting to be released from the branch.

380.   The Texas Plaintiff, on behalf of herself and the Texas Retail Branch Class, seeks damages in the amount of their respective unpaid minimum wages, as provided for by the Texas Labor Code section 62.051, attorneys' fees and costs, pre-and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## FORTIETH CAUSE OF ACTION

### Texas Labor Code Violations, Chapter 61-62 (Brought on Behalf of the Texas Plaintiff and the Texas Retail Branch Class)

381.   Plaintiffs, on behalf of the Texas Retail Branch Class, incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

382.   At all relevant times, the Texas PayDay Law and Texas Minimum Wage Act, Texas Labor Code sections 61 and 62, required that employers to pay employees wages timely at the mandated rate of minimum wage under the FLSA effective minimum wage rates.

383.   At all relevant times, Texas Labor Code section 61.014(a) required that employers pay in full an employee who is discharged from employment not later than the sixth day after the date the employee is discharged.  At all relevant

1  times, Texas Labor Code section 61.014(b) required that employers pay in full

2  an employee who leaves employment other than by discharge not later than the

3  next regularly scheduled payday.

4      384.   At all relevant times, Defendants required the Texas Plaintiff and

5  the Texas Retail Branch Class to work off-the-clock, for which hours they were

6  not compensated.  Defendants' failure to pay the Texas Plaintiff and the Texas

7  Retail Branch Class was wilful and in violation of the Texas Minimum Wage

8  Act.  Defendants' failure to pay the Texas Plaintiff and those members of the

9  Texas Retail Branch Class no longer employed with Defendants these unpaid

10  wages within the requisite time limitations is in violation of Texas Labor Code

11  sections 61.014(a) and 61.014(b).

12      385.   The Texas Plaintiff, on behalf of herself and the Texas Retail

13  Branch Class, seeks damages in the amount of their respective unpaid

14  compensation, attorneys' fees and costs, pre-and post-judgment interest, and

15  such other legal and equitable relief as this Court deems just and proper.

### FORTY-FIRST CAUSE OF ACTION

**Wisconsin Overtime Violations, Wis. Stats. § 103.001 *et seq*. and §109.01 *et seq*. and the Wisconsin Administrative Code, DWD § 274.03 *et seq*.**

**(Brought on Behalf of the Wisconsin Plaintiffs and the Wisconsin Retail Branch Class)**

21      386.   Plaintiffs, on behalf of the Wisconsin Retail Branch Class,

22  incorporate by reference and re-allege as if fully stated herein each and every

23  allegation set forth above.

24      387.   At all relevant times, the Wisconsin Statutes section 103.025,

25  required that employers pay employees for overtime at a wage rate of one and

26  one-half times the employee's wage rate for hours worked in excess of 40 hours

27  in one workweek.  Wisconsin Administrative Code § 274.03 further codifies an

28  employee's right to be compensated at a rate of one and one-half times the

1  employee's wage rate for hours worked in excess of 40 hours.

2  388.  At all relevant times, the Wisconsin Statutes section 109.11(2)

3  provides that an employee may recover civil penalties of not more than 50% of

4  the amount of wages due and unpaid.

5  389.  At all relevant times, the Wisconsin Plaintiffs and the Wisconsin

6  Retail Branch Class consistently worked more than 40 hours per week, and were

7  not paid for all overtime hours worked in accordance with the applicable state

8  laws.

9  390.  The Wisconsin Plaintiffs, on behalf of themselves and the

10  Wisconsin Retail Branch Class, seek damages in the amount of their respective

11  unpaid overtime compensation, attorneys' fees and costs, civil penalties, pre-and

12  post-judgment interest, and such other legal and equitable relief as this Court

13  deems just and proper.

## FORTY-SECOND CAUSE OF ACTION

14

15  **Wisconsin Minimum Wage Violations, Wis. Stats. §§ 104.02 and 104.11 and**

16  **the Wisconsin Administrative Code, DWD §§ 272.03 and 272.12 (Brought on**

17  **Behalf of the Wisconsin Plaintiffs and the Wisconsin Retail Branch Class)**

18  391.  Plaintiffs, on behalf of the Wisconsin Retail Branch Class,

19  incorporate by reference and re-allege as if fully stated herein each and every

20  allegation set forth above.

21  392.  At all relevant times, the Wisconsin Statutes sections 104.02 and

22  104.11, required that employers pay employees no less than the effective

23  minimum wage.  Wisconsin Administrative Code sections 272.03 and 272.12

24  further codify an employee's right to be compensated for all time worked at no

25  less than the minimum wage.

26  393.  At all relevant times, the Wisconsin Plaintiffs and the Wisconsin

27  Retail Branch Class were required to work off-the-clock and were not paid for

28  the off-the-clock hours worked.  For example, the Wisconsin Plaintiffs and the

Wisconsin Retail Branch Class were required to work off-the-clock both before their shifts started and after their shifts ended to complete opening and closing tasks.  In addition, on closing shifts, Chase required that employees leave in pairs.  This meant that once the Wisconsin Plaintiffs and the Wisconsin Retail Branch Class were finished with their closing duties, they could not just leave the branch and go home.  Instead, the Wisconsin Plaintiffs and the Wisconsin Retail Branch Class had to wait in the branch for the next employee to be finished so they could walk to their cars together.

394.   The Wisconsin Plaintiffs and the Wisconsin Retail Branch Class were not paid for the time they spent completing pre-shift and post-shift tasks while off the clock or for the time they spent waiting to be released from the branch.

395.   The Wisconsin Plaintiffs, on behalf of themselves and the Wisconsin Retail Branch Class, seek damages in the amount of their respective unpaid minimum wages, attorneys' fees and costs, civil penalties, pre-and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## FORTY-THIRD CAUSE OF ACTION

**Wisconsin Failure to Timely Pay Wages, Wis. Stats. § 109.03 (Brought on Behalf of the Wisconsin Plaintiffs and the Wisconsin Retail Branch Class)**

396.   Plaintiffs, on behalf of the Wisconsin Retail Branch Class, incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

397.   At all relevant times, Wis. Stats. § 109.03 required that employers pay all wages earned by employees not more than 31 days after the employe earned the wages.

398.   At all relevant times, Wis. Stats. § 109.03 also required that employers pay in full an employee who quits or is discharged from employment

1    not later than the date on which the employee regularly would have been paid.

2         399.   At all relevant times, Defendants required the Wisconsin Plaintiffs

3    and the Wisconsin Retail Branch Class to work off-the-clock, for which hours

4    they were not compensated.  Defendants' failure to pay the Wisconsin Plaintiffs

5    and those members of the Wisconsin Retail Branch Class no longer employed

6    with Defendants these unpaid wages within the requisite time limitations is in

7    violation of Wis. Stats. § 109.03.

8         400.   The Wisconsin Plaintiffs, on behalf of themselves and the

9    Wisconsin Retail Branch Class, seek damages in the amount of their respective

10   unpaid compensation, attorneys' fees and costs, pre-and post-judgment interest,

11   and such other legal and equitable relief as this Court deems just and proper.

**PRAYER FOR RELIEF**

12

13        **WHEREFORE**, Plaintiffs, on their own behalf and on behalf of all others

14   similarly situated, pray for relief as follows:

15        1.     An order certifying that the First Cause of Action may be

16   maintained as a collective action on behalf of the proposed FLSA classes and

17   promptly issue notice pursuant to 29 U.S.C. § 216(b) to all members of the

18   FLSA Retail Branch opt-in class apprising them of the pendency of this action

19   and permitting them to assert timely FLSA claims in this action by filing

20   individual consents to join pursuant to 29 U.S.C. § 216(b);

21        2.     A declaration that Chase is financial responsible for notifying all

22   FLSA class members of its alleged wage and hour violations;

23        3.     A declaratory judgment that the practices complained of herein are

24   unlawful under the FLSA, 29 U.S.C. § 201(b), *et seq.;*

25        4.     An order certifying that the Second through Tenth Causes of Action

26   and Twelfth through Forty-Third Causes of Action may be maintained as "opt-

27   out" class actions pursuant to Federal Rule of Civil Procedure 23;

28        5.     An order certifying that the Eleventh Cause of Action may be

maintained as a representative action pursuant to *Mendez v. Tween Brands*, 2010 WL 2650571 (E.D. Cal. July 21, 2010), and *Arias v. Superior Court*, 46 Cal. 4th 969 (2009);

6.      Nominal, compensatory and statutory damages, injunctive relief, penalties and restitution, as appropriate and available under each cause of action, in an amount to be proven at trial, including, without limitation, penalties pursuant to California *Labor Code* sections 201-204, 206, 226(a), 226(e), 226(h), 226.7, 512, 558, 1194, 1194.2, 2800, 2802, and any other penalties allowed by the Illinois Minimum Wage Law, the New York *Labor Law*, and state law in Kentucky, Washington, Arizona, Florida, Louisiana, Michigan, Ohio, Texas, and Wisconsin;

7.      The Court declare, adjudge and decree that Chase violated California *Business and Professions Code* sections 17200, *et seq.* as a result of the actions set forth in the Tenth Cause of Action;

8.      Restitution of all monies due to Plaintiffs and class members, including prejudgment interest from the day such amounts were due and payable, as a result of the unlawful business practice of Chase;

9.      For injunctive relief to ensure compliance with this section, pursuant to California Business & Professions Code sections 17200, et seq.;

10.      For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Chase and determined to have been wrongfully acquired by Chase as a result of violations of California *Business & Professions Code* sections 17200 *et seq.;*

11.      Waiting time penalties pursuant to California *Labor Code* § 203;

12.      Liquidated damages pursuant to California *Labor Code* § 1194.2, New York *Labor Law*, and Ohio Rev. Code §4113.15(B), as applicable;

13.      Punitive damages pursuant to the Illinois Minimum Wage Law, as applicable;

14.　　Exemplary damages in amounts equal to wages due pursuant to Washington Industrial Welfare law 49.52.050 and 070;

15.　　For all civil penalties pursuant to California *Labor Code* sections 2699(a) and/or 2699(f) and (g) (Private Attorneys General's Act), plus costs and attorneys' fees, for violations of California *Labor Code* sections 201, 202, 203, 204, 226.7, 510, 512(a), 1194, 1197, 1197.1, 1198, 2800, and 2802;

16.　　For costs of suit and *expenses* (including expert fees) incurred *herein pu*rsuant to California Labor Code §§ 226, 1194 and other state's applicable laws;

17.　　Reasonable attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5; California Labor Code §§ 204, 218.5, 226, 226.7, 1194, 2699(g), and 2802(c); New York *Labor Law* § 663; the Illinois Minimum Wage Law; the Florida Minimum Wage Act § 448.08; and 29 U.S.C. § 216(b);

18.　　Pre- and post-judgment interest as provided by law;

19.　　Plaintiffs be appointed class representatives; and

20.　　All such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs request that this matter be heard and decided by trial by jury.


Respectfully submitted,

Dated: September 25, 2014　　　　　Capstone Law APC


By:＿＿＿/s/ Raul Perez＿＿＿＿＿＿＿＿＿
　　　Raul Perez
　　　Melissa Grant
　　　Arnab Banerjee
　　　Alexandria Witte

　　　Co-Lead Counsel for Plaintiffs

1    Dated: September 25, 2014          Seeger Weiss LLP,

2
                                        By:_____/s/ Jonathan Shub_____
3                                          Jonathan Shub

4                                          Co-Lead Counsel for Plaintiffs

5

6    Dated: September 25, 2014          Marlin & Saltzman LLP

7
                                        By:_____/s/ Marcus J. Bradley_____
8                                          Stanley D. Saltzman
                                           Louis M. Marlin
9                                          Marcus J. Bradley
                                           Kiley Grombacher
10
                                           Co-Lead Counsel for Plaintiffs
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28