**MARLIN & SALTZMAN, LLP**
Stanley D Saltzman, Esq. (SBN 90058)
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
29229 Canwood Street, Suite 208
Agoura Hills, California  91301-1555
Telephone:  (818) 991-8080
Facsimile:   (818) 991-8081
ssaltzman@marlinsaltzman.com
mbradley@marlinsaltzman.com
kgrombacher@marlinsaltzman.com

Attorneys for Plaintiffs Evan Hightower, Ann Ross,
Regina M. Simpson and Regina Sturdivant

*(Additional Plaintiffs' Counsel on next page)*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

EVAN HIGHTOWER and ANN ROSS, individually and on behalf of all other individuals similarly situated,

     Plaintiff,

v.

JPMORGAN CHASE BANK, N.A., and DOES 1-10, inclusive,

     Defendants.

**Case No. 11-CV-01802 PSG (PLAx)**

**CLASS ACTION**
11-cv-04294-PSG (PLAx)
11-cv-06061-PSG (PLAx)
11-cv-03428-PSG (PLAx)
11-cv-08147-PSG (PLAx)
11-cv-09727-PSG (PLAx)
12-cv-00833-PSG (PLAx)
11-cv-04450-PSG (PLAx)
11-cv-05646-PSG (PLAx)
11-cv-08217-PSG (PLAx)
12-cv-04752-PSG (PLAx)
12-cv-00367-PSG (PLAx)
12-cv-03308-PSG (PLAx)

**PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

DATE:     December 1, 2014
TIME:     1:30 p.m.
CTRM:    880

***Additional Plaintiffs' Counsel***

**CAPSTONE LAW APC**
Raul Perez, Esq. (SBN 174687)
Rebecca Labat, Esq. (SBN _)
Matthew T. Theriault, Esq. (SBN _)
Melissa Grant, Esq. (SBN 205633)
Suzy E. Lee, Esq. (SBN 271120)
1840 Century Park East, Suite 450
Los Angeles, California   90067
Telephone:   (310) 556-4811
Facsimile:    (310) 943-0396
raul.perez@capstonelawyers.com
mgrant@initiativelegal.com
Suzy.lee@capstonelawyers.com
        Attorneys for Plaintiffs Carolyn Salazar, Roger Al-Chaikh, and Estella
        Slikker

**JOSEPH, HERZFELD, HESTER & KIRSCHENBAUM LLP**
D. Maimon Kirschenbaum, Esq. (*Admitted Pro Hac Vice*)
Denise Schulman, Esq. (*Admitted Pro Hac Vice*)
233 Broadway, 5th Floor
New York, New York   10279
Telephone:   (212) 688-5640
Facsimile:    (212) 688-2548
maimon@jhllp.com
denise@jhllp.com

**HARRISON, HARRISON & ASSOCIATES, LTD.**
David Harrison, Esq. (*Admitted Pro Hac Vice*)
110 Highway 35, 2nd Floor
Red Bank, New Jersey   07701
Telephone:   (888) 239-4410
Facsimile:    (718) 799-9171
nycotlaw@gmail.com

Notice of Motion and Motion for Preliminary Approval of Settlement
Case No. 11-CV-01802 PSG (PLAx)

# **TABLE OF CONTENTS**

I. INTRODUCTION .......................................................................................... 1

II. STATEMENT OF FACTS ............................................................................ 5

    A. Synopsis of the Claims of the Litigation ........................................... 5

    B. Procedural Posture ............................................................................ 5

        1. Summary of the Pleadings ..................................................... 5

        2. Relevant Motion Practice ...................................................... 6

    C. Discovery and Investigation .............................................................. 7

    D. Facts Regarding the Mediation ......................................................... 8

III. SUMMARY OF SETTLEMENT ................................................................. 8

IV. THE PROPOSED SETTLEMENT CLASS SHOULD BE PRELIMINARILY CERTIFIED FOR THE FOR PURPOSES OF SETTLEMENT ........................ 13

    A. Fed.R.Civ.P. 23 (a) Requirements Are Met for the Settlement Class ....... 13

        1. Numerosity .......................................................................... 14

        2. Commonality ....................................................................... 14

        3. Typicality ............................................................................. 16

        4. Class Representatives and Their Counsel Satisfy the Adequate Requirements ....................................................................... 18

    B. The Fed.R.Civ.P 23(b) Standards Are Satisfied ............................... 19

        1. Common Issues Predominate ............................................... 19

            a. Common Issues Predominate as to the "Off-the-Clock" Claims, Including Claims that Employees Performed Work During Meal Breaks ............................................ 20

            b. Common Questions Predominate As to Plaintiffs' Expense Claims ...................................................................... 21

        2. The Class Action Device Is Superior to Other Available Methods of Adjudication .................................................................... 21

        3. No Manageability Issues Preclude Certification .................. 21

    C. Joint Certification of Fair Labor Standards Act Collective Action is Appropriate Because Many of Plaintiffs' Theories are Better Supported by

iii

Federal Law and the Parties Wish to Resolve All Disputes Within This Single Case ................................................................................ 22

V.   PLAINTIFFS' LEAD AND LIAISON COUNSEL SHOULD BE APPOINTED AS "SETTLEMENT CLASS COUNSEL" ........................................................ 23

VI.   THE SETTLEMENT CLEARLY MEETS, AND EXCEEDS, THE STANDARDS FOR PRELIMINARY APPROVAL ........................................... 24

1.   The Settlement is Commensurate with the Strength of Plaintiffs' Case and the Settlement Terms Properly Reflect the Risks and Costs Associated With This Case ............................................................. 28

2.   The Risks, Complexity, Expense and Likely Duration of Further Litigation Support Approval ........................................................... 29

VII.   NATURE AND METHOD OF CLASS NOTICE ............................................... 30

VIII.   VIII. CLAIMS ADMINISTRATION ................................................................. 31

A.   The Use of a "Claims Made" Provision in the Settlement is Fair Given the Nature of the Fair Labor Standards Act Opt-In Requirement .................... 31

B.   Appointment of Claims Administrator and Costs of Administration ........ 32

X.   AMOUNT OF ENHANCEMENT AWARDS REQUEST TO BE INCLUDED IN THE SETTLEMENT NOTICE ........................................................................ 33

XI.   SCHEDULE FOR CLAIMS ADMINISTRATION AND FINAL FAIRNESS HEARING ................................................................................................. 35

iv

# **TABLE OF AUTHORITIES**

**Federal Cases**

*Advertising Specialty Nat'l Asso. v. Federal Trade Com.*,
  238 F.2d 108 (1st Cir. 1956) .................................................................... 14

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. Cal. 2001) ........................................................... 14

*Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir.1976) ..................................................................... 24

*Class Plaintiffs v. Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .................................................................. 25

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013) .............................................................................. 19

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ........................................................... 33, 34

*Day v. NLO*,
  851 F.Supp. 869 (S.D. Ohio 1994) ......................................................... 17

*Eisen v. Porsche Cars North America, Inc.*,
  2014 WL 439006 ....................................................................................... 30

*Evon v. Law Offices of Sidney Mickell*,
  688 F.3d 1015 (9th Cir. 2012) .................................................................. 17

*Franklin v. Kaypro Corp.*,
  884 F.2d 1222 (9th Cir.1989) ................................................................... 24

*Gatreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982) .................................................................... 25

*Gould v. Rosetta Stone, Ltd.*,
  2013 WL 5402120 (N.D. Cal. 2013) ....................................................... 25

*Grant v. Capital Mgmt. Servs., L.P.*,
  2013 WL 6499698 (S.D. Cal. 2013) ........................................................ 23

v

*Hanlon v. Chrysler Corp.*,
   150 F. 3d 1011 (9th Cir. 1998) .................................................................. 21, 24, 25, 26

*Hopson v. Hanesbrands Inc.*,
   No. CV-08-0844 EDL, 2009 WL 928133 (N.D.Cal. 2009) ...................................... 34

*In re China Intelligent Lighting & Elecs., Inc. Secs. Litig.*,
   2013 WL 5789237 (C.D. Cal. 2013) ........................................................................ 17

*In re HP Laser Printer Litig.*,
   2011 WL 3861703 (C.D. Cal. 2011) ........................................................................ 25

*In re Itel Sec. Litig.*,
   89 F.R.D. 104 (N.D. Cal. 1981) ............................................................................... 14

*In Re Linerboard Antitrust Litig.*,
   2004 WL 1221350 (E.D. PA. 2004) ......................................................................... 33

*In re MRV Communs., Inc. Derivative Litig.*,
   2013 WL 2897874 (C.D. Cal. 2013) ........................................................................ 29

*In re SmithKline Beckman Corp. Sec. Litig.*,
   751 F.Supp. 525 (E.D.Pa.1990) .............................................................................. 34

*In re Surebeam Corp. Secs. Litig.*,
   2004 WL 5159061 (S.D. Cal. 2004) ........................................................................ 18

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir.2008) .................................................................................. 24

*Joel A. v. Giuliani*,
   218 F.3d 132 (2nd Cir. 2000)................................................................................... 24

*Kress v. PricewaterhouseCoopers, LLP*,
   2009 263 F.R.D. 623 (E.D. Cal. 2009) .................................................................... 22

*Lane v. Facebook, Inc.*,
   2010 WL 9013059 (N.D. Cal. 2010) ........................................................................ 30

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ................................................................................... 25

Notice of Motion and Motion for Preliminary Approval of Settlement
Case No. 11-CV-01802 PSG (PLAx)

*Lazarin v. Pro Unlimited, Inc.*,
    2013 WL 3541217 (N.D. Cal. 2013) ........................................................ 22

*Leyva v. Medline Indus.*,
    716 F.3d 510 (9th Cir. 2013) ................................................................... 19

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ................................................................. 28

*Lou v. Ma Labs., Inc.*,
    2014 WL 68605 (N.D. Cal. 2014) ........................................................... 18

*McElmurry v. U.S. Bank Nat'l Ass'n.*,
    495 F.3d 1136 (9th Cir. Or. 2007) ........................................................... 22

*Mercury Interactive Corp. Secs. Litig. v. Mercury Interactive Corp.*,
    618 F.3d 988 (9th Cir. 2010) ................................................................... 33

*Morey v. Louis Vuitton N. Am., Inc.*,
    2014 WL 109194 (S.D. Cal. 2014) .......................................................... 29

*Murillo v. Pac. Gas & Elec. Co.*,
    266 F.R.D. 468 (E.D. Cal. 2010) ............................................................. 23

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,
    688 F.2d 615 (C.D. Cal. 1982) ........................................................... 25, 27

*Reed v. 1-800 Contacts, Inc.*,
    2014 WL 29011 (S.D. Cal. 2014) ............................................................ 24

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. Cal. 2010) .......................................................... 17

*Rodriguez v. West Publ. Corp.*,
    2007 WL 2827379 (C.D. Cal. 2007), ...................................................... 33

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................... 26

*Sandoval v. Tharaldson Employee Mgmt., Inc., No.*,
    No. EDCV 08-482-VAP, 2010 WL 2486346 (C.D.Cal. 2010) .................................. 34

vii

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ...................................................... 33

*Stuart v. Radioshack Corp.*,
   641 F. Supp. 2d 901 (N.D. Cal. 2009) ......................................... 21

*Thiessen v. GE Capital Corp.*,
   267 F.3d 1095 (10th Cir. Kan. 2001) ........................................... 22

*Tibble v. Edison Int'l.*,
   711 F.3d 1061 (9th Cir. 2013) ..................................................... 17

*Tierno v. Rite Aid Corp.*,
   2006 WL 2535056 (N.D. Cal. 2006) ............................................ 16

*Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices,*
*& Prods. Liab. Litig.*,
   2013 U.S. Dist. LEXIS 123298 (C.D. Cal. 2013) ......................... 30

*U.S. Bancorp. Litig.*,
   291 F.3d 1035 (8th Cir.2002) ...................................................... 34

*United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co.*,
   593 F.3d 802 (9th Cir. Cal. 2010) .......................................... 13, 14

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ................................................................ 17

*Wang v. Chinese Daily News, Inc.*,
   623 F.3d 743 (9th Cir. Cal. 2010) ......................................... 22, 23

*Williams v. Vukovich*,
   720 F.2d 909 (6th Cir.1983) ........................................................ 26

*Wren v. RGIS Inventory Specialists*,
   2011 WL 1230826 (N.D.Cal. 2011) ............................................ 34

*Wright v. Linkus Enters.*,
   2009 WL 1705721 (E.D. Cal. 2009) ............................................ 31

## State Cases

*Brinker Restaurant Corp. v. Superior Court*,

   53 Cal.4th 1004 (2012) ....................................................................... 31, 33

*Capitol People First v. State Dept. of Developmental Services*,

   155 Cal. App. 4th 676 (2007) ................................................................. 29

## Statutes and Rules

29 U.S.C. § 216, *et seq*.................................................................................. 18

California Business & Professions Code § 17200, *et seq*....................................28

Civil Code section 1542 ............................................................................... 23

Fed.R.Civ.P. 23 .................................................................................... passim

Labor Code § 203........................................................................................ 29

Labor Code section 2802 ............................................................................. 33

## Other Authorities

2 Newberg on Class Actions § 11.24 (4th Ed. & Supp. 2002)................................. 38, 43

4 Newberg § 11.41 at 87-89........................................................................... 42

Manual For Complex Litigation (Fourth) § 30.42.......................................... 38

ix

## <u>NOTICE OF MOTION</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 1, 2014, at 1:30 p.m. or as soon thereafter as this matter may be heard, in Courtroom 880 of this Court, located at 255 East Temple Street, Los Angeles, California, 90012-3332, Plaintiffs Evan Hightower, Ann Ross, Carolyn Salazar, Roger Al-Chaikh, Estela Slikker, Regina Simpson, Regina Sturdivant, Dennis Khutoretsky, Boris Shulman, Marlena Gelbart, Malcolm Sweet, Tanesha Gunn, Michelle Nguyen, Joshua Groce, Wendy McWilson, LaToya Stewart, Janet Rebholz, Scarleth Diaz, Jean Thompson, Kicione Dillion, Michael Clark, Tyler Nicholes, and Shirley Wright ("Plaintiffs"), will move for preliminary approval of a class wide settlement reached with Defendant JP Morgan Chase Bank, N.A. ("Chase" or "Defendant").  Defendant does not oppose this Motion.

Said Motion shall be based upon this Notice of Motion, the accompanying Memorandum of Points & Authorities filed herewith, the Declarations of Marcus J. Bradley, Raul Perez, David Harrison, D. Maimon Kirschenbaum, Plaintiff Representative Declarations, the Settlement Agreement entered into by the Plaintiffs and Defendant (collectively the "Parties"), and upon such further evidence, both documentary and oral, as may be presented at the hearing of said motion.

DATED:  October 8, 2014

**MARLIN & SALTZMAN, LLP**

By  /S/  Marcus J. Bradley
    Marcus J. Bradley
Co-Lead Counsel for Plaintiffs

x

# I.   INTRODUCTION

Plaintiffs Evan Hightower, Ann Ross, Carolyn Salazar, Roger Al-Chaikh, Estela Slikker, Regina Simpson, Regina Sturdivant, Dennis Khutoretsky, Boris Shulman, Marlena Gelbart, Malcolm Sweet, Tanesha Gunn, Michelle Nguyen, Joshua Groce, Wendy McWilson, LaToya Stewart, Janet Rebholz, Scarleth Diaz, Jean Thompson, Kicione Dillion, Michael Clark, Tyler Nicholes, and Shirley Wright (collectively "Plaintiffs" or "Named Plaintiffs") seek preliminary approval of the Joint Stipulation of Class Action Settlement and Release Between Plaintiffs, on Behalf of Themselves and all Others Similarly Situated, and Defendant[1] ("Settlement Agreement" or "Settlement") (attached as Exhibit 1 to the Declaration of Marcus J. Bradley ("Bradley Decl.") that, if granted, would provide significant monetary relief for approximately 145,000 current and former employees of Defendant JP Morgan Chase Bank, N.A. ("Defendant" or "Chase") (collectively with Plaintiffs, the "Parties").  Plaintiffs filed a putative class action lawsuit against Defendant alleging violations of both Federal and State law.  Specifically, Plaintiffs allege that Chase's non-exempt retail banking branch employees: (1) performed work "off-the-clock" and, accordingly, were not properly paid all the wages owed for hours worked (including overtime hours worked); (2) were not provided duty-free meal periods and rest breaks; (3) were not provided accurate itemized wages statements; (4) were not reimbursed for all expenses incurred in the performance of their duties; and (5) were not paid all wages due upon cessation of employment.

Prior to reaching the Settlement, the Parties:

- exchanged multiple sets of written requests for discovery;
- produced thousands of pages of documents, personnel files, wage statements, time records, and employment policies;
- reviewed and analyzed, with the assistance of a highly regarded expert, more

---

[1] Unless indicated otherwise, capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

than three million payroll records, more than seven million time-clock records, and more than 200 million transactions records;

- took multiple depositions including: (1) four depositions of witnesses identified by Defendant as "persons most knowledgeable" regarding, *inter alia,* Defendant's timekeeping, overtime, payroll and expense reimbursement policies, (2) the deposition of Plaintiffs' statistical expert, Dr. Martin Shapiro, and (3) the depositions of more than thirty class members throughout the country in twelve different states[2];

- mailed privacy opt-out notices to 13,326 putative class members;

- engaged in informal investigation and conducted interviews/surveys of hundreds of class members;

- researched applicable law and briefed issues regarding enforceability of arbitration agreements, and class and collective action certification; and

- extensively analyzed damages.

Now, after more than four years of litigation, and voluminous briefing on the issue of class and collective action certification, the Parties have reached the class action settlement which is the subject of this motion.  The basic terms of the Settlement provide for the following:

(1)     A Settlement Class defined as:  "all persons employed by Defendant as a "Personal Banker," "Teller," "SSA," or "ABM Trainee" in one of Defendant's branches in Arizona, California, Florida, Illinois, Kentucky, Louisiana, Michigan, New York, Ohio, Texas, Washington, and Wisconsin during the Covered Periods[3]."

---

[2] Depositions were taken in the following states: California, New York, Arizona, Illinois, Michigan, Texas, Louisiana, Georgia, Ohio, Florida, Wisconsin, and Kentucky.

[3] The term "Covered Period" is defined in the Settlement Agreement to be as follows: "a) for California locations, the period between September 25, 2008, through the Date of Preliminary Approval, inclusive; b) for New York locations, the period between July 20, 2005, through the Date of Preliminary Approval, inclusive; c) for Illinois locations, the period between February 17, 2008, through Date of Preliminary Approval, inclusive; and, d) for Arizona, Florida, Kentucky, Louisiana,

2

1   (Exhibit A (I)(8).)

2   (2)   A Maximum Settlement Amount of Twelve Million Dollars $12,000,000 to be

3   paid by Defendant in full satisfaction of the claims arising from this Action.  The

4   Maximum Settlement Amount includes:

5   (a)   The Net Settlement Amount (the Maximum Settlement Amount minus

6   Attorneys' Fees and Costs, Claims Administration Costs, the payment to

7   the California Labor and Workforce Development Agency ("LWDA"),

8   Defendant's share of taxes, and the requested Class Representative

9   Enhancement Payments to Plaintiffs), which will be allocated to

10   participating Class Members on a claims-made basis in proportion to the

11   number of weeks they worked during the Class Period.  At least 65% of

12   the Net Settlement Amount will be paid to participating Class Members,

13   and not retained by Defendant, regardless of the number of claims

14   submitted by participating Class Members;

15   (b)   Attorneys' fees of $3,600,000, and litigation costs and expenses of

16   $200,000, to Plaintiffs' Counsel;

17   (c)   Claims administration costs, currently projected by the parties not to

18   exceed $550,000, to be paid to the mutually agreed upon class action

19   claims administrator CPT Group, Inc.; and

20   (d)   Class Representative Enhancement and class member Service Payments

21   not to exceed the total sum of $222,500 to Named Plaintiffs in recognition

22   of their efforts in prosecuting the action on behalf of Class Members, and

23   obtaining the benefits of the Class Settlement on behalf of the Class, as

24   well as service awards for class members who actively assisted in the

25   litigation by giving declarations in support of Plaintiffs' motion for class

26   and collective action certification and/or sitting for hours of deposition in

27

28   Michigan, Ohio, Texas, Washington, and Wisconsin, the period between February 17, 2008, through the Date of Preliminary Approval, inclusive."

3

furtherance of the litigation.

An objective evaluation of the Settlement confirms that the relief negotiated on the Class' behalf is fair, reasonable, and valuable.  The Parties negotiated the Settlement at arm's length under the guidance of Mr. Michael Dickstein, a well-regarded mediator specializing in resolving wage and hour class actions, and the settlement provides Class Members with valuable relief for their claims.  The relief offered by the Settlement is particularly impressive when viewed against the difficulties encountered by Plaintiffs pursuing wage and hour cases (*see infra*).  Indeed, the proposed relief is arguably superior to the relief that the Class might have obtained after a successful trial because, by settling now rather than proceeding to trial, Class Members will not have to wait (possibly years) for relief.  Of course, settling now also mitigates the substantial risk of class certification being denied or of Defendant prevailing at trial.

The Parties have agreed on the form and content of all the necessary documents to be provided to Class Members to inform them of the Settlement.  They are presented herewith for review and approval by the Court.  The Notice of Settlement, Claim Form and Opt-Out Form, collectively referred to as the "Notice Packet" -- are attached as Exhibits A, B and D, respectively, to the Settlement Agreement.

As discussed below, the proposed Settlement satisfies all criteria for preliminary settlement approval under Rule 23 of the Federal Rules of Civil Procedure, and is reasonable and fair.  Moreover, the proposed Settlement Class is appropriate for provisional certification.  Accordingly, the Parties respectfully request that this Court:

(1)     grant preliminary approval of the Settlement Agreement;

(2)     certify the class for settlement purposes only (which includes approving Named Plaintiffs as class representatives);

(3)     appoint Marcus J. Bradley of Marlin & Saltzman LLP, Raul Perez of Capstone Law APC, David Harrison of Harrison, Harrison & Associates and Maimon Kirschenbaum of Joseph & Kirschenbaum LLP as Class Counsel;

(4)     approve the proposed notice to the settlement class and claim form;

4

(5)      approve the appointment of CPT Group as Settlement Administrator; and

(6)      set a schedule for the mailing of class notice, the submission of claims, and final approval of the settlement.

## II.      STATEMENT OF FACTS

### A.      Synopsis of the Claims of the Litigation

On September 29, 2014, Plaintiffs filed the operative Fourth Amended Complaint.  [ECF No. 169].  Therein, Plaintiffs allege various state wage and hour claims, including claims for overtime, "off-the-clock" work, and unpaid wages under in Arizona, California, Florida, Illinois, Kentucky, Louisiana, Michigan, New York, Ohio, Texas, Washington, and Wisconsin law, and make parallel allegations of federal wage-and-hour violations under the FLSA.  Plaintiffs further allege that they were not reimbursed for certain business expenses such as uniforms in violation of California and New York law, and that they were not provided with meal and rest periods, accurate and itemized wage statements, all wages due upon termination, and all accrued vacation pay under California law.  Plaintiffs also claim that, in addition to California Covered Employees, Covered Employees in Kentucky, New York, Illinois and Washington missed meal and rest periods under the laws of those states.

### B.      Procedural Posture

#### 1.      Summary of the Pleadings

Over the last two years, thirteen related wage and hour actions have been filed against Chase throughout the country.[4]  Each action alleges the same or similarly

---

[4] *Hightower v. J.P. Morgan Chase, N.A.*, Case No. 11-CV-01802 PSG (PLAx) (C.D. Cal.) (the "*Hightower* Action"; *Salazar and Al-Chaikh v. JPMorgan Chase Bank, N.A.*, Case No. 2:11-CV-04294 PSG-PLAx (C.D. Cal.)(the "*Salazar* Action"); *Simpson v. JPMorgan Chase Bank*, Case No.11-CV-6061-PSG-FMOx (C.D. Cal.)(the "*Simpson* Action"); *Nguyen v. JPMorgan Chase Bank, N.A.*, Case No. 12-CV-833-PSG-PLAx (C.D. Cal.)(the "*Nguyen* Action"; *Slikker v. JPMorgan Chase Bank*, Case No. 11-CV-09727 (C.D. Cal.)(the "*Slikker* Action"); *Yanez v. J.P. Morgan Chase Bank, N.A.*, Case No. 11-CV-08217-PSG-PLAx (C.D. Cal.)(the "*Yanez* Action");  *Khutoretsky v. J.P. Morgan Chase & Co.*, Case No. 11-CV-8147-PSG-PLAx (C.D. Cal.) (formerly Southern District of New York Case No. 11-CV-4986)(the "*Khutoresky* Action"); *Gunn v. JPMorgan Chase & Co.*, Case No. 12-CV-00743 (N.D. Ill.)(the "Gunn Action").

5

themed violations as described *supra*.  By Court Order, the Parties consolidated the *Salazar/Al-Chaikh* Action, *Hightower* Action, *Simpson* Action, *Khutoretsky* Action, and the *Slikker* Action.   [ECF No. 48][5].  Subsequently, Plaintiffs filed a Consolidated Complaint.  As with the litigation generally, defense counsel zealously advocated on behalf of their client and filed several challenges to Plaintiffs' amended consolidated complaints.  In total, Plaintiffs' pleadings were the subject of two motions and four amendments.  [see generally ECF Nos. 1, 13, 48, 53, 64, 90, 169]

### 2.    Relevant Motion Practice

Plaintiffs moved for conditional collective action certification under the Fair Labor Standards Act, 29 U.S.C. § 216, *et seq*., as well as certification pursuant to Fed.R.Civ.P. 23. [ECF No.126].  In support of their motion, Plaintiffs filed declarations from forty-four class members, along with declarations from Marlin & Saltzman LLP, Capstone Law APC, Harrison, Harrison & Associates and Joseph & Kirschenbaum ("Plaintiffs' Counsel") and Plaintiffs' statistical expert, Martin Shapiro.  Additionally, in support of their motion, Plaintiffs submitted more than one hundred (100) pages of evidentiary exhibits to this Court.

Defendant filed its Opposition to the Motion for Class and Collective Action Certification on March 13, 2014. [ECF No.147]  Defendant's briefing was similarly exhaustive and likewise contained voluminous evidence including twenty-two declarations from putative class members, more than a thousand of pages of evidentiary exhibits, and the declaration of a rebuttal expert.

After the filing of Defendant's Opposition briefing, the Parties conferred and agreed to mediate the matter in an attempt to avoid further cost and the uncertainty of further litigation.  Accordingly, the Parties filed a Joint Stipulation to Continue Briefing Schedule for Plaintiffs' Motion for Class and Collective Action Certification and to Stay Arbitration Filings Pending Mediation. [ECF No. 157]  On March 31, 2014, the

---

[5] The Court stayed the *Yanez* Action on January 30, 2012. [*Yanez* Action ECF No 18.]  The Court subsequently consolidated the *Nguyen* Action on August 20, 2012. [*Nguyen* Action ECF No. 12]

Court granted the Parties' Stipulation and stayed further briefing and hearing on Plaintiffs' motion for certification.  [ECF No. 158]  Additionally, by this Order the Court stayed its order compelling arbitration (as discussed supra).

### C.   Discovery and Investigation

As is evident in the record before this Court, the parties engaged in exhaustive discovery and analysis of the issues of certification.  It must be noted, however, that the Parties' investigation was not limited to the issue of certification, but involved extensive analysis and investigation regarding the underlying merits of Plaintiffs' claims as well as potential damages.  Indeed, the Parties engaged in very active discovery as to all facets of the litigation.  Plaintiffs propounded substantial requests for production of written documentation which related to Defendant's policies and procedures, as well as interrogatories.  In response thereto, Defendant produced more than 7,000 pages of documents, each of which was reviewed and analyzed by Plaintiffs' counsel.  Such production included policy documents and personnel files.  Additionally, Defendant produced voluminous electronic timekeeping, payroll and transaction data. Indeed, with the assistance of their expert, Plaintiffs reviewed and analyzed 3,373,154 payroll records, 7,011,885 time-clock records, and 204,889,096 transactions records, for a grand total of 215,274,135 records.

In turn, Plaintiffs produced hundreds of pages of documents in response to written discovery propounded on the Named Plaintiffs.  This exchange of documents proved crucial in regard to the investigation of the claims raised in the litigation, and in making ultimate determinations as to which alleged violations could, in the opinion of Plaintiffs' counsel, be factually established.

In addition to obtaining responses to written discovery, Counsel took more than thirty (30) depositions of Class Members from twelve different states throughout the nation including California, New York, Texas, Michigan, Louisiana, Chicago, Illinois, Arizona, Florida, Georgia, Wisconsin, Ohio, and Kentucky. Additionally, counsel on both sides had the benefit of reviewing declarations submitted by more than fifty class

7

members in thirteen distinct states.

Overall, the breadth of discovery available to the Parties permitted a thorough and detailed analysis of the viability of certification, the merits of Plaintiffs' claims and Defendant's defenses and the Chase's exposure for damages at issue in this litigation.

### D.    Facts Regarding the Mediation

After the above comprehensive formal and informal discovery had been completed, the Parties participated in a mediation session in an attempt to resolve the case without unnecessary and protracted litigation.   On May 13, 2014, the Parties mediated in Los Angeles, with attorney Michael Dickstein, a well-respected attorney-mediator specializing in wage and hour class actions.   As a result of these thoroughly-informed, diligent, and arms-length negotiations -- after more than twelve hours of mediation-- the Parties were able to execute a Memorandum of Understanding ("MOU").

The Parties then immediately moved into the final negotiations of the formal Settlement Agreement now presented to this Court as the Joint Stipulation and filed herewith.   In the months following the execution of the MOU, the parties continued to negotiate various terms of the Settlement Agreement. Recognizing the critical opportunity to resolve the matter for the benefit of both the putative class and the Defendant, the settlement negotiations which ensued were non-collusive, adversarial, and at arm's length, as required for appropriate class action settlements.   Plaintiffs, the class and its counsel, on the one hand, and Defendant and its counsel, on the other hand, agree that the settlement is reasonable, fair and equitable to both sides.

### III.    SUMMARY OF SETTLEMENT

The terms of the Settlement are set forth in the Joint Stipulation of Settlement, which is attached to the Bradley Declaration and incorporated herein by reference, and

include the following principal terms:[6]

The Proposed Settlement Class is comprised of "all persons employed by Defendant as a 'Personal Banker,' 'Teller,' 'SSA,' or 'ABM Trainee' in one of Defendant's branches in Arizona, California, Florida, Illinois, Kentucky, Louisiana, Michigan, New York, Ohio, Texas, Washington, and Wisconsin during the Covered Periods. " (Exhibit A to Bradley Decl., section (I)(8)). Covered periods is defined in the Settlement Agreement to mean "a) for California locations, the period between September 25, 2008, through the Date of Preliminary Approval, inclusive; b) for New York locations, the period between July 20, 2005, through the Date of Preliminary Approval, inclusive; c) for Illinois locations, the period between  February 17, 2008, through Date of Preliminary Approval, inclusive; and, d) for Arizona, Florida, Kentucky, Louisiana, Michigan, Ohio, Texas, Washington, and Wisconsin, the period between  February 17, 2008, through the Date of Preliminary Approval, inclusive." (*Id*. at section (I)(13).

A maximum "Settlement Amount" of Twelve Millions Dollars ($12,000,000.00) will be distributed as follows: For each Covered Position in each state, the Settlement Administrator will multiply the total number of workweeks in that state worked by Class Members and/or FLSA Collective Members in the Covered Position by the average weekly pay rate for the Covered Position in that state and by any applicable State Multiplier.  The Settlement Administrator will then divide that number by the sum of this calculation for all Covered Positions in all states.  The resulting percentage will be the percent of the Net Settlement Amount that will be allocated to all Class Members and/or FLSA Collective Members in the Covered Position in that state.

The Individual Settlement Amount for each Qualified Claimant shall be

---

[6] This Settlement Agreement represents the only agreement between the Parties involved.

determined by multiplying the percentage of total workweeks of a Covered Position in that state that were worked by the Qualified Claimant by the percentage of the Net Settlement Amount allocated to the Covered Position in that state.  For purposes of calculating the Individual Settlement Amount, workweeks in California and New York will be multiplied by 5, workweeks in Illinois, Washington and Kentucky will be multiplied by 3, and workweeks in Arizona, Florida, Louisiana, Michigan, Ohio, Texas and Wisconsin will be multiplied by 2. Such a multiplier accounts for the additional state law claims released as part of this Settlement.

All class members who submit a timely claim form will receive a share of the Net Settlement Amount (after attorneys' fees, costs, incentive payments, settlement administrator fees, PAGA penalties, and employer-side taxes).

Plaintiffs and participating class members will receive incentive and service payments in a collective amount not to exceed $222,500 distributed as follows:

- Lead Plaintiffs shall receive $10,000 each for their efforts and service[7];
- Additional Named Plaintiffs shall receive $7,500 each for their efforts and service[8];
- Class Members who provided depositions shall receive $1,000 each for their efforts and service; and
- Class Members who provided declarations in support of certification shall receive $500 each for their efforts and service.

A total of $25,000 is allocated to the Labor and Workforce Development Agency for PAGA penalties, 75% of which will be paid to the State of California, as required by

---

[7] There are seven "Lead Plaintiffs," Evan Hightower, Ann Ross, Carolyn Salazar, Roger Al-Chaikh, Dennis Khutoretsky, Boris Shulman, and Tanesha Gunn.
[8] There are seventeen "Additional Named Plaintiffs," Regina Simpson, Regina Sturdivant, Estela Slikker, Marlena Gelbart, Malcolm Sweet, Michelle Nguyen, Shirley Wright, Scarleth Diaz, Jean Thompson, Kiaone Dillon, Joshua Groce, Michael Clark, Wendy McWilson, Tyler Nicholes, Latoya Stewart, Janet Rebholz, and Jose Yanez.

PAGA.

The Parties have allocated $200,000 to reimburse Plaintiffs' costs in litigating this action and $3,600,000 to Plaintiffs' attorney's fees, subject to Court approval, and without objection from Defendant.

Named Plaintiffs will provide a general release of all claims with a Civil Code section 1542 waiver (Plaintiff Carolyn Salazar's seating claim is excluded since she is lead plaintiff in a pending representative action against Chase). Class members will waive all:  a) wage-hour and wage-hour related claims for unpaid wages (including but not limited to minimum wage, overtime, and straight time) under state law as alleged in the Fourth Amended Complaint during the relevant Covered Period; b) all state and local wage and hour claims and related or derivative claims during the Covered Period in California, New York, and Illinois that could have reasonably been made out of the same facts alleged in the Fourth Amended Complaint (excluding any seating claim); and c) all meal and rest break claims under state law in Kentucky or Washington during the relevant Covered Period.  This Release will include claims that were made or could have reasonably out of the same facts alleged in the Fourth Amended Complaint, with a similarly scoped Civil Code section 1542 waiver for class members who worked in a branch located in California (excluding any seating claim). Those class members who submit a claim form will also waive any claims under the Fair Labor Standards Act. The effective date of the release will be the date the Settlement Agreement becomes effective.

The Parties have agreed on the form of the Notice, Claim Form and Opt Out Form to be mailed to the Class and which are attached as Exhibits A, B and D to the Settlement Agreement - and are collectively referred to as the "Notice Packet." Moreover, the Parties intend to use reasonable means to locate Class Members.  The Settlement Administrator will perform one skip trace on returned mail and re-mail Claim Forms to an updated address (if any).

The Settlement Administrator shall cause to have a short form of the Class Notice

11

of Settlement published on the settlement website.  Additionally a link to the claim form shall be available from Class Counsel's websites.

Settlement Administrator shall pay over (escheat) the amount of all un-cashed check(s) to the class member's applicable state of residence for the benefit of the individual member(s) of the Settlement Class.

Upon final approval of the settlement by the Court, the Settlement Class, comprised of all Class Members to whom mailing has been duly completed or attempted, and who have not submitted a timely and valid Request for Exclusion form, shall be held to have agreed to release Defendant from the settled claims.

If the Court grants preliminary approval, the timetable of events is anticipated as follows:

| EVENT | TIME |
|---|---|
| Defendant to provide the Settlement Administrator the most recent names, last known residence addresses and telephone numbers, social security numbers for all Class Members and/or FLSA Collective Members, as well as any relevant information regarding their dates of employment in Covered Positions. | Within 21 days after the Date of Preliminary Approval |
| Settlement Administrator to complete any skip trace or other address searched for Class Members and/or FLSA Collective Members, including updating any contact information.<br><br>Mailing by first class mail of Settlement Documents. | 45 days after Preliminary Approval of Settlement |
| Settlement Administrator to mail a reminder postcard to all Class Members who have not submitted a Consent Form or Exclusion Form | 45 days after mailing Settlement Documents |

Notice of Motion and Motion for Preliminary Approval of Settlement
Case No. 11-CV-01802 PSG (PLAx)

| Deadline for Class Members and/or FLSA Collective Members to submit a claim and deadline for Class Members to opt-out or object. | 90 days after mailing Settlement Documents |
| Last day to rescind objections or opt-outs. | 1 business day prior to the hearing on Final Approval |
| Hearing on Motion for Final Approval | |

## IV.   THE PROPOSED SETTLEMENT CLASS SHOULD BE PRELIMINARILY CERTIFIED FOR THE FOR PURPOSES OF SETTLEMENT

The parties seek preliminary certification of a class defined in the Settlement Agreement as follows:

- "all persons employed by Defendant as a 'Personal Banker,' 'Teller,' 'SSA,' or 'ABM Trainee' in one of Defendant's branches in Arizona, California, Florida, Illinois, Kentucky, Louisiana, Michigan, New York, Ohio, Texas, Washington, and Wisconsin during the Covered Periods." (Exhibit A (I)(8))[9].

### A.   Fed.R.Civ.P. 23 (a) Requirements Are Met for the Settlement Class

In certifying a class pursuant to Rule 23, Plaintiffs have the burden of showing the four requirements of Rule 23(a) as well as one of the requirements of Rule 23(b). The four requirements of Rule 23(a) are typically referred to as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. *United Steel, Paper & Forestry,*

---

[9] Covered periods, is defined in the Settlement Agreement to mean "a) for California locations, the period between September 25, 2008, through the Date of Preliminary Approval, inclusive; b) for New York locations, the period between July 20, 2005, through the Date of Preliminary Approval, inclusive; c) for Illinois locations, the period between February 17, 2008, through Date of Preliminary Approval, inclusive; and, d) for Arizona, Florida, Kentucky, Louisiana, Michigan, Ohio, Texas, Washington, and Wisconsin, the period between February 17, 2008, through the Date of Preliminary Approval, inclusive." (Exhibit 1 to Bradley Decl., at (I)(13).

13

*Rubber, Mfg. Energy v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. Cal. 2010).  In this case, the Parties agree to provisional certification of the Settlement class under Rule 23(b)(3) which has the added requirements of "predominance." *Id.*

The Parties also stipulate to simultaneous provisional certification of a Fair Labor Standards Act collective action and the requirements for this will be discussed briefly below as the collective action requirements are significantly less than those required for class certification.

### 1.    Numerosity

Rule 23(a)(1) is typically referred to as "numerosity" in that it requires a class that is "so numerous that joinder of all members is impracticable." The term "impracticable" does not mean "impossible," and only refers to "the difficulty or inconvenience of joining all members of the class." *Advertising Specialty Nat'l Asso. v. Federal Trade Com.*, 238 F.2d 108, 119 (1st Cir. 1956).  Courts have regularly certified classes with less than one hundred members.  See *In re Itel Sec. Litig.*, 89 F.R.D. 104, 111-12 (N.D. Cal. 1981) ("Where the number of class members exceeds forty, and particularly where class members number in excess of one hundred, the numerosity requirement will usually be met."). Here, numerosity cannot be denied.  There are over 145,000 class members and it would clearly not be practical to join such a large number of parties to a lawsuit.  Therefore, in this case, the numerosity requirement is satisfied.

### 2.    Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." The Ninth Circuit has held that commonality exists "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. Cal. 2001).

Here, Plaintiffs allege that Defendant's systemic practice of requiring employees to perform work "off-the-clock" for which they are not compensated coupled with their uniform expense reimbursement, meal and rest break, and, among others, wage payment policies, give rise to the following common questions of law and fact:

(a) Whether Chase's policies and practices described in this Complaint were and are illegal;

(b) Whether Chase failed to properly pay class members all of the wages, including overtime, double-time wages, and agreed wages, due and owing to them in accordance with federal, California, New York, Illinois, Arizona, Florida, Kentucky, Louisiana, Michigan, Ohio, Texas, Washington and Wisconsin law;

(c) Whether Chase has engaged in a common course of failing to factor in all forms of remuneration to calculate overtime pay rates, including without limitation commissions and nondiscretionary bonuses;

(d) Whether Chase has engaged in a common course of requiring or permitting its non-exempt employees not to report all hours worked;

(e) Whether Chase failed to properly pay non-exempt employees the minimum wages due and owed to them in accordance with federal and applicable state California law;

(f) Whether Chase failed to properly pay class members the regular-time wages due and owed to them in accordance with federal and California law;

(g) Whether Chase has engaged in a common course of failing to maintain true and accurate time records for all hours worked by its non-exempt employees;

(h) Whether Chase has engaged in a common course of altering the time records of its non-exempt employees in violation of applicable state law;

(i) Whether Chase has failed to pay all wages due, including overtime compensation, by causing Chase managers to "computer edit" Plaintiffs' and all other class members' work-times in violation of applicable state law;

(j) Whether Chase failed to provide its non-exempt employees with uninterrupted meal breaks as required by applicable state law;

(k) Whether Chase failed to provide its non-exempt employees with uninterrupted rest breaks as required by applicable state law;

15

(l) Whether Chase failed to possess compliant policies for meal and rest periods as required by applicable state law;

(m) Whether Chase to pay all compensation due and owing to class members at termination of employment as required by applicable state law;

(n) Whether Chase has engaged in a common course of failing to pay its non-exempt employees for all vested and unused vacation pay at the time of termination in violation of applicable state law;

(o) Whether Chase failed to reimburse Plaintiffs and class members for all necessary business and uniform expenses incurred in violation of applicable state law;

(p) Whether Chase failed to provide accurate itemized wage statements to class members in violation of applicable state law;

(q) Whether Chase failed to maintain accurate time records in accordance with federal and applicable state law;

(r) Whether Chase has engaged in unfair competition by the above-listed conduct in violation of California Business & Professions Code § 17200, *et seq*.;

(s) Whether Chase's actions were willful; and

(t) The appropriate amount of damages, restitution, fees or monetary penalties resulting from Chase's violations of federal, California, New York, Illinois, Arizona, Florida, Kentucky, Louisiana, Michigan, Ohio, Texas, Washington and Wisconsin law.

These common issues satisfy Rule 23(a)(2)'s requirements.  *See e.g. Tierno v. Rite Aid Corp.*, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006) (certifying a class of retail store managers with common wage and hour claims.)

### 3.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  This requirement is "permissive" and requires only that the representative's claims are reasonably related to those of the

16

absent class members.  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. Cal. 2010). The permissive standard of typicality focuses on similarity between the legal theories of the proposed class representatives and the legal theories of those class members they seek to represent.  See *Tibble v. Edison Int'l*, 711 F.3d 1061, 1074 (9th Cir. 2013); *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012).[10]  In deciding whether individual variations preclude typicality, the focus should be on the behavior of the defendants. *Day v. NLO*, 851 F.Supp. 869, 884 (S.D. Ohio 1994); *Capitol People First v. State Dept. of Developmental Services*, 155 Cal. App. 4th 676, 692-93 (2007). Typicality is met here as the claims of the Settlement Class are based on the same legal and factual claims as those of Plaintiffs.

Here, Evan Hightower, Ann Ross, Carolyn Salazar, Roger Al-Chaikh, and Estela Slikker, Regina Simpson, Regina Sturdivant, Dennis Khutoretsky, Boris Shulman, Marlena Gelbart, Malcolm Sweet, Tanesha Gunn, Michelle Nguyen, Joshua Groce, Wendy McWilson, LaToya Stewart, Janet Rebholz, Scarleth Diaz, Jean Thompson, Kicione Dillion, Michael Clark, Tyler Nicholes, and Shirley Wright ("Class Representatives") seek to represent the Settlement Class.  The claims alleged by the Class Representatives in the Fourth Amended Consolidated Complaint are all for violations of various wage and hour laws. Named Plaintiffs claim to have suffered (i) the violations pleaded, (ii) unpaid off-the-clock work including overtime pay, (iii) missed meal and rest breaks, (iv) wage statement violations and (v) failure to pay all wages at termination. In addition, several Class Representatives in California no longer work for Chase so they have standing to assert claims for penalties under Labor Code § 203.

/ / /

---

[10] The typicality and commonality requirements "tend to merge," and a finding of commonality ordinarily will support a finding of typicality. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 n.5 (2011); *In re China Intelligent Lighting & Elecs., Inc. Secs. Litig.*, 2013 WL 5789237 (C.D. Cal. 2013).

17

### 4. Class Representatives and Their Counsel Satisfy the Adequate Requirements

The proposed Class Representatives and their counsel have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement has two prongs, the first being "that the representative party's attorney be qualified, experienced, and generally able to conduct the litigation." *In re Surebeam Corp. Secs. Litig.*, 2004 WL 5159061, *5 (S.D. Cal. 2004). In this case, there is no reason to doubt the adequacy of Plaintiffs' Counsel,[11] Marlin & Saltzman LLC, Capstone Law APC, Joseph & Kirschenbaum LLP and Harrison, Harrison & Associates, Ltd ("Plaintiffs' Counsel") have already been appointed lead counsel of these consolidated actions. [ECF No. 36].

The second prong of the adequacy test is "that the suit not be collusive and plaintiff's interests not be antagonistic to those of the remainder of the class." *In re Surebeam Corp. Secs. Litig.*, 2004 WL 5159061, *1-2 (S.D. Cal. 2004); *Lou v. Ma Labs., Inc.*, 2014 WL 68605, *5 (N.D. Cal. Jan. 8, 2014). Here, there is no evidence of antagonism between the Class Representatives' interests and those of the Settlement Class. The Class Representatives have litigated this case in good faith and the interests of the Class Representatives are aligned with those of the Settlement Class as they both share a common interest in challenging the legality of Chase's policies and procedures. Moreover, there is no evidence of any collusion between the Parties. Plaintiffs' counsel convinced Chase to pay up to $12 million to settle the claims herein and counsel was only able to negotiate this sum after reviewing more than seven thousand of pages of documentary evidence, analyzing voluminous electronic timekeeping, payroll and transaction data, painstakingly briefing all of the issues underlying certification (many of which overlap with ultimate "merits-based" issues) and engaging in hours of

---

[11] See Declaration of Marcus J. Bradley ("Bradley Decl."), Declaration of Raul Perez ("Perez Decl."), Declaration of David Harrison ("Harrison Decl.); and Declaration of Denise Schulman ("Schulman Decl.").

negotiation with an experienced mediator followed by weeks of negotiation between the parties. (Bradley Decl. at ¶¶9, 10.)

For these same reasons—that Class Representatives will fairly and adequately protect the class' interests, that they have no antagonistic interests to the class, and that they have litigated this case in good faith—they should be appointed as Class Representatives.  Moreover, at the Final Approval Hearing, Class Counsel will request Service Enhancement Payments to compensate the Class Representatives for their efforts in prosecuting this matter, and for the risks and stigma they face – and will continue to face – for doing so. Plaintiffs also seek service awards for class members who actively assisted in the litigation by giving declarations in support of Plaintiffs' motion for class and collective action certification and/or sitting for hours of deposition in furtherance of the litigation.  The actions of these individuals provided invaluable insight for both parties, permitting a full analysis of the merits of the litigation and the viability of certification.

## B.    The Fed.R.Civ.P 23(b) Standards Are Satisfied

### 1.    Common Issues Predominate

In addition to the Rule 23(a) requirements, a district court must also find that common issues of law or fact "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class in this case is sufficiently cohesive to warrant adjudication by representation. See *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1436 (2013). Furthermore, because the "predominance" factor concerns liability, any variation in damages is plainly insufficient to defeat class certification. *Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013). Plaintiffs contend all claims in this litigation are based on Chase's common, class-wide policies and procedures, and that liability could accordingly be determined on a class-wide basis, without dependence on individual assessments of liability. *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1033 (2012) ("Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour

19

laws are of the sort routinely, and properly, found suitable for class treatment."). As Plaintiffs' Fourth Amended Consolidated Complaint reveals, Chase's alleged liability in these actions stems from four primary claims, which all arise out of the company's uniform policies and procedures: (1) off-the-clock claims; (2) meal and rest break claims; (3) overtime claims; and (4) expense reimbursement claims.

> ### a.   Common Issues Predominate as to the "Off-the-Clock" Claims, Including Claims that Employees Performed Work During Meal Breaks[12]

Plaintiffs allege Class Members' "off-the-clock" claims stem from several of Chase's common policies. First, Plaintiffs contend Chase enforces a uniform "security" policy requiring employees to remain within the company's control following the end of their closing shift.   As written, Chase's policy provides, in part, that departing employees should exit the branch in groups of two or more. The practical effect of this policy is that an employee is made to remain under Chase's control while he/she waits for the next available employee to walk him/her out.   Chase fails to instruct Class Members that this waiting time should be included on the employees time sheets and, accordingly, Plaintiffs and the members of the Settlement Class were not compensated for this time.

In addition to the restrictive "security" policy described above, Plaintiffs allege that Chase maintained uniform practices resulting in "off-the-clock" unpaid work. Plaintiffs contend that systemic understaffing of branches, and unrealistic expectations and goals, resulted in the required performance of several shared tasks which putative class members reported were performed before and after shifts, and during breaks, without pay.   In failing to provide meal and rest breaks, Plaintiffs further allege that Chase violated State law in California, Washington and Kentucky.

/ / /

---

[12] Plaintiffs' derivative claims, predicated upon, *inter alia*, these allegations likewise implicate overriding common issues.

20

### b.      Common Questions Predominate As to Plaintiffs' Expense Claims

Like the claims discussed above, Plaintiffs submit that the Class Members' Labor Code section 2802 reimbursement claims also arise out of a common policy—namely, Chase's mandate that employees wear Chase logo apparel during every work shift. While Chase provided limited reimbursement for such expenses, putative class members routinely testified that such reimbursements were insufficient to compensate the Class Members for all expenses incurred.  See *Stuart v. Radioshack Corp.*, 641 F. Supp. 2d 901, 904-05 (N.D. Cal. 2009) (simply promulgating a policy does not satisfy the employer's obligation under Labor Code section 2802 when the employer "knew or had reason to know an expense was incurred."); *Brinker*, 53 Cal.4th at 1033 (question of whether uniform policy is unlawful "is by its nature a common question eminently suited for class treatment.").

### 2.      The Class Action Device Is Superior to Other Available Methods of Adjudication

The class action device proposed herein is "superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3). Conditional certification of the Settlement Class will allow Class Members' claims to be fairly, adequately, and efficiently resolved to a degree that no other mechanism or forum would provide.   As in *Hanlon*, the alternative methods of resolution are individual claims for a relatively small amount of damages. *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1019-20 (9th Cir. 1998).  These claims "'would prove uneconomic for potential plaintiffs' because 'litigation costs would dwarf potential recovery.'" *Id.* at 1023.

### 3.      No Manageability Issues Preclude Certification

Finally, no issues of manageability would preclude certification of the Settlement Class. A court faced with a request for a settlement-only class like this one need not inquire whether the case would present intractable problems of trial management, even

21

though other requirements under Rule 23 must still be satisfied.  See, e.g., *Lazarin v. Pro Unlimited, Inc*., 2013 WL 3541217, *5 (N.D. Cal. 2013).   In any event, as discussed below, the proposed plan of distribution and settlement process are efficient and manageable.

**C.**     **Joint Certification of Fair Labor Standards Act Collective Action is Appropriate Because Many of Plaintiffs' Theories are Better Supported by Federal Law and the Parties Wish to Resolve All Disputes Within This Single Case**

In addition to claims for violations pursuant to the laws of the states of Arizona, California, Ohio, Illinois, Louisana, Kentucky, New York, Florida, Texas, Michigan and Washington, Plaintiffs have raised claims under the Fair Labor Standards Act (FLSA).  Unlike a Rule 23 class action which is conducted on an opt-out basis, a collective action under the FLSA is conducted on an opt-in basis.  *McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1139 (9th Cir. Or. 2007).

In managing a collective action, the typical procedure in the Ninth Circuit is to follow a "two-tier" approach.  *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623 , 627 (E.D. Cal. Nov. 25, 2009).  Under this approach, the first tier is used to send notice to "similarly situated" individuals. *Id*.   In determining whether individuals are "similarly situated" for purposes of a collective action, the Court "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* quoting *Thiessen v. GE Capital Corp*., 267 F.3d 1095, 1102 (10th Cir. Kan. 2001). The standard is "fairly lenient," and typically results in certification.  *Id*.

As noted above, all the individuals in this case are similarly situated in that they were subject to the same policies for computing the regular-rate-of-pay. As such, certification of the FLSA collective action is appropriate.

The Ninth Circuit has ruled that simultaneous Rule 23 class actions and FLSA collective actions are permissible.  *Wang v. Chinese Daily News, Inc*., 623 F.3d 743

22

(9th Cir. Cal. 2010). The result of these hybrid Rule 23 and FLSA actions is that the individuals who do not opt-in to the case are not bound as to the result for any FLSA claims but will be bound as to the result of any state law claims. *Id*. Provided this distinction is adequately explained to the class members, then a hybrid approach is permissible. *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 472 (E.D. Cal. 2010). As the Proposed Notice clearly spells out the Class Members' obligations to submit an opt-in form and explains the consequences of not doing so, the Proposed Notice is sufficient in this regard.

## V.   PLAINTIFFS' LEAD AND LIAISON COUNSEL SHOULD BE APPOINTED AS "SETTLEMENT CLASS COUNSEL"

Federal Rule of Civil Procedure 23(g) requires that courts consider the following four factors when appointing settlement class counsel: (1) whether counsel has investigated the class claims; (2) whether counsel is experienced in handling class actions and complex litigation; (3) whether counsel is knowledgeable regarding the applicable law; and (4) whether counsel will commit adequate resources to representing the class. *See Grant v. Capital Mgmt. Servs., L.P.,* 2013 WL 6499698, *2-3 (S.D. Cal. 2013). Defendant does not dispute that Plaintiffs' Counsel meets these requirements for purposes of the present Settlement (and, indeed, this Court already appointed Plaintiffs' Counsel as Lead Counsel for litigation purposes); however, even if such appointment was opposed, it is clear from the record presented herein that Plaintiffs' Counsel should be appointed settlement Class Counsel.

There is no reason to doubt these law firms' experience, knowledge or commitment. As revealed by the professional resumes and declarations Plaintiffs' Counsel are highly experienced and knowledgeable regarding complex federal and state wage and hour class actions like this one. (See Bradley Decl. at ¶¶17-19; Perez Decl. at ¶¶ 4-7; Kirschenbaum at ¶¶ 11-15; Harrison Decl. at ¶¶ 11-14).Indeed, Plaintiffs' Counsel has handled other wage and hour cases on behalf of banking branch employees and successfully obtained collective action certification of classes alleging claims just

23

like those raised in this lawsuit.

In sum, these class action firms have fully committed their resources to represent the class in this case, have the skill and expertise to do it properly, and will continue to do so whether or not the Settlement is approved.  Accordingly, appointment of Marcus J. Bradley of Marlin & Saltzman LLP, Raul Perez of Capstone Law APC, David Harrison of Harrison, Harrison & Associates and Maimon Kirschenbaum of Joseph & Kirschenbaum LLP as Class Counsel, is appropriate.

## VI.   THE SETTLEMENT CLEARLY MEETS, AND EXCEEDS, THE STANDARDS FOR PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive Court approval.   The primary concern of Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations.  *Reed v. 1-800 Contacts, Inc.*, 2014 WL 29011, *5 (S.D. Cal. 2014).  The court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion."  *Hanlon,* 150 F.3d at 1026; *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000).

In determining whether a proposed settlement should be approved, federal policy strongly favors the settlement of class action suits.  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir.2008) ("there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned").  Indeed, there is an "overriding public interest" in settling class actions.  *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir.1989) (citing *Von Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir.1976)).  Court approval involves a two-step process in which the Court first determines whether the proposed settlement deserves preliminary approval and then, after notice is given to Class Members, whether final approval is warranted. Manual of Complex Litigation, Fourth, § 21.632 (2004).  See, *Hanlon*, 150 F.3d at 1019 ("The court ordinarily holds a preliminary hearing to determine whether there is a

24

likelihood it could approve the settlement, before conducting a full 'fairness hearing'").

At the preliminary approval stage, the Court need only "determine whether the proposed settlement is within the range of possible approval." *Gatreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). Ultimately, a class action should be approved if "it is fundamentally fair, adequate and reasonable." *Class Plaintiffs v. Seattle*, 955 F.2d 1268,1276 (9th Cir. 1992); See also *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (C.D. Cal. 1982) ("the court's intrusion on what is otherwise a private consensual agreement negotiated between parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned"). Indeed, as a "[s]ettlement is the offspring of compromise," the question upon preliminary approval "is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *In re HP Laser Printer Litig.*, 2011 WL 3861703, *3 (C.D. Cal. 2011). Accordingly, a court should not second-guess the parties, or substitute its judgment for that of the proponents of the settlement, particularly when experienced counsel familiar with the litigation have reached settlement. See *Gould v. Rosetta Stone, Ltd.*, 2013 WL 5402120, *3 (N.D. Cal. 2013). Instead, there is a "strong initial presumption that the compromise is fair and reasonable." *Hanlon*, 150 F.3d at 1019; see also *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) ("Whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court.")

Here, as shown below, the proposed Settlement falls well within the range of reasonableness.

## A.   The Settlement Agreement Resulted from Arm's-Length Negotiations

The Ninth Circuit has consistently affirmed its longstanding support of settlements reached through arm's length negotiation by capable opponents. In

25

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties." *Id*. at 965, citing *Hanlon*, 150 F.3d at 1027; and to assure itself that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. Certainly, with the extensive pre-mediation case work-up and discovery discussed above all of these factors are present here.

The *Rodriguez* court "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested." *Rodriguez*, 563 F.3d at 965 (citations omitted). As the Court explained, "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Id*. at 965 (citations omitted).  See also, *Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir.1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); 2 Newberg on Class Actions § 11.24 (4th Ed. & Supp. 2002); Manual For Complex Litigation (Fourth) § 30.42.)

The proposed settlement now before this Court is the product of extensive discovery and the involvement of an extremely experienced mediator.  In short, full and complete arm's-length negotiations have occurred.  Throughout this litigation, the Parties have vigorously asserted their respective positions. Defendant has been continuously represented by very capable counsel who have taken every opportunity to develop all aspects of their defenses.  With the benefit of the significant exploration of the facts and law during the prosecution and discovery phase of the case, and the benefit of voluminous briefing on the issue of class certification, and this Court's ruling on Defendant's motion to compel arbitration, Class Counsel were able to fully consider the strengths and weaknesses of their case.  Accordingly, by the time the settlement was reached, both Parties were capable of being fully informed in regard to all aspects of the

26

case.

The ultimate settlement of $12 million for approximately 145,000 class members supports the fairness and benefits of the settlement to the class. The settlement has been reached after considerable negotiation, involving the mediation efforts of a highly experienced mediator. Each side evaluated the strengths and weaknesses of their case and independently came to the conclusion that this settlement represents a responsible means of addressing the claims of Plaintiffs, and the defenses of Defendant. Given that there are approximately 145,000 Class Members, the average net recovery will be approximately $52 if everyone participates. This average net recovery is comparable to other wage and hour class action settlements approved by state and federal courts. *See*, *e.g.*, *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297(L.A. County Super. Ct. July 23, 2010) (average net recovery of approximately $20). Given the foregoing, the settling parties now urge this Court to grant preliminary approval.

## B. The Settlement Has No Obvious Deficiencies

The proposed settlement has no obvious deficiencies. Under the terms of the settlement, Defendant has committed to pay twelve million dollars to resolve the settled claims. The settlement provides no preferential treatment for Plaintiffs or other Class members. Plaintiffs will receive a distribution from the settlement proceeds calculated in the same manner as the distributions to all other Class Members.

There is no precise benchmark for determining whether a settlement is fair. "Ultimately the district court's determination represents "an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, supra, at 625 (citation omitted). In making its determination, the Court should weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement.

27

See, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

Here the amount of the settlement overall bears an appropriate relationship to the risk of prevailing on the merits at trial. It provides compensation to claimants based upon their number of eligible workweeks and the state in which their employment with Defendant was performed. This method is the most precise and most fair means to distribute the settlement proceeds. This method allows greater payments to those who allege state law claims in additional to claims under the FLSA. Further, the amounts paid to each class member are allocated so that not all are taxable wages, which reflects an appropriate allocation to interest.

### 1.   The Settlement is Commensurate with the Strength of Plaintiffs' Case and the Settlement Terms Properly Reflect the Risks and Costs Associated With This Case

Based on discussions with the Class Representatives, interviews of numerous Class Members, and the review of extensive documentary evidence produced by Chase both formally and informally in the course of litigation and settlement negotiations, Plaintiffs' Counsel assessed the potential value of the class claims being released by the proposed Settlement by performing complex calculations on this data. In making such calculations, Class Counsel weighed the total possible Class recovery reflected above against many risk factors, including:

a.   The great discretion afforded to trial courts in electing to grant or deny class certification, meaning it is entirely possible that this Court would deny certification of the proposed classes, resulting in no recovery whatsoever for the unnamed Class Members;

b.   This Court's Order denying certification in the related case of *Kemah Henderson, et al v. JPMorgan Chase Bank*, Case No. CV 11-3428.;

c.   Defendant's argument that there are no common issues, based on the wide variation in Chase's branch layout, customer volume, foot traffic, and number of employees [ECF No. 147 at 3:13-23.]

28

d. any discrepancies in the deposition testimony of Plaintiffs and Class Members,

e. Chase's contention that its facially compliant written policies required employees to record all time worked and prohibiting "off-the-clock" work;

f. Chase's argument that determining whether and why any individual employee did not take a break allegedly would require hundreds (and in this case, thousands) of mini-trials to determine liability;

g. Chase's policy requiring employees to self-report their time coupled with the variation amongst Class Members in their time keeping and reporting practices;

h. Testimony of Plaintiffs and Class Members regarding damages owed and monies paid for pre and post shift work;

i. Chase's records evidencing overtime payments and amounts of payments;

j. Plaintiff and Class Member testimony regarding meal and rest break practices;

k. the arbitration agreement that Chase submitted was applicable to various class members; and

l. other facts illuminated by discovery and investigation, culminating in  substantial uncertainty of success for class certification and on the merits of this case.

**2.     The Risks, Complexity, Expense and Likely Duration of Further Litigation Support Approval**

Yet another factor considered by courts in approving a settlement is the complexity, expense and likely duration of the litigation. *Morey v. Louis Vuitton N. Am., Inc*., 2014 WL 109194, *5 (S.D. Cal. 2014); *In re MRV Communs., Inc. Derivative Litig*., 2013 WL 2897874, *2 (C.D. Cal. 2013).  In applying this factor, the Court

29

should weigh the benefits of the settlement against the expense and delay involved in achieving an equivalent or even more favorable result at trial. *Lane v. Facebook, Inc*., 2010 WL 9013059, *5 (N.D. Cal. 2010).

Employment cases (including wage and hour cases) can be expensive and time-consuming to prosecute. That this is a class action further amplifies the economies of time, effort and expense achieved by this Settlement.

The alternative to a class action – i.e., individual litigation – would tax private and judicial resources over a period of years and, given the relatively modest amount of damages each Class Member allegedly incurred, would be uneconomical even for those with the finances, sophistication and tenacity to secure individual legal representation. This Settlement, on the other hand, provides to all Class Members, regardless of their means, the opportunity for a monetary recovery in a prompt and efficient manner, without the risk of the Court denying class certification and the resultant recovery of nothing at all. Should the Court deny final settlement approval, most Class Members will, as a practical matter, be left without any remedy at all and, should any claimant elect to pursue his or her claim anyway, any one or more courts throughout California, New York or other states where class members reside may be called upon to address the issues presented here in a piecemeal, costly and time-consuming manner, most likely without representation.

As such, the Settlement in this case is consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits." *Eisen v. Porsche Cars North America, Inc.,* 2014 WL 439006 at *3; *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig*., 2013 U.S. Dist. LEXIS 123298, *253-54 (C.D. Cal. 2013); 4 Newberg § 11.41 at 87-89.

## VII.   NATURE AND METHOD OF CLASS NOTICE

"For any class certified under Rule 23(b)(3), the court must direct to Class Members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P.

Rule 23(c)(2)(B).  "The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal or compromise." Fed.R.Civ.P. Rule 23(e)(B).  Here, the Parties have agreed upon a Notice Packet, which will be mailed to all last known addresses in the Defendant's records, updated as necessary.  This direct mail Notice is the most efficient and effective method for notifying class members.

As for the content of the notice, Rule 23(c)(2) requires that the notice inform prospective class members of (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule23(c)(3).   Rule 23(e) generally requires the same concepts.   "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Newberg, 2 *Newberg on Class Actions* §8.32 at 8-103.  The proposed Notice meets all of these requirements.

## VIII.  CLAIMS ADMINISTRATION

### A.    The Use of a "Claims Made" Provision in the Settlement is Fair Given the Nature of the Fair Labor Standards Act Opt-In Requirement

Although the fairness of the entire settlement is typically analyzed at a "final fairness" hearing, the issue of the opt-in requirement will be addressed here to assure the Court that this is a fair result in compliance with the law.  First, it should be noted that a purely opt-out mechanism for the class would be contrary to the provisions of the Fair Labor Standards Act.  That is, the FLSA requires an affirmative opt-in to waive any rights or receive any benefits from an FLSA lawsuit.  *Wright v. Linkus Enters.*, 2009 WL 1705721 (E.D. Cal. June 16, 2009).

Individuals who do not submit claim forms retain their rights to sue for FLSA

31

violations.  As noted above, the FLSA claims overlap with several, but not all of the state law claims in this lawsuit.  Structuring the settlement on a claims made basis allows for a clear demarcation between the claims released under California, New York, Texas, Michigan, Louisiana, Chicago, Illinois, Arizona, Florida, Georgia, Wisconsin, Ohio, and Kentucky law and the claims released under the FLSA. Not surprisingly, Defendant wishes to avoid any duplication of claims at a later date.

In addition, to encourage class members to make claims, some of the amounts under the settlement are paid in full, even in the absence of a claim form, and the remainder is subject to a formula based on hours worked.  Chase is encouraged to ensure maximum participation of potential Class Members in order to avoid future FLSA claims. Class members are also encouraged to opt-in to the Settlement as that is the only way they will receive money in exchange for a release of their federal claims. As such, rather than being some type of scheme to return money to the Defendant, the "claims made" provision is a fair result that encourages all Class Members to opt-in to the FLSA action and thus resolve all the issues within this single action.  As this is the procedure required by the FLSA, it is the best result that the law will permit.

### B.     Appointment of Claims Administrator and Costs of Administration

The Parties seek the approval of the appointment of CPT Group as the Settlement Administrator.  CPT Group has previously acted as Settlement Administrator in hundreds of wage and hour cases throughout the country.  CPT Group has represented that the cost of printing, mailing and handling of the claims submissions and class member inquiries will not exceed $550,000.00.  The Parties have agreed that this sum will be paid out of the settlement fund.

## IX.   AMOUNT OF ATTORNEYS' FEE AND COST REQUEST TO BE INCLUDED IN CLASS NOTICE

The Settlement Agreement contemplates that Class Counsel will apply to the Court for an award of fees to be paid from the settlement fund created, in the amount of 30% of the settlement amount of $12,000,000.00.  Thus, in conjunction with the request

32

for Final Approval of this settlement, and in conformance with the timing dictates of the recent Ninth Circuit decision in *Mercury Interactive Corp. Secs. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010), Class Counsel will seek an award of attorneys' fees equal to $3,600,000.   Additionally, Class Counsel will also seek reimbursement of costs incurred to date, and to be incurred up to the time of final approval.   Full and detailed costs will be set forth at the time of submission for final approval.

## X.   AMOUNT OF ENHANCEMENT AWARDS REQUEST TO BE INCLUDED IN THE SETTLEMENT NOTICE

"[N]amed plaintiffs… are eligible for reasonable incentive payments."  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).   The district court must evaluate individual awards using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions,…the amount of time and effort the plaintiff expended in pursuing the litigation…and reasonabl[e] fear[s of] workplace retaliation."  *Id.*, citing *v. Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *see also, Rodriguez v. West Publ. Corp.*, No. CV05-3222 R(MCx), 2007 WL 2827379 (C.D. Cal. Sept. 10, 2007), aff'd in part, rev'd in part *sub nom. Rodriguez v. West Publ. Corp.* 563 F.3d 948 (9th Cir. 2009) [incentive awards should compensate for risks taken, such as "retaliation . . . , discrimination, trouble finding employment, and significant financial risk."].) "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook*, 142 F.3d at 1016; *see also In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *18 (E.D. PA. June 2, 2004) (Where "the class representatives have conferred benefits on all other class members . . . they deserve to be compensated accordingly.").

Here, Class Representatives were not simply bystanders in the prosecution of this action.  From the time that they brought this matter to the attention of counsel, they were actively involved in providing information and evidence.  See Bradley Decl. ¶15;

---

see also generally Compendium of Declarations in Support of Plaintiffs' Motion For Preliminary Approval of Class Action Settlement ("Declaration Compendium") Exhibits 1-23.   Class Representatives were always available to, and regularly did, consult with counsel both in person and via telephone.   Declaration Compendium Ex 1-23.   In addition, Class Representatives reviewed documents and gave testimony during lengthy depositions. Declaration Compendium Ex 1-23. Class Representatives were also actively involved discussions regarding the resolution of this matter and approved the settlement terms on behalf of themselves and the class.   Declaration Compendium Ex 1-23.

Plaintiffs also intend to seek service awards on behalf of class members who assisted in the litigation for the benefit of the Class.

The total of the incentive awards that will be sought at the time of the final approval hearing is $222,500, representing approximately 0.00185 percent of the settlement amount.   There is ample case law finding similar percentages to be a reasonable amount for an incentive payment. *See, e.g., Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *10 (N.D.Cal. April 3, 2009) (finding $5,000 incentive award, comprising 1.25% of the settlement amount, to sole named plaintiff reasonable); *Wren v. RGIS Inventory Specialists*, No. C–06–05778 JCS, 2011 WL 1230826 (N.D.Cal., April 01, 2011) (finding $5,000 incentive payments not excessive).   Indeed, Courts in this district have awarded amounts well in excess of $5,000 and greater than the .005% of the settlement that is sought here.   *See e.g.*, *Sandoval v. Tharaldson Employee Mgmt., Inc.*, No. No. EDCV 08-482-VAP, 2010 WL 2486346, at *10 (C.D.Cal. June 15, 2010) (awarding $7,5000 incentive payment to named plaintiff, comprising 1% of gross settlement amount); *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F.Supp. 525, 535 (E.D.Pa.1990) (approving incentive awards of $5,000 for one named representative where total incentive payments did not exceed 0.18% of total settlement); *In re U.S. Bancorp. Litig.*, 291 F.3d 1035, 1038 (8th Cir.2002) (total incentive payments did not exceed 0.35% of total settlement); *Cook*,

34

142 F.3d at 1016 (incentive payment did not exceed 0.17% of total settlement).

Here, the proposed Notice gives class members notice that the amount of the incentive and service awards which will be requested at final approval for the Class Representatives and other class members.  As such, the Court is respectfully requested to approve the inclusion of this amount in the Notice.

## XI.   SCHEDULE FOR CLAIMS ADMINISTRATION AND FINAL FAIRNESS HEARING

The Parties request that the Court establish a schedule for the administration of the settlement and a Final Fairness Hearing.

## XII.  CONCLUSION

The Parties have negotiated a fair and reasonable settlement of a case that provides relief that likely would never have been realized but for this class action.  Accordingly, Plaintiffs move the Court to preliminarily approve the Settlement Agreement, and direct that the Notice Packet be mailed to Class Members.  Additionally, the Parties request a Final Approval hearing be scheduled at the earliest available date that the Court's calendar will accommodate.

DATED:   October 8, 2014              **MARLIN & SALTZMAN, LLP**

                                      By  /S/  Marcus J. Bradley
                                         Marcus J. Bradley
                                      Co-Lead Counsel for Plaintiffs