**MARLIN & SALTZMAN, LLP**
Stanley D Saltzman, Esq. (SBN 90058)
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
29229 Canwood Street, Suite 208
Agoura Hills, California   91301-1555
Telephone:   (818) 991-8080
Facsimile:    (818) 991-8081
ssaltzman@marlinsaltzman.com
mbradley@marlinsaltzman.com
kgrombacher@marlinsaltzman.com

Attorneys for Plaintiffs Evan Hightower, Ann Ross,
Regina M. Simpson and Regina Sturdivant

*(Additional Plaintiffs' Counsel on next page)*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVAN HIGHTOWER and ANN ROSS, individually and on behalf of all other individuals similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A., and DOES 1-10, inclusive,<br><br>        Defendants. | Case No. **11-CV-01802 PSG (PLAx)**<br>**CLASS ACTION**<br>11-cv-04294-PSG (PLAx)<br>11-cv-06061-PSG (PLAx)<br>11-cv-03428-PSG (PLAx)<br>11-cv-08147-PSG (PLAx)<br>11-cv-09727-PSG (PLAx)<br>12-cv-00833-PSG (PLAx)<br>11-cv-04450-PSG (PLAx)<br>11-cv-05646-PSG (PLAx)<br>11-cv-08217-PSG (PLAx)<br>12-cv-04752-PSG (PLAx)<br>12-cv-00367-PSG (PLAx)<br>12-cv-03308-PSG (PLAx)<br><br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND FOR PRELIMINARY APPROVAL OF SETTLEMENT REGARDING ATTORNEYS' FEES, ENHANCEMENT AWARDS AND THE REVERSION CLAUSE**<br><br>DATE:       February 9, 2015<br>TIME:        1:30 p.m.<br>CTRM:      880 |

*Additional Plaintiffs' Counsel*

**CAPSTONE LAW APC**
Raul Perez, Esq. (SBN 174687)
Rebecca Labat, Esq. (SBN _)
Matthew T. Theriault, Esq. (SBN _)
Melissa Grant, Esq. (SBN 205633)
Suzy E. Lee, Esq. (SBN 271120)
1840 Century Park East, Suite 450
Los Angeles, California   90067
Telephone:   (310) 556-4811
Facsimile:    (310) 943-0396
raul.perez@capstonelawyers.com
mgrant@initiativelegal.com
Suzy.lee@capstonelawyers.com
        Attorneys for Plaintiffs Carolyn Salazar, Roger Al-Chaikh, and Estella
        Slikker

**JOSEPH, HERZFELD, HESTER & KIRSCHENBAUM LLP**
D. Maimon Kirschenbaum, Esq. (*Admitted Pro Hac Vice*)
Denise Schulman, Esq. (*Admitted Pro Hac Vice*)
233 Broadway, 5th Floor
New York, New York   10279
Telephone:   (212) 688-5640
Facsimile:    (212) 688-2548
maimon@jhllp.com
denise@jhllp.com

**HARRISON, HARRISON & ASSOCIATES, LTD.**
David Harrison, Esq. (*Admitted Pro Hac Vice*)
110 Highway 35, 2nd Floor
Red Bank, New Jersey   07701
Telephone:   (888) 239-4410
Facsimile:    (718) 799-9171
nycotlaw@gmail.com

Plaintiffs' Supplemental  Memo. Re: Attorneys' Fees, Enhancements and Reversion Clause
Case No. 11-CV-01802 PSG (PLAx)

1
2

# <u>TABLE OF CONTENTS</u>

I.    PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES IN THE
      AMOUNT OF THIRTY PERCENT OF THE SETTLEMENT FUND IS
      FAIR AND REASONABLE AND CONSISTENT WITH NINTH
      CIRCUIT CASE LAW ...................................................................1

      A.    Plaintiffs' Request for Attorneys' Fees Should Be Evaluated
            Under a Deferential Standard ..............................................1

      B.    Plaintiffs' Request for Attorneys' Fees is Reasonable as a
            Percentage of the Common Fund ........................................2

      C.    Plaintiffs' Request For Attorneys' Fees Is Confirmed As
            Reasonable By A Lodestar Cross-Check .............................5

      D.    The Contingent Risk Assumed By Class Counsel Also Supports
            The Requested Attorneys' Fees............................................7

II.   THE SERVICE ENHANCEMENTS TO THE NAMED PLAINTIFFS
      ARE FAIR AND REASONABLE ................................................10

III.  PROPRIETY OF THE LIMITED REVERSIONARY ASPECT OF THE
      SETTLEMENT .............................................................................14

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs' Supplemental  Memo. Re: Attorneys' Fees, Enhancements and Reversion Clause
Case No. 11-CV-01802 PSG (PLAx)

# TABLE OF AUTHORITIES

## Federal Cases

*Alyeska Pipeline Service Co. v. Wilderness Society*
    421 U.S. 240 (1975)........................................................................................3

*Amochaev v. Citigroup Global Markets, Inc*.
    No. 05-1298 PJH (N.D. Cal. 2008)..................................................................13

*Barbosa v. Cargill Meat Solutions Corp.*
    297 F.R.D. 431 (E.D. Cal. 2013) .......................................................................4

*Bernal v. Davita, Inc*.
    No. 5:12-cv-03255-PSG (N.D. Cal. 2014) .................................................. 4, 13

*Boeing Co. v. Ven Gemert*
    444 U.S. 472 (1980)......................................................................................2, 5

*Boeing Company v. Van Gemert*
    444 U.S. 472 (1980).........................................................................................2

*Bond v. Ferguson Enters., Inc*.
    2011 U.S. Dist. LEXIS 80390 (E.D. Cal. 2011)...............................................7

*Chem. Bank v. City of Seattle*
    (*In re Wash. Pub. Power Supply Sys. Sec. Litig.*)
    19 F.3d 1291 (9th Cir. 1994) ............................................................................3

*D'Amato v. Deutsche Bank*
    236 F.3d 78 (2d Cir. 2001)...............................................................................2

*Grant v. Capital Mgmt. Servs., L.P.*
    2014 U.S. Dist. LEXIS 29836 (S.D. Cal. 2014).............................................10

*Guippone v. BH S&B Holdings LLC*
    2011 U.S. Dist. LEXIS 126026 (S.D.N.Y. 2011)...........................................11

*Hanlon v. Chrysler Corp*.
    150 F.3d 1011 (9th Cir. 1998) ..........................................................................1

Plaintiffs' Supplemental  Memo. Re: Attorneys' Fees, Enhancements and Reversion Clause
Case No. 11-CV-01802 PSG (PLAx)

*Hensley v. Eckerhart*

    461 U.S. 424 (1983) ...........................................................................1

*In re Activision Sec. Litig.*

    723 F. Supp. 1373 (N.D. Cal. 1989) ................................................3, 4

*In re Apple Computer, Inc. Derivative Litig.*

    2008 U.S. Dist. LEXIS 108195 (N.D. Cal. 2008) ..............................2

*In re Atmel Corp. Derivative Litig.*

    2010 U.S. Dist. LEXIS 145551 (N.D. Cal. 2008) ..............................2

*In re Bluetooth*, 654 F.3d 935

    (9th Cir. 2011) ..................................................................................5

*In re Immune Response Sec. Litig.*

    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................5

*In re M.D.C. Holdings Sec. Litig.*

    1990 U.S. Dist. LEXIS 15488 (S.D. Cal. 1990) ...............................1

*In re Mego Fin. Corp. Sec. Litig.*

    213 F.3d 454 (9th Cir. 2000) ...................................................... 4, 10

*In re Omnivision Techs.*

    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...........................................3, 4

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA)*
    *Litig.*

    295 F.R.D. 438 (C.D. Cal. 2014) ............................................... 11, 12

*In re Washington Pub. Power Supply Sys. Sec. Litig.*

    19 F.3d 1291 (1994) .........................................................................5, 8

*Laguna v. Coverall North America*

    753 F.3d 918 (9th Cir. 2014) ............................................................2

*Matter of Continental Illinois Securities Litig.*

    962 F.2d 566 (7th Cir. 1992) ...........................................................10

Plaintiffs' Supplemental  Memo. Re: Attorneys' Fees, Enhancements and Reversion Clause
Case No. 11-CV-01802 PSG (PLAx)

*McKenzie v. Federal Express Corp.*

    2012 U.S. Dist. LEXIS 103666 (C.D. Cal. 2012) ...............................................7

*Paul, Johnson, Alston & Hunt v. Graulty*

    886 F.2d 268 (9th Cir. 1989) ...............................................................3

*Pokorny v. Quixtar, Inc.*

    2013 U.S. Dist. LEXIS 100791 (N.D. Cal. 2013) .....................................4

*Radcliffe v. Experian Info. Solutions*

    715 F.3d 1157 (9th Cir. 2013) .............................................................10

*Rodriguez v. West Publ'g Corp.*

    563 F.3d 948 (9th Cir. 2009) ..............................................................10

*Schaffer v. Litton Loan Servicing, LP*

    2012 U.S. Dist. LEXIS 189830 (C.D. Cal. 2012) ....................................... 12, 13

*Singer v. Becton Dickinson & Co.*

    2010 U.S. Dist. LEXIS 53416 (S.D. Cal. 2010) ...........................................4

*Six Mexican Workers v. Ariz. Citrus Growers*

    904 F.2d 1301 (9th Cir. 1990) ...........................................................3, 5

*Steiner v. American Broad. Co.*

    248 Fed. Appx. 780 (9th Cir. 2007)......................................................6

*Stevens v. Safeway, Inc.*

    2008 U.S. Dist. LEXIS 17119 (C.D. Cal. 2008) ........................................13

*Stuart v. Radioshack Corp.*

    2010 U.S. Dist. LEXIS 92067 (N.D. Cal. 2010....................................4

*Torrisi v. Tucson Elec. Power Co.*

    8 F.3d 1370 (9th Cir. 1993) ...............................................................9

*Van Vranken v. Atlantic Richfield*

    901 F. Supp. 294 (N.D. Cal 1995) ...................................... 6, 11, 12

*Vasquez v. Coast Valley Roofing, Inc.*

    266 F.R.D. 482 (E.D. Cal. 2010) ........................................................4

Plaintiffs' Supplemental Memo. Re: Attorneys' Fees, Enhancements and Reversion Clause
Case No. 11-CV-01802 PSG (PLAx)

*Vizcaino v. Microsoft Corp.*

　290 F.3d 1043 (9th Cir. 2002) ............................................ 3, 6, 8

*Williams v. MGM-Pathe Commc'ns Co.*

　129 F.3d 1026 (9th Cir. 1997) ....................................................5

*York v. Starbucks Corp.*

　No. 08-07919 GAF (C.D. Cal. 2013) ........................................ ii, 13


**State Cases**

*Brinker Restaurant Corp. v. Superior Court*

　53 Ca1.4th 1004 (2012) ............................................................9


**Other Authorities**

ABA Model Code Prof. Responsibility

　DR 2-106(B)(8).........................................................................9

Leubsdorf, The Contingency Factor in Attorney Fee Awards

　(1981) 90 Yale L.J. ..................................................................9

Posner, Economic Analysis of Law

　(4th ed. 1992) ..........................................................................8

Plaintiffs' Supplemental  Memo. Re: Attorneys' Fees, Enhancements and Reversion Clause
Case No. 11-CV-01802 PSG (PLAx)

Pursuant to this Court's December 1, 2014 Order re: Supplemental Memoranda, [ECF Dkt. No. 179] Plaintiffs Evan Hightower, Ann Ross, Carolyn Salazar, Roger Al-Chaikh, Estela Slikker, Regina Simpson, Regina Sturdivant, Dennis Khutoretsky, Boris Shulman, Marlena Gelbart, Malcolm Sweet, Tanesha Gunn, Michelle Nguyen, Joshua Groce, Wendy McWilson, LaToya Stewart, Janet Rebholz, Scarlet Diaz, Jean Thompson, Kicione Dillion, Michael Clark, Tyler Nicholes, and Shirley Wright (collectively "Plaintiffs" or "Named Plaintiffs") submit the following sealed memorandum in further support of Plaintiffs' Motion For Preliminary Approval Of A Class Action Settlement. [ECF Dkt. No. 175].

As requested by this Court, Plaintiffs shall address herein the propriety of: (1) attorneys' fees in the amount of 30% of the gross settlement fund; (2) the proposed incentive awards; and (3) the reversionary clause.

## I.   PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES IN THE AMOUNT OF THIRTY PERCENT OF THE SETTLEMENT FUND IS FAIR AND REASONABLE AND CONSISTENT WITH NINTH CIRCUIT CASE LAW

### A.   Plaintiffs' Request for Attorneys' Fees Should Be Evaluated Under a Deferential Standard

Courts have encouraged litigants to resolve fee issues by agreement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  This is consistent with the strong public policy of encouraging and approving non-collusive settlements, including those in class actions, and avoiding a "second major litigation" arising from a request for attorneys' fees after the matter has been resolved. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."); *see also, In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090, 1990 U.S. Dist. LEXIS 15488, at *12 (S.D. Cal. Aug. 30, 1990) ("Because this Court believes the parties should be encouraged to settle all their disputes as part of the settlement…. including the amount of the fee... if the agreed-to fee falls within a range of reasonableness, it should be approved as part of the negotiated settlement.").

In considering unopposed fee applications, district courts must account for the fact that "the parties are compromising to avoid litigation." *Laguna v. Coverall North*

*America*, 753 F.3d 918, 922 (9th Cir. June 3, 2014).  Accordingly, the Ninth Circuit holds that "the district court **need not inquire into the reasonableness of the fees even at the high end** with precisely the same level of scrutiny as when the fee amount is litigated."  *Id.* (*quoting Staton v. Boeing Co*., 327 F.3d 938, 966 (9th Cir. 2003) [internal quotations omitted; emphasis added]).  Thus, while the Court must conduct an independent inquiry into the reasonableness of the fee request, it should give substantial weight to the parties' agreement as to the reasonableness of the amount of attorneys' fees.

These considerations are particularly appropriate where, as here, the parties negotiated the settlement at arm's-length with the guidance of Michael Dickstein, a respected mediator of wage and hour class actions.  *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) (mediator's participation weighs considerably against any inference of a collusive settlement), *In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL), 2010 U.S. Dist. LEXIS 145551 (N.D. Cal. June 25, 2008) (same); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.").  At all times the settlement negotiations were adversarial and non-collusive, and the resulting settlement of attorneys' fees, as a function of the overall settlement's value, is likewise fair, reasonable, and free of collusion.

**B.    Plaintiffs' Request for Attorneys' Fees is Reasonable as a Percentage of the Common Fund**

The Supreme Court has consistently recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorney's fee from the fund as a whole."  *Boeing Company v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Auto-Lite Co.*, 396 U.S. 375, 392-93 (1970). The common fund doctrine is a well-recognized exception to the general

2

Plaintiffs' Supplemental  Memo. Re: Attorneys' Fees, Enhancements and Reversion Clause
Case No. 11-CV-01802 PSG (PLAx)

American rule that a litigant must bear its own attorneys' fees.  *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 257-58 (1975).

The common fund doctrine applies when: (1) the class of beneficiaries is sufficiently identifiable; (2) the benefits can be accurately traced; and (3) the fee can be shifted with some exactitude to those benefitting.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).  These criteria are "easily met" where—as here—"each [class member] has an undisputed and mathematically ascertainable claim to part of a lump-sum settlement recovered on his behalf.'"  *Id.* at 271, *citing Van Gemert*, *supra*, 444 U.S. at 479.

District courts presiding over common fund cases have the discretion to award attorneys' fees based on either the lodestar method (essentially a modification of hourly billing) or the percentage method proposed here.  *Chem. Bank v. City of Seattle (In re Wash. Pub. Power Supply Sys. Sec. Litig.)*, 19 F.3d 1291, 1296 (9th Cir. 1994).  Notwithstanding that discretion, use of the percentage method is the "dominant" approach in common fund cases.  *See*, *e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007). The advantages of the percentage method are well recognized:

> [I]n class action common fund cases the better practice is to set a percentage fee and that, absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%. This will encourage plaintiffs' attorneys to move for early settlement, provide predictability for the attorneys and the class members, and reduce the time consumed by counsel and court in dealing with voluminous fee petitions.

*In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374-77 (N.D. Cal. 1989).

The Ninth Circuit has generally established 25% of a common fund as a "benchmark" award for attorney fees.  *Vizcaino*, 290 F.3d at 1047.  However, the "exact percentage [awarded] varies depending on the facts of the case, and **in most common fund cases, the award exceeds that benchmark**."  *Vasquez v. Coast Valley Roofing,*

3

*Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (emphasis added); *In re Activision Sec. Litig.*, 723 F. Supp. at 1374-77 ("[a] review of recent reported cases discloses that nearly all common fund awards range around 30%"); *In re Omnivision Techs.*, 559 F. Supp. 2d at 1047 (in "most common fund cases, the award exceeds that benchmark"); *Pokorny v. Quixtar, Inc.*, No. C 07-0201 SC, 2013 U.S. Dist. LEXIS 100791 (N.D. Cal. July 18, 2013) (the "Ninth Circuit uses a 25% baseline in common fund class actions, and in most common fund cases, the award exceeds that benchmark, with a 30% award the norm absent extraordinary circumstances that suggest reasons to lower or increase the percentage").

Indeed, district courts within this circuit routinely award attorneys' fees of approximately one-third of the common fund, particularly for wage and hour class action settlements. *See*, *e.g.*, *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431 (E.D. Cal. July 2, 2013) (awarding one-third of the settlement fund in a wage and hour class action because there were "sufficient reasons to  exceed [the benchmark] considering the risk of the litigation, the contingent nature of the work, the favorable reaction of the class, and the fee awards in other wage-and-hour cases"); *Vasquez*, 266 F.R.D. at 491-92 (awarding one-third percent in wage and hour class action); *Singer v. Becton Dickinson & Co.*, 08-CV-821 - IEG (BLM), 2010 U.S. Dist. LEXIS 53416, at *22-23 (S.D. Cal. Jun. 1, 2010) (noting that the amount of one-third of the common fund for a wage and hour class action settlement "falls within the typical range" of fee awards); *Stuart v. Radioshack Corp.*, C-07-4499 EMC, 2010 U.S. Dist. LEXIS 92067 (N.D. Cal. Aug. 9, 2010) (awarding one-third of settlement fund in wage and hour class action and noting that "[t]his is well within the range of percentages which courts have upheld as reasonable in other class action lawsuits"); *Bernal v. Davita, Inc.*, No. 5:12-cv-03255-PSG, *1-2 (N.D. Cal. Jan. 14, 2014) (awarding one-third of the settlement fund in wage-and-hour class action).  Such awards are likewise routinely upheld by the Ninth Circuit.  *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir.

4

Plaintiffs' Supplemental  Memo. Re: Attorneys' Fees, Enhancements and Reversion Clause
Case No. 11-CV-01802 PSG (PLAx)

2000) (affirming one-third of the common fund); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming one-third of a $12 million common fund).

And while the exact percentage depends on the facts of the case, the calculation of attorneys' fees is always a percentage of the **entire** potential benefit created by class counsel, rather than just the amount claimed against the fund.  *See Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997); *Six Mexican Workers*, 904 F.2d at 1311 (citing *Boeing Co. v. Ven Gemert*, 444 U.S. 472, 480-81 (1980) ("The Supreme Court has stated that attorneys' fees sought under a common fund theory should be assessed against every class members' share, not just the claiming members.")).

Accordingly, Plaintiffs' request for attorneys' fees in the amount of $3.6 million, or 30% of the $12 million common fund, is consistent with established Ninth Circuit precedent.

### C.   Plaintiffs' Request For Attorneys' Fees Is Confirmed As Reasonable By A Lodestar Cross-Check

Plaintiffs' fee request is based on a percentage of the settlement value, the prevailing method in cases of this kind.  However, this Court may also use a lodestar analysis as a final "cross-check on the percentage method."  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296-98 (1994).  Where the lodestar method is used as a cross-check, it can be performed with a less exhaustive cataloguing and review of counsel's hours.  *See In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting."); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ("Although counsel have not provided a detailed cataloging of hours spent, the Court finds the information provided to be sufficient for purposes of lodestar cross-check.").  The lodestar method is calculated by multiplying "the number of hours reasonably expended on the litigation … by a reasonable hourly rate."  *In re Bluetooth*, 654 F.3d 935, 941 (9th Cir. 2011).

A lodestar cross-check confirms that the negotiated attorneys' fees are reasonable.  As reported in the declarations of Marcus J. Bradley and Raul Perez, Plaintiffs' counsel's hourly rates are comparable to, or less than, those charged by other attorneys who defend or prosecute class actions.  Declaration of Marcus J. Bradley ("Bradley Decl.") at ¶¶37, 39, 40; Declaration of Raul Perez ("Perez Decl.") at ¶3.  Likewise, the total attorney hours expended on this action are reasonable and in line with comparable cases.  Plaintiffs' counsel billed a total of 6,726 hours.  Bradley Decl ¶¶37, 39, 40, Perez Decl. ¶2.  Multiplying the total hours billed by Plaintiffs' counsel to the litigation by their reasonable hourly rates yields a lodestar of $3,425,410.50.

In common fund cases, courts frequently apply multipliers to the lodestar to reflect the risks involved, the complexity of the litigation, and other relevant factors.  *See Vizcaino*, 290 F.3d at 1051 (courts "routinely enhance[] the lodestar to reflect the risk of non-payment in common fund cases").  Such an enhancement "mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases."  *Id.*

Here, Plaintiffs' counsel bore a particularly high contingent risk.  Based on this risk, as well as the other relevant factors, the resulting multiplier of 1.1[1] on the lodestar cross-check is on the low end of the range of multipliers that courts regularly approve as fair and reasonable.  In *Vizcaino*, the Ninth Circuit affirmed a lodestar multiplier of 3.65, after analyzing a table of the most commonly applied multipliers.  *Vizcaino*, 290 F.3d at 1051.  This is within the "3-4 range [of] common" multipliers for sophisticated class actions.  *Van Vranken v. Atlantic Richfield*, 901 F. Supp. 294, 298 (N.D. Cal 1995); *see also Steiner v. American Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming fee award where the lodestar multiplier was 3.65); *McKenzie v.*

---

[1] $3,425,410.50 multiplied by 1.1 will yield $3,767951.55, which is slightly more than the $3.6 million amount sought by Plaintiffs.

Plaintiffs' Supplemental  Memo. Re: Attorneys' Fees, Enhancements and Reversion Clause
Case No. 11-CV-01802 PSG (PLAx)

*Federal Express Corp.*, No. 10-02420-GAF, 2012 U.S. Dist. LEXIS 103666 (C.D. Cal. July 2, 2012) (approving a multiplier of 3.2 on a lodestar cross-check in awarding percentage-based fees in wage and hour class action); *Bond v. Ferguson Enters., Inc.*, No.1:09-cv-1662-OWW, 2011 U.S. Dist. LEXIS 80390 (E.D. Cal. June 30, 2011) (1.75 multiplier).

Here, the application of a very modest 1.1 multiplier is warranted given the significant results achieved for the Class and the substantial risks and complexity of the litigation, as higher multipliers are regularly approved in similar cases.  As these cases demonstrate, a multiplier of 1.50, or even 1.75, would be appropriate here.  The lodestar "cross-check" thus ensures that the amount in negotiated fees of $3.6 million is fair and reasonable.

### D.    The Contingent Risk Assumed By Class Counsel Also Supports The Requested Attorneys' Fees

In addition to the preceding considerations, the contingent risk that Class Counsel assumed in prosecuting the action also supports the requested attorneys' fees and costs. Class Counsel took this case on a pure contingency basis, and had no guarantee that they would receive any rumination for the many hours (over 6,500) they spent litigating the class' claims, or for the over $150,000 in out-of-pocket costs they reasonably incurred during the matter's pendency.

Large-scale wage and hour class actions of this type are, by their very nature, complicated and time-consuming.  Any law firm undertaking representation of a large number of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy, and resources.  Due also to the contingent nature[2] of the customary fee arrangement, lawyers must be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of

---

[2] Plaintiffs in wage and hour cases can rarely afford representation on an hourly basis, at least not representation by firms known for achieving laudatory results.

Plaintiffs' Supplemental  Memo. Re: Attorneys' Fees, Enhancements and Reversion Clause
Case No. 11-CV-01802 PSG (PLAx)

any kind.  As the Ninth Circuit has recognized, "attorneys whose compensation depends on their winning the case must make up in compensation in the cases they win for the lack of compensation in the cases they lose."  *Vizcaino*, 290 F.3d at 1051.

The demands and risks of this type of litigation overwhelm the resources—and deter participation—of many traditional claimants' firms.  And while Class Counsel have been successful in prosecuting wage and hour cases in general, Class Counsel's experience confirms and reflects the tremendous risks such cases present to contingency fee attorneys.  For these reasons, the Ninth Circuit recognizes a need to reward Class Counsel who accept a case on a contingent fee basis because of the risk of non-payment that they face:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.  *See* Richard Posner, Economic Analysis of Law § 21.9, at 534-35 (3d ed. 1986).  Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299, 1300-01 (9th Cir. 1994) ("in the common fund *context*, attorneys whose compensation depends on their winning the case, must make up in compensation in the cases they win for the lack of compensation in the cases they lose.").

As reflected in *In re Washington*, it is axiomatic that lawyers accepting contingent fee cases should be compensated in amounts greater than those earned by lawyers who bill and receive payment by the hour, as this fact reflects the risks undertaken in a contingent practice.  If a contingent-fee lawyer was awarded fees at the same level as an hourly-fee lawyer, it would be economically irrational for any lawyer to accept a contingent-fee case because there would be absolutely no incentive to accept the risks inherent in such representation.  *See* Posner, Economic Analysis of Law (4th ed. 1992) pp. 534, 567 ("A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not

8

Plaintiffs' Supplemental  Memo. Re: Attorneys' Fees, Enhancements and Reversion Clause
Case No. 11-CV-01802 PSG (PLAx)

only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans."); Leubsdorf, *The Contingency Factor in Attorney Fee Awards* (1981) 90 Yale L.J. 473, 480 ("A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases."); ABA Model Code Prof. Responsibility, DR 2-106(B)(8) (recognizing the contingent nature of attorney representation as an appropriate component in considering whether a fee is reasonable).

The instant litigation presented particular challenges to recovery.  For example, even if Plaintiffs had been successful in certifying the class, certification may not have been on behalf of all affected job positions, or on all alleged claims.  Further, Defendant could, and most certainly would, have challenged liability on any number of legal and factual grounds (*see infra*), such as claiming, e.g., that many of the claims lacked the necessary documentary evidence, that Labor Code Section 203 penalties require a "willfulness" finding that is unattainable under the circumstances, that Plaintiffs' meal period claims fail because Defendant had only to "provide" such breaks (*see Brinker Restaurant Corp. v. Superior Court*, 53 Ca1.4th 1004 (2012)), that all forms of damages were grossly overstated, and that Class Members did not suffer "injury" regarding any alleged wage statement deficiency.  Thus, Class Counsel prosecuted this action on a double contingency basis—they would have had to prevail on class certification, prevail on the merits of the claim, and collect whatever they were awarded in attorneys' fees. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993).  Such risk justifies the requested award of attorneys' fees.

/ / /

/ / /

/ / /

Plaintiffs' Supplemental  Memo. Re: Attorneys' Fees, Enhancements and Reversion Clause
Case No. 11-CV-01802 PSG (PLAx)

## II.  THE SERVICE ENHANCEMENTS TO THE NAMED PLAINTIFFS ARE FAIR AND REASONABLE

"Incentive awards are fairly typical in class action cases.  Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class . . . ."  *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 958 (9th Cir. 2009) (citing 4 *William B. Rubenstein et al.*, *Newberg on Class Actions* § 11:38 (4th ed. 2008)).  These payments work both as an inducement to participate in the suit and as compensation for time spent in litigation activities.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 (describing the service award as an incentive to the class representatives); *Matter of Continental Illinois Securities Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) (stating that an enhancement award should be in such an amount "as may be necessary to induce [the class representative] to participate in the suit").

So long as the incentive award does not create a conflict of interest between the representative and class members,[3] modest payments to named plaintiffs for their services as class representatives are customary and generally approved.  *See Van Vranken*, 901 F. Supp. at 300.  To determine whether the proposed incentive award is fair and reasonable, many courts in the Ninth Circuit "apply the five-factor test set forth in *Van Vranken*."  *Grant v. Capital Mgmt. Servs., L.P.*, 2014 U.S. Dist. LEXIS 29836 (S.D. Cal. Mar. 5, 2014).  Under the *Van Vranken* test, courts consider: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the

---

[3] The facts here do not create or exacerbate actual or potential conflicts between the class representatives and the class—the primary ground for denying enhancement awards.  *See Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1165 (9th Cir. 2013) (finding that an agreement conditioning incentive payment on approving the class action settlement created a conflict between the class and the Plaintiff in denying the incentive award and settlement); *Rodriguez v. Disner*, 688 F.3d 645, 651 (9th Cir. 2012) (finding an agreement conditioning incentive payment requests to the amount recovered by the class to be improper).  Here, there is no agreement of any kind that ties Plaintiffs' request for incentive payments to any condition.  As there is no actual or potential conflict between the class representatives and the class, the Court should not deny incentive payments to Plaintiffs.

Plaintiffs' Supplemental  Memo. Re: Attorneys' Fees, Enhancements and Reversion Clause
Case No. 11-CV-01802 PSG (PLAx)

amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken*, 901 F. Supp. at 299 (citations omitted).  However, not all factors need to present.  Rather, the Court may weigh the factors and, award fees that are "just and reasonable under the circumstances."  *See, e.g., In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.,* 295 F.R.D. 438, 472 (C.D. Cal. 2014) (citing *Van Vranken*, 901 F. Supp. at 299). Here, the proposed Service Enhancements—$10,000 for the Lead Plaintiffs and $7,500 for the Additional Named Plaintiffs—are just and reasonable.

First, the Service Enhancements are justified in light of the reputational risk that Plaintiffs assumed in bringing an action against a former employer, and in the case of Plaintiffs Nguyen and Rebholz, a current employer.  Courts have recognized that employees face a particular set of challenges when bringing class action suits.  Current employees risk express retaliation or more subtle workplace difficulties as a result of bringing suit.  *See Guippone v. BH S&B Holdings LLC*, No. 09 Civ. 1029, 2011 U.S. Dist. LEXIS 126026, at *20 (S.D.N.Y. Oct. 28, 2011) ("Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members.").  In addition, filing suit against their current employer will likely subject Plaintiffs Nguyen and Rebholz to a stigma that may impact their ability to receive promotions and other work-related benefits.  Despite these risks, Plaintiffs Nguyen and Rebholz agreed to join the litigation and to represent the class.

Both current and former employees also place their future employment prospects in peril by becoming class representatives, as "the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."  *Guippone*, 2011 U.S. Dist. LEXIS 126026, at *4. Employers commonly screen employee candidates to determine whether they have ever filed suit, and that employee candidates who might be branded "litigious" are likely to

Plaintiffs' Supplemental  Memo. Re: Attorneys' Fees, Enhancements and Reversion Clause
Case No. 11-CV-01802 PSG (PLAx)

be screened out of the process.  In fact, an entire industry has developed for providing employers with background information on employee candidates.[4]  By bringing this action against an employer, Plaintiffs have assumed considerable reputational risk that may impact their ability to find employment in the future.  Long after this action is forgotten by Class Members, the Named Plaintiffs will run the risk of being branded "litigious" by prospective employers, and may be denied future employment on that basis alone.

Second, the Service Enhancements should be awarded to the Plaintiffs because they "remained fully involved and expended considerable time and energy during the course of the litigation."  *Schaffer v. Litton Loan Servicing, LP*, No. 05-07673-MMM, 2012 U.S. Dist. LEXIS 189830, *61 (C.D. Cal. Nov. 13, 2012) (citation omitted).  As detailed in their declarations, Plaintiffs expended considerable time and effort assisting their attorneys with the prosecution of the class' claims, and their unique contributions to the litigation should be rewarded.

Third, the Service Enhancements are appropriate because each Plaintiff would otherwise "not gain any benefit beyond that would receive as a class member."  *In re*

---

[4] The companies that provide these services actually promote themselves by touting their ability to identify and weed out potentially litigious employee candidates:

- "Our value-added partner uses sophisticated technology to ensure the officers and managers of our clients can significantly reduce the likelihood of hiring litigious and untrustworthy employees by providing the information needed to make critical hiring decisions. We specifically help you avoid the traps, pitfalls and legal issues that plague many companies today."  *Sentric, Inc.*, http://www.sentric.net/solutions/workforce-management/ancillary-products/pre-employment-screening;
- "In today's litigious culture, employers simply cannot afford to hire employees who will put their company at risk."  *Back Track Screening*, http://www.btscreening.com/wp-content/uploads/2012/09/Screening-101.pdf;
- "Background screening has become a necessity in today's litigious society. An employer, who bases their hiring decisions based solely on instinct, may very well open the door to extremely expensive lawsuits.  Bad decision making from the start can cause huge budgetary impacts upon your company and also destroy the reputation of all those involved."  *Quest Background Services – The Screening Specialists*, http://www.questbackgrounds.com/pre-employment_screening.htm.

*Toys "R" Us FACTA Litig.*, 295 F.R.D. at 472; *Van Vranken* (holding that a substantial award is appropriate where a class representative's claim made up "only a fraction of the common fund."). Here, absent the Service Enhancements, Plaintiffs will recover no more than other Class Members, despite undergoing personal sacrifices in bringing this suit on behalf of the Class.

Moreover, the Plaintiffs have also agreed to generally release all claims they may have against Defendant. These general releases are considerably broader than the separate, narrower releases required of Class Members. (Settlement Agreement ¶ 97.) Their execution of general releases further supports their request for Service Enhancements. *See Schaffer*, 2012 U.S. Dist. LEXIS 189830, at *64 ("[C]lass representatives released their actual damages claims as part of the Settlement. This ["personal benefit"] factor, therefore weighs in favor of approving the incentive awards.").

The amounts of the requested Service Enhancements are also reasonable by reference to the amounts that district courts in this Circuit[5] have repeatedly found to be reasonable for wage and hour class action settlements.

In sum, due to the effort, commitment, and personal sacrifice of the Named Plaintiffs, all Class Members can now benefit from a $12 million settlement. Thus, the proposed Service Enhancements for Plaintiffs' services as class representatives and private attorneys general, their general release of all claims they have against Defendant

---

[5] *See, e.g., Bernal v. Davita, Inc.*, Case No. 5:12-cv-03255-PSG, *2 (N.D. Cal, Jan. 14, 2014) ($10,000 incentive payment in $3.4 million wage-and-hour class settlement); *York v. Starbucks Corp.*, No. 08-07919 GAF, Dkt. No. 239, at *4 (C.D. Cal. Oct. 29, 2013) (approving enhancement award of $10,000 in a $3 million wage-and-hour class settlement); *Ross v. US Bank Nat'l Ass'n*, No. 07-02951-SI, 2010 U.S. Dist. LEXIS 107857 (N.D. Cal. Sept. 29, 2010) (approving enhancement awards of $20,000 each to four class representatives in a $3.5 million settlement of an employment class action); *Stevens v. Safeway, Inc.*, No. 05-01988, 2008 U.S. Dist. LEXIS 17119, **34-37 (C.D. Cal. Feb. 25, 2008) ($20,000 and $10,000 award); *Amochaev v. Citigroup Global Markets, Inc.*, No. 05-1298 PJH (N.D. Cal. Aug. 13, 2008) (approving enhancement awards of $50,000 and $35,000 to employees in light of factors that included fear of workplace retaliation).

---

and their waiver of any claim they may have in the future arising out of Defendant's refusal to re-hire the Named Plaintiffs, their assistance in prosecuting the claims, for being deposed (in the case of Plaintiffs Al-Chaikh, McWilson, Rebholz, Stewart, and Wright), and reviewing the proposed settlement to ensure that its terms are fair and provide adequate relief for the Settlement Class, and the risk of being branded "litigious" by prospective employers, are reasonable and deserved.

## III.   PROPRIETY OF THE LIMITED REVERSIONARY ASPECT OF THE SETTLEMENT

Here, the Settlement made a $12 million fund available to the Class Members, a significant result given Plaintiffs' analysis of the merits and value of the claims at issue (as detailed above).

The achievement of this common fund would never have been possible without agreement on the reversion term. Indeed, the parties' valuations of the claims were so far apart that it was the only avenue by which such a massive fund could be made available to Class Members. Since Chase took the position that virtually all of Plaintiffs' claims were not certifiable and defensible on the merits (a position with which Plaintiffs adamantly disagreed), the parties decided to allow the Class Members to determine the value of the alleged violations by self-reporting them through the claims process. If Chase is correct that Class Members are satisfied with its employment practices, then Class Members will opt-out or refrain from filing claims. If Plaintiffs are correct and many Class Members self-report violations by filing claims, then Chase will pay closer to the full settlement amount. In any event, Class Counsel has done its job in making the greatest pool of funds available as possible for any Class Members who wish to claim them, and the floor provision ensures that those Class Members making claims will be fairly compensated.

Plaintiffs believe the Class Members will resoundingly support the Settlement. In this case, the several dozen Class Members interviewed by Class Counsel were supportive of the lawsuit and appeared very interested in remaining involved, unlike

14

some class actions where employees express confusion or combativeness to a lawsuit that does not reflect their experiences.

Class Counsels' role is to procure the best possible recovery for the Class, and the proposed Settlement provides precisely that. Had the parties agreed to a non-reversionary settlement, it would have been for drastically less money than that made available to the Class through this compromise. Given the number of class members and the costs of claims administration alone, the recovery to the Class Members would have dropped significantly.  Moreover, as discussed above, Class Counsel have negotiated for many items designed specifically to increase notice of and promote participation in this settlement – i.e. the reminder postcard—thus ensuring as much of the maximum settlement monies will be claims as possible.  Ultimately, it will be the Class Members who will report their perspectives of the merits of this case and the proposed Settlement.

**X.  CONCLUSION**

The Parties have negotiated a fair and reasonable settlement of a case that provides relief that likely would never have been realized but for this class action. Accordingly, Plaintiffs move the Court to preliminarily approve the Settlement Agreement, and direct that the Notice Packet be mailed to Class Members. Additionally, the Parties request a Final Approval hearing be scheduled at the earliest available date that the Court's calendar will accommodate.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

15

Plaintiffs' Supplemental  Memo. Re: Attorneys' Fees, Enhancements and Reversion Clause
Case No. 11-CV-01802 PSG (PLAx)

DATED:   January 23, 2015              **MARLIN & SALTZMAN, LLP**

                                       By  /S/  Marcus J. Bradley
                                            Marcus J. Bradley
                                       Co-Lead Counsel for Plaintiffs


                                       **CAPSTONE LAW APC**
DATED:   January 23, 2015

                                       By  /S/  Raul Perez
                                            Raul Perez
                                       Co-Lead Counsel for Plaintiffs

Plaintiffs' Supplemental  Memo. Re: Attorneys' Fees, Enhancements and Reversion Clause
Case No. 11-CV-01802 PSG (PLAx)