UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1802 PSG (PLAx) | Date | August 4, 2015 |
|---|---|---|---|
| Title | Evan Hightower and Ann Ross v. JPMorgan Chase Bank, N.A. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|

| David Gonzalez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):** **Order GRANTING Plaintiffs' motion for final class settlement approval and GRANTING Plaintiffs' motion for attorneys' fees, costs, and incentive awards subject to the withdrawal of certain putative class member objections**

Pending before the Court are Plaintiffs' motions for: (1) final class settlement approval; and (2) attorneys' fees, costs, and incentive awards. Dkts. # 214, 194. The Court held a Fairness Hearing on August 3, 2015. Having considered the arguments in all of the submissions, as well as those raised at the Fairness Hearing, the Court GRANTS Plaintiffs' motion for final class settlement approval and GRANTS Plaintiffs' motion for attorneys' fees, costs, and incentive awards subject to the withdrawal of certain putative class member objections.

I.      Background

On March 3, 2011, Plaintiffs Evan Hightower and Ann Ross filed a class action lawsuit against Defendant JPMorgan Chase Bank, N.A. ("Defendant" or "Chase Bank") alleging violations of several federal and state labor laws. Dkt. # 1. The action was consolidated with four other cases and Plaintiffs filed a consolidated complaint addressing the alleged violations. Dkts. # 27, 48. Defendant brought two motions to dismiss and Plaintiffs amended the consolidated complaint several times before filing the operative Fourth Amended Complaint. *See generally* Dkts. # 50, 54, 62, 90, 169.

Plaintiffs filed the Fourth Amended Consolidated Complaint ("Complaint") on September 26, 2014 on behalf of themselves and other similarly situated individuals.[1] Dkt. # 169. The

---

[1] Plaintiffs include the following individuals: Evan Hightower, Ann Ross, Carolyn Salazar, Roger Al-Chaikh, Estela Slikker, Regina Simpson, Regina Sturdivant, Dennis Khutoretsky, Boris Shulman, Marlena Gelbart, Malcolm Sweet, Tanesha Gunn, Michelle Nguyen, Joshua Groce, Wendy McWilson, LaToya Stewart, Janet Rebholz, Scarleth Diaz, Jean Thompson,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1802 PSG (PLAx) | Date | August 4, 2015 |
|---|---|---|---|
| Title | Evan Hightower and Ann Ross v. JPMorgan Chase Bank, N.A. | | |

Complaint brings state wage and hour claims for off-the-clock work, overtime, and unpaid wages under Arizona, California, Florida, Illinois, Kentucky, Louisiana, Michigan, New York, Ohio, Texas, Washington, and Wisconsin law as well as the Federal Fair Labor Standards Act ("FLSA"). *See generally Compl.* Plaintiffs further allege that Defendant did not reimburse them for certain business expenses in violation of California and New York law and did not provide them with meal and rest periods in violation of California, Kentucky, New York, Illinois, and Washington law. *See id.* Lastly, Plaintiffs claim that Defendant did not provide them with accurate and itemized wage statements, wages due upon termination, and accrued vacation as required by California law. *Id.*

Following Plaintiffs' filing of a motion for conditional collective action certification, the parties agreed to mediate. *Fees Mot.* 5:21-6:5. On May 13, 2014, the Parties mediated in Los Angeles with the help of mediator Michael Dickstein an attorney-mediator "specializing in wage and hour class actions." *Id.* 6:16-18. After twelve hours of mediation, the Parties executed a Memorandum of Understanding, which resulted in a formal settlement agreement. *Id.* 6:16-22. Plaintiffs state that the "settlement negotiations were at all times non-collusive, adversarial, and conducted at arm's-length." *Id.* 6:22-23.

A.      Proposed Settlement Agreement

Under the proposed Settlement Agreement, Defendant must pay up to $12 million as a Maximum Settlement Amount. *See Settlement Agreement* ¶ 71(d). However, under the Settlement Agreement, Class Members are entitled to recover only from the Net Settlement Amount. *Id.* ¶ 71(d)(i).

The Net Settlement Amount equals the Maximum Settlement Amount less: (1) attorneys' fees not to exceed $3,600,000; (2) litigation costs not to exceed $200,000; (3) a pool of up to $222,500 in incentive awards to be divided among Plaintiffs and potential class members who were deposed or submitted declarations in the litigation; (4) approximately $550,000 to the Claims Administrator to administer the Settlement; (5) the sum of $18,750 as a payment to the Labor and Workforce Development Agency; (6) a Reserve Fund of $50,000 for disputed and untimely claims; and (7) all legally required withholding and employer taxes on the settlement payments. *Id.* ¶ 71(d). Plaintiffs estimate that the Net Settlement Amount is approximately $7.5 million. *Response to Objections* 8:15-17.

The Settlement Agreement also contains a reversion clause. *See Settlement Agreement* ¶ 71(d)(x). Under this clause Class Members are entitled to 65% of the Net Settlement Amount regardless of how many individuals participate in the settlement, but any amount not claimed

_____

Kiaone Dillon, Michael Clark, Tyler Nicholes, and Shirley Wright (collectively "Plaintiffs").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1802 PSG (PLAx) | Date | August 4, 2015 |
|---|---|---|---|
| Title | Evan Hightower and Ann Ross v. JPMorgan Chase Bank, N.A. | | |

beyond 65% of the Net Settlement Amount is for Defendant.  *Id.*  Pursuant to the Settlement Agreement, any amount of money not awarded as attorneys' fees, litigation costs, or incentive awards will be added to the Net Settlement Amount.  *Settlement Agreement* ¶ 71(d)(viii).

According to the Settlement Agreement, the Net Settlement Amount will be divided among members of the Class in the following manner.  First, the Claims Administrator will determine the percentage of the Net Settlement Amount that will be allocated to each Covered Position – Personal Banker, Teller, SSA, or AMB Trainee – in each state. *See Settlement Agreement* ¶ 16, 71(d)(xi).  To determine the percentage allocated to each Covered position in each state:

> [T]he [Claims Administrator] will multiply the total number of workweeks in that state worked by Class Members and/or FLSA Collective Members in the Covered Position by the average weekly pay rate for the Covered Position in that state and by any applicable State Multiplier.[2]  The [Claims Administrator] will then divide that number by the sum of this calculation for all Covered Positions in all states.  The resulting percentage will be the percent of the Net Settlement Amount that will be allocated to all Class Members and/or FLSA Collective Members in the Covered Position in that state.

*Id.* ¶ 71(d)(xi).  Then, the individual settlement amount for each Class Member who submits a timely – within ninety days of receiving the claim form – and complete claim form "shall be determined by multiplying the percentage of total workweeks of a Covered Position in that state that were worked by the [Class Member who submits a claim form] by the percentage of the Net Settlement Amount allocated to the Covered Position in that state." *Id.*

Class members' employment date will be based on Defendant's employment records.  *Id.* ¶¶ 71(d)(viii).  Class members who wish to challenge those records must submit a challenge in writing to the Claims Administrator and will bear the burden of proof.  *Id.*  71(d)(viii), 88.  The Claims Administrator will inform Class Counsel as well as Defendant's Counsel of the challenge and following a conference with Class Counsel, Defendant will determine whether any additional amount is owed to the Class member making the challenge.  *Id.* ¶ 88.  In the event that Class members do not claim a minimum of 65% of the Net Settlement Amount, the different between the claimed amount and 65% of the Net Settlement Amount will be distributed pro rata to the Settlement Class Members and FLSA collective action members who submitted claims.

---

[2] The State Multipliers account for the additional state law claims released as part of this Settlement Agreement.  *Mot.* 10:7-9.  As such, workweeks in California and New York will be multiplied by 5, workweeks in Illinois, Washington, and Kentucky will be multiplied by 3, and workweeks in Arizona, Florida, Louisiana, Michigan, Ohio, Texas, and Wisconsin will be multiplied by 2.  *Settlement Agreement* ¶ 59.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1802 PSG (PLAx) | Date | August 4, 2015 |
|---|---|---|---|
| Title | Evan Hightower and Ann Ross v. JPMorgan Chase Bank, N.A. | | |

Upon final approval of the Settlement Agreement, Plaintiffs will be bound by a general release of all claims with a California Civil Code § 1542 waiver. *Id.* ¶ 97.[3] Class members – excluding those who opt-out of the Settlement Agreement – will waive claims in the following manner: (1) Class Members who work or worked in California,[4] Illinois, or New York will release "all state and local wage and hour claims and related or derivative claims" during the relevant Covered Period; (2) Class Members who work or worked in Arizona, Florida, Texas, Michigan, Ohio, Kentucky, Louisiana, Washington, or Wisconsin "agree to a release of all wage-hour and wage-hour related claims for unpaid wages (including but not limited to minimum wage, overtime, and straight time) under state law as alleged in the Fourth Amended Complaint during the relevant Covered Period[;]" and (3) Class Members who work or worked in Kentucky or Washington will further release "all meal and rest break claims under state law, as also alleged in the Fourth Amended Complaint during the relevant Covered Period." *Settlement Agreement* ¶ 110.   Only Class Members who submit a claim form, however, will waive any claims under the FLSA and the ones who do will release "all claims under the FLSA that are alleged, related to, or that reasonably could have arisen out of the same facts alleged in the Fourth Amended Complaint and the Complaint in each related Case." *Id.*

B.       Preliminary Approval and Class Certification for Settlement Purposes

Plaintiffs filed a motion for preliminary approval that the Court granted on February 3, 2015.  Dkt. # 190, *Prelim. Approval Order.*  The Court certified the following class for settlement purposes only:

> All persons employed by Defendant as a 'Personal Banker,' 'Teller,' 'SSA,' or 'ABM Trainee' in one of Defendant's branches in Arizona, California, Florida, Illinois, Kentucky, Louisiana, Michigan, New York, Ohio, Texas, Washington, and Wisconsin during the Covered Periods.[5]

---

[3] The Court takes note that Plaintiff Carolyn Salazar does not release any of the claims currently plead in the action styled *Henderson v. JPMorgan Chase Bank*, C.D. Cal. Case No. 11-cv-03428 PSG (PLAx).  *Settlement Agreement* ¶ 109.

[4] Class Members who worked in California further waive claims under California Civil Code Section 1542 for "claims that were alleged or that reasonably could have arisen out of the same fact alleged in the Fourth Amended Complaint" and under California Labor Code Section 2699. *Settlement Agreement* ¶ 110.  These class members do not release, however, claims pled in the action styled *Henderson v. JPMorgan Chase Bank*, C.D. Cal. Case No. 11-cv-03428PSG (PLAx).  *Id.*

[5] An SSA is a an employee who worked for any of Defendant's branches in a Sales & Service Associate or Operations Supervisor position during the Covered Period.  *See Settlement Agreement* ¶ 58.  An ABM Trainee is an employee who worked for any of Defendant's branches

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1802 PSG (PLAx) | Date | August 4, 2015 |
|---|---|---|---|
| Title | Evan Hightower and Ann Ross v. JPMorgan Chase Bank, N.A. | | |

*Settlement Agreement* ¶ 9.  The definition of "Covered Period" varies depending on the state in which the different branches are located.  *Id.* ¶ 15.  For branches in California the Covered Period is September 25, 2008 through the Date of Preliminary Approval; for branches in New York the Covered Period is July 20, 2005 through the Date of Preliminary Approval; and lastly, for branches in Arizona, Florida, Illinois, Kentucky, Louisiana, Michigan, Ohio, Texas, Washington, and Wisconsin the Covered Period is February 17, 2008 through the Date of Preliminary Approval.  *Id.*

Additionally, the Court appointed Plaintiffs' Counsel as Class Counsel, Plaintiffs as Class Representatives, and CPT, Inc. as Claims Administrator.  *Prelim. Approval Order.*

C.      Notice to Putative Class Members

After the Court grated preliminary approval, the Claims Administrator executed the notice plan by mailing out Notice Packets – which consisted of (1) a notice of settlement of class and collective action; (2) a settlement claim form; and (3) settlement opt-out forms – to putative class members.  *Declaration of Abel Morales* ("Morales Decl.") ¶ 2.  Additionally, the Claims Administrator "operated a toll-free telephone number for class members to call with inquiries concerning the settlement and the claims process."  *Settlement Mot.* 3:19-4:1; *Morales Decl.* ¶ 2.

On April 3, 2015, the Claims Administrator mailed the Notice Packets via U.S. first class mail to 149,487 putative class members.  *Morales Decl.* ¶ 7.  On May 18, 2015, the Claims Administrator mailed reminder postcards to 138,557 putative class members who had not submitted a claim or opt-out form.  *Id.* ¶ 8.  The Claims Administrator re-mailed Notice Packets to 3,398 putative class members as a "result of either a skip trace, forwarding address, or re-mail requests."  *July 31, 2015 Supplemental Declaration of Abel Morales* ("July 31, 2015 Morales Supp. Decl.") ¶¶ 3-4.

D.      Putative Class Members' Responses

Putative Class members had until July 2, 2015 to submit a claim or opt-out form.  *Morales Decl.* ¶ 18.  As of July 30, 2015, the Claims Administrator has received 32,695 responses.  *July 31, 2015 Morales Supp. Decl.* ¶ 5.  Out of those responses, 1,109 were opt-out forms.  *Id.* ¶ 7.  There are 18 "outstanding disputes with regards to the number of workweeks and/or employment dates provided on their Claim Form."  *Id.* ¶ 8.  Furthermore, the Claims

in an Assistant Branch Manager-Trainee position.  *Id.* ¶ 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1802 PSG (PLAx) | Date | August 4, 2015 |
|---|---|---|---|
| Title | Evan Hightower and Ann Ross v. JPMorgan Chase Bank, N.A. | | |

Administrator has received 119 deficient claim forms and a "deficiency letter has been mailed to these [putative] Class Members providing instructions as to how to cure the deficient Claim Form."  *Id.* ¶ 10.  The Claims Administrator has also received 315 invalid claim forms.  *Id.* ¶ 9.

31,247 individuals submitted valid claim forms as of July 30, 2015, which constitutes a total response rate of 20.90% and an "estimated claimed amount of $2,778,260.03, which equates to 37.75% of the Net Settlement Amount."  *Id.* ¶¶ 12-13.

> i.    *Objections to Settlement Agreement*

Nine individuals have filed objections to the Settlement Agreement:  Jose Yanez, Beatriz Cardona, LaChauraleighn Rosario, Thuy Nguyen, Mariella Guzman, Eva Salazar, Venessa Wheeler, Roman Gonzalez, and Fernando Hernandez.  Dkts. # 198, 199, 207, 208, 209, 210, 211, 212, 213.  Their objections can be grouped into two categories.

Jose Yanez and Beatriz Cardona (the "Cardona Objectors") argue that the Settlement Agreement is inadequate for three main reasons: (1) the Notice of Settlement does not tell putative Class Members that the Settlement Agreement will extinguish claims made in a pending lawsuit styled *Yanez v. J.P. Morgan Chase Bank NA*, No. 11-CV-8217 PSG (PLAx) ("*Yanez*"); (2) the release in the Settlement Agreement is overbroad because it releases claims that were not asserted in the Complaint; and (3) it does not provide putative Class Members who would also be class members in the *Yanez* action with additional consideration "for release of the factually distinct claims asserted in *Yanez* that were not asserted, investigated or litigated in the Hightower lawsuit."  Dkts. 198, 1999, *Cardona Objections* 1:10-22.[6]

LaChauraleighn Rosario, Thuy Nguyen, Mariella Guzman, Eva Salazar, Venessa Wheeler, Roman Gonzalez, and Fernando Hernandez (collectively, the "Rosario Objectors") object to the Settlement Agreement because they aver that: (1) the Parties have not provided any justifiable reasons for the proposed incentive awards to Plaintiffs and other Class Members; (2) the Reversion Clause renders the Settlement Agreement inadequate; (3) "the methodology for calculating settlement shares is neither fair nor reasonable[;]" and (4) the request for attorneys' fees is unreasonable.  Dkts. # 207, 208, 209, 210, 211, 212, 213, *Rosario Objections* 4:16-5:17.

Plaintiffs now seek final approval of the class settlement agreement.  Dkt. # 214.

---

[6]Plaintiffs and Counsel for the Cardona Objectors informed the Court during the Fairness Hearing that the Parties and the Cardona Objectors have reached an agreement regarding the Cardona Objections and that the Cardona Objectors will withdraw their objections within 60 days.  *See also* Dkt. # 217, *Plaintiffs' Response to the Objections of Class Members Beatriz Cardona and Jose Yanez.*  Accordingly, the Court will not address these objections at this moment and APPROVES the settlement agreement subject to the objections being withdrawn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1802 PSG (PLAx) | Date | August 4, 2015 |
|---|---|---|---|
| Title | Evan Hightower and Ann Ross v. JPMorgan Chase Bank, N.A. | | |

Additionally, Plaintiffs seek $3.6 million in attorneys' fees, $140,000 in costs, and service enhancements to the Lead Plaintiffs, Additional Named Plaintiffs, Deponents, and Declarants. Dkt. # 194.

II. Discussion

A. Final Approval of the Class Action Settlement

i. *Legal Standard*

A court may approve a class action settlement "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(a)(2). In determining whether a settlement is fair, reasonable, and adequate, the district court must "balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1026 (9th Cir. 1998); *see Staton v. Boeing Co.*, 327 F. 3d 938, 959 (9th Cir. 2003). In addition to exploring these factors, the Court will also explore whether the settlement is a product of collusion among the negotiating parties. *See In re Bluetooth Headset Prods. Liab. Litig*, 654 F. 3d 935, 947 (9th Cir. 2011).

The Court must approve or reject the settlement as a whole. *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The Court may not delete, modify, or rewrite particular provisions of the settlement. *Id.* The Court must recognize that the settlement "is the offspring of compromise [,] [and] the question . . . is not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at 1027.

ii. *Discussion*

The Court has reviewed the submissions made by the Parties as well as the nine objectors and concludes, after balancing all of the factors described above, that the Settlement Agreement is fair, reasonable, adequate, and free from collusion. *See* Fed. R. Civ. P. 23(a)(2); *Hanlon*, 150 F.3d at 1026.

a. *Strength of Plaintiffs' Case*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1802 PSG (PLAx) | Date | August 4, 2015 |
|---|---|---|---|
| Title | Evan Hightower and Ann Ross v. JPMorgan Chase Bank, N.A. | | |

Although Plaintiffs believe that they have strong claims against Defendant, they are cognizant that they face many challenges that could lead to a significantly lower recovery for class members. *See Settlement Mot.* 2:10-12 ("The relief offered by the Settlement is particularly impressive when viewed against the difficulties encountered by Plaintiffs pursuing wage and hour cases."); *see also In re Heritage Bond Litig.*, 2005 WL 1594403, at \*7 (C.D. Cal. 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced.") (citations omitted).

Plaintiffs' claims are grounded on their allegation that Defendant violated various state and federal employment laws by not paying its employees certain minimum and overtime wages, not proving meal and rest breaks in violation of certain state laws, and not reimbursing them for certain expenses in violation of certain state laws. *See Compl.* Although Plaintiffs contend that they have a strong case against Defendant, they are aware of their own weaknesses and the various defenses that Defendant could mount challenging both class certification as well as the merits of Plaintiffs' claims. *Settlement Mot.* 10:8-11:25. For example, as Plaintiffs describe in the present motion for final class settlement approval, and in their confidential memorandum in support of preliminary approval, Defendant could present very strong arguments opposing class certification – including, *inter alia*, Defendant's potential argument that certification is not appropriate because Defendant had "facially compliant written policies" and Defendant's potential argument that "there are no common issues based on the wide variation in Chase's branch layout, customer volume, foot traffic, and number of employees." *Settlement Mot.* 10:18-13; *Pffs.' Supp. Mem.* 6:19-9:9.

As discussed in the Court's Preliminary Approval Order, Plaintiffs are also aware of the significant obstacles that the "Binding Arbitration Agreement" contained in Defendant's employment packages could bring to both class certification and the merits of Plaintiffs' case. *Settlement Mot.* 11:17-25; *Pffs.' Supp. Mem.* 4:11-5:13. In fact, the Court has already granted motions to compel certain of Defendant's employees to individual arbitration. *Settlement Mot.* 11:22-25.

After considering Plaintiffs' motion, as well as the confidential memoranda submitted by the Parties in connection with the motion for preliminary approval, the Court agrees that this factor weighs in favor of approving the Settlement Agreement. *See Settlement Mot.; Pffs.' Supp. Mem.*

> b. *Risk, Expense, Complexity, and Duration of Further Litigation*

In light of the "strong judicial policy that favor[s] settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), the Court finds that this factor weighs in favor of approval of the settlement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1802 PSG (PLAx) | Date | August 4, 2015 |
|---|---|---|---|
| Title | Evan Hightower and Ann Ross v. JPMorgan Chase Bank, N.A. | | |

The Court agrees with Plaintiffs that employment cases – especially class actions – are expensive and time-consuming to prosecute. *Settlement Mot.* 12:8-10. The Parties have already expended many resources litigating this lawsuit – through multiple rounds of motions to dismiss and certification briefing – and would expend many more if they continued pursuing this action. Without a Settlement Agreement, were Plaintiffs to continue litigating this lawsuit, the Parties would likely engage in a certification motion, motions for summary judgment, and perhaps trial. The Settlement Agreement, "on the other hand, provides to all Class Members, regardless of their means, the opportunity for a monetary recovery in a prompt and efficient manner, without the risk of the Court denying class certification and the resultant recovery of nothing at all." *Settlement Mot.* 12:15-18.

          c.       *Risk of Maintaining Class Action Status Through Trial*

Although the Court has certified the Class, certification was for settlement purposes only. *Prelim. Approval Order.* Under Federal Rule of Civil Procedure 23(c)(1)(C) an "order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Plaintiffs are aware of the "significant hurdles they would have . . . to overcome in order to obtain and maintain class status." *Settlement Mot.* 11:17-18. As discussed above, Defendant could present strong arguments opposing class certification. Furthermore, Plaintiffs fear that Defendants could "cripple" the class action by moving to compel Class Members to individual arbitration. *Id.* 11:20-22.

          d.       *Amount Offered in Settlement*

Under the Settlement Agreement, Defendant is to contribute a total of $12 million as a Maximum Settlement Amount. *See Settlement Agreement* ¶ 71(d).

"[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F. 2d 615, 624 (9th Cir. 1982) (citations omitted). In that vein, the Ninth Circuit has explained that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625 (citations omitted). Rather, any analysis of a fair settlement amount must account for the risks of further litigation and trial, as well as the expenses and delay associated with continued litigation.

The Court is satisfied that the ultimate settlement amount of $12 million is reasonable considering the circumstances of this case. The Court took a very close look at the Parties'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1802 PSG (PLAx) | Date | August 4, 2015 |
|---|---|---|---|
| Title | Evan Hightower and Ann Ross v. JPMorgan Chase Bank, N.A. | | |

respective opinions regarding the value and merits of this case during the preliminary approval
stage and continues to find that this amount is reasonable in light of the challenges described
above.  *See Preliminary Approval Order* at 13; *see also Pffs.' Supp. Mem.; Def.'s Supp. Mem.*;
*Aarons v. BMW of N. Amer., LLC*, No. CV 11-7667 PSG (CWx), 2014 WL 4090564, at *11
(C.D. Cal. 2014) (noting that while settlements will not make most class members completely
whole, class members will "discount their claims to obtain a certain and timely recovery, rather
than bear the significant risk and delay associated with further litigation").

       The Rosario Objectors argue that the reversion clause described above renders this
settlement agreement unfair and indicates that the settlement agreement "was not a product of
arms-length negotiations in which the class's interests were considered a priority."  *See Rosario
Objections* 9:17-10:15.  The Court is sensitive to these concerns and, in fact, ordered the Parties
to address this clause before preliminarily approving the settlement agreement.  Dkt. # 179.  A
reversion clause certainly makes the Court suspicious, but in this instance, after reviewing the
respective positions of the Parties, and considering the many weaknesses of Plaintiffs' case, the
Court is persuaded that the reversion clause does not make the Settlement Agreement unfair nor
does it show collusion among the parties.  *See Pffs.' Supp. Mem.; Def.'s Supp. Mem.*  Plaintiffs
would likely not have been able to negotiate a maximum amount of even $12 million without
this clause and have taken methods to increase participation in the Settlement Agreement.  For
example, Plaintiffs caused Notice Packets to be mailed to over 145,000 putative class members
and then reminder post cards a month later to those putative class members who had not
responded.  *Morales Decl.* ¶¶ 7-8.

       The Court is also not persuaded that the method utilized to calculate Class Members'
claim amounts renders the Settlement Agreement unfair as the Rosario Objectors contend.
*Rosario Objections* 10:16-11:11.  Specifically, the Rosario objectors take issue with the fact that
"the settlement amount received by an individual depends, in part, on the number of class
members working the same position in the same state."  *Rosario Objections* 10: 21-22.  The
Rosario Objectors argue that:

       Had a proper damages calculation been conducted for each class member, an easy task
       given the availability of specific figures for each class member's rate of pay and number
       of weeks of service, then appropriate settlement amounts could have been calculated
       based on each class member's actual damages discounted *pro rata* for the risk of going
       forward.

*Rosario Objections* 11:5-9.  As Plaintiffs point out, however, requiring the Parties to undergo a
damages calculation would require the retention of "high-priced experts" because calculating
damages on an individual basis is not an "easy task" as the Rosario Objectors contend.  *Pff.'s*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1802 PSG (PLAx) | Date | August 4, 2015 |
|---|---|---|---|
| Title | Evan Hightower and Ann Ross v. JPMorgan Chase Bank, N.A. | | |

*Response to Rosario Objectors* 3:13-21.  Requiring Plaintiffs to "assess each class member's individual damages . . . would needlessly increase the cost and duration of the litigation and would eliminate many of the incentives for settlement." *Id.* 3:27-4:2.  Furthermore, in the notice that was sent out to putative class members, Plaintiffs explained how each class members' damages would be calculated. *See Proposed Notice.*  Therefore, there is no evidence that Plaintiffs sought to deceive putative class members in any way and Plaintiffs gave putative class members the opportunity to decide whether to participate in the Settlement Agreement.

> *e.      Extent of Discovery and Stage of Proceedings*

This factor requires the Court to gauge whether Plaintiffs have sufficient information to make an informed decision about the merits of their case. *See In re Mega Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000).  The more discovery that has been completed, the more likely it is that the parties have "a clear view of the strengths and weaknesses of their cases." *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks and citation omitted).

Here, the "settlement before this Court is the product of extensive discovery." *Settlement Mot.* 9:9-10.  As Plaintiff's explain:

> With the benefit of the significant exploration of facts and law during the prosecution and discovery phase of the case, and the benefit of voluminous briefing on the issue of class certification, and this Court's ruling on Defendant's motion to compel arbitration, Class Counsel were able to fully consider the strengths and weaknesses of their case.

*Id.* 9:14-18.  Plaintiffs, then, did not negotiate this Settlement Agreement in a vacuum, but were "able to fully consider the strengths and weaknesses of their case." *Id.* 9:17-18.  This factor weighs in favor of granting final approval.

> *f.      Experience and Views of Counsel*

The recommendations of Plaintiffs' counsel are given a presumption of reasonableness. *See, e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted).  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re. Pac. Enter Sec. Litig.*, 47 F. 3d 373, 378 (9th Cir. 1995).

Here, Class Counsel negotiated this Settlement Agreement only after it had "weighed the total possible Class recovery . . . against many risk factors" and concluded that this Settlement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1802 PSG (PLAx) | Date | August 4, 2015 |
|---|---|---|---|

| Title | Evan Hightower and Ann Ross v. JPMorgan Chase Bank, N.A. |
|---|---|

Agreement is fair and reasonable. *Settlement Mot.* 10:8-17. Furthermore, Plaintiffs' Counsel submit that they are "seasoned attorneys with considerable experience in wage and hour class actions," that they "regularly litigate wage and hour claims throughout certification and on the merits, and have considerable experience settling wage and hour class actions" and after reviewing the declarations submitted by Class Counsel, the Court sees no evidence to the contrary. *Fees Mot.* 19:18-20:1. Consequently, this favor weighs in favor of final approval.

> g.    *Presence of Governmental Participation*

This factor is neutral, as no government entities are participating in this case.

> h.    *Reaction of Class Members*

1,109 individuals opted out the Class – which represents less than one percent of the class – and nine individuals objected to the settlement. *See July 31, 2015Morales Decl.* ¶7. More than 31,000 individuals, on the other hand, have filed Class claims. *Morales Supp. Decl.* ¶ 12. Overall, the Court finds this response to be positive, which suggests that the Class finds the settlement to be fair, reasonable, and adequate. *See Churchill Vill., LLC v. Gen Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming district court's approval of settlement agreement where, out of 90,000 notified class members, there were 500 opt-outs and 45 objectors); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862 (N.D. Cal. 2007) (approving settlement agreement with 2% opt-out rate); *Chun-Hoon v. McKee Foods. Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (concluding that the "reaction of class members to the proposed settlement, or perhaps more accurately the absence of a negative reaction, strongly supports settlement."). Moreover, the Court is not persuaded – as explained throughout this order – by any of the objections that the settlement is unfair.

Accordingly, considering that class members have claimed around 37% of the Net Settlement Amount, this factor weighs slightly in favor of final approval.

> i.    *Collusion Among the Negotiating Parties*

The Court also finds that the Settlement Agreement is free from collusion, which weighs in favor of settlement approval. The Ninth Circuit puts "a good deal of stock in the product of arms-length, non-collusive, negotiating resolution . . ." *Rodriguez v. W. Publ'g Corp.*, 563 F. 3d 948, 965 (9th Cir. 2009).

Here, Parties have submitted memoranda assuring the Court that the Settlement Agreement is a product of arms-length, non-collusive negotiations. *See Settlement Mot.* 9:9-20;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1802 PSG (PLAx) | Date | August 4, 2015 |
|----------|------------------------|------|----------------|

| Title | Evan Hightower and Ann Ross v. JPMorgan Chase Bank, N.A. |
|-------|----------------------------------------------------------|

*Pff.'s Supp. Mem.; Def.'s Supp. Mem.* The Court sees no evidence to the contrary, especially considering that the "Parties negotiated the Settlement . . . under the guidance of Mr. Michael Dickenstein, a well-regarded mediator specializing in resolving wage and hour class actions." *Settlement Mot.* 2:6-8.

After weighing all of the factors described above and considering all of the submissions, including the objections, the Court finds that the settlement is fair, reasonable, and adequate. Final approval of the settlement is GRANTED subject to the Cardona Objectors withdrawing their objections.

 B. Motion for Attorneys' Fees and Costs

Plaintiffs request the following to be disbursed from the Maximum Settlement Amount: (1) $3.6 million in attorneys' fees (which constitutes approximately 30% of the total settlement fund); and (2) $140,000 in litigation expenses. *Fees Mot.* 1:12-19; 2:11-16. The Court notes that it considers the Rosario Objector's averment that the Attorneys are not entitled to the attorneys' fees that they are requesting as it assesses the reasonableness of Plaintiffs' request. *See Rosario Objections* 11:12-21.

 i. *Legal Standard*

Awards of attorneys' fees in class action cases are governed by Federal Rule of Civil Procedure 23(h), which provides that after a class has been certified, the Court may award reasonable attorneys' fees and nontaxable costs. The Court "must carefully assess" the reasonableness of the fee award. *See Staton*, 327 F. 3d at 963; *see also Browne v. Am. Honda Motor Co., Inc.*, No. CV 09-06750 MMM (DTBx), 2010 WL 9499073, at *3-5 (C.D. Cal. Oct. 5, 2010) (explaining that in a class action case, the court must scrutinize a request for fees when the defendant has agreed to not oppose a certain fee request as part of a settlement).

Where litigation leads to the creation of a common fund, as it does here, courts can determine the reasonableness of a request for attorneys' fees using either the common fund method or the lodestar method. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F. 3d 935, 942, 944-45 (9th Cir. 2011) (finding that when a settlement establishes a common fund for the benefit of a class, courts may use either the lodestar method or the percentage-of-recovery method to gauge the reasonableness of a fee request, but encouraging courts to employ a second method as a cross-check after choosing a primary method.). Here, the Court will rely primarily on the common fund method and then will cross-check the reasonableness of the award using the lodestar method. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (noting that "while the primary basis of the fee award remains the percentage method, the lodestar may

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1802 PSG (PLAx) | Date | August 4, 2015 |
|---|---|---|---|

| Title | Evan Hightower and Ann Ross v. JPMorgan Chase Bank, N.A. |
|---|---|

provide a useful perspective on the reasonableness of a given percentage award"); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (writing that the Ninth Circuit has "determined that the choice between lodestar and percentage calculation depends on the circumstances, but that 'either method may . . . have its place in determining what would be reasonable compensation for creating a common fund'").

### ii. Discussion

Under the percentage-of-recovery method, courts typically calculate 25% of the fund as a benchmark for a reasonable fee award. *See In re Bluetooth*, 654 F.3d at 942 ("courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award").[7]  The percentage can range, however, and Courts have awarded more than 25% of the fund as attorneys' fees when they have deemed a higher award to be reasonable. *See Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, at * 8 (S.D. Cal. 2010) (finding an award of 33.3% percent of the common fund to be reasonable because class counsel took the case on a contingent basis and litigated for two years, awards usually range from 20% to 50%, and no class member objected to the award); *Gardner v. GC Services, LP*, 2012 WL 1119534, at *7 (S.D. Cal. 2012) (finding that a departure from the 25% benchmark was reasonable when 1) the results achieved for the class were very favorable, 2) the risks of litigation were substantial, and 3) the case was complex).

When assessing the reasonableness of a fee award under the common fund theory courts consider, *inter alia*, "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Omnivision Technologies*, 559 F. Supp. 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043, 1048-50 (9th Cir. 2002)).

After considering the factors delineated above, the Court finds that Plaintiffs' request of 30% of the maximum settlement amount, which constitute a departure from the 25% benchmark, is warranted in this instance.

For example, the results achieved, a $12 million maximum settlement amount for approximately 145,000 individuals, in light of the risks of further litigation elaborated upon

---

[7]The Court notes that in calculating attorneys' fees using the common fund method, it is appropriate to take a percentage of the Gross Settlement Amount, not of the amount claimed by the Class Members. *See Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980), 480-81 (finding that under the common-fund doctrine class counsel are entitled to a reasonable fee based on the funds "awarded to the prevailing class").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1802 PSG (PLAx) | Date | August 4, 2015 |
|---|---|---|---|
| Title | Evan Hightower and Ann Ross v. JPMorgan Chase Bank, N.A. | | |

above, support a departure from the 25% benchmark.  As Plaintiffs contend, the "relief offered by the settlement is particularly valuable when viewed against the difficulties encountered by [p]laintiffs pursuing wage and hour cases." *Fees Mot.* 13:24-26.  This is especially true considering the Parties' respective positions of the value of Plaintiffs' case.  *See Def.s' Supp. Mem.* 18:3-20; *Pff.'s Supp. Mem.* 4:2-6.

Additionally, the Court is sensitive to the reality that in many employment cases, "[i]n light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims." *Leyva v. Medline Indus.*, 716 F.3d 510, 515 (9th Cir. 2012).  Here, the Settlement Agreement gives Class Members the opportunity to obtain some recovery without litigating individual claims and without relying on Plaintiffs maintaining class status throughout trial.  As Plaintiffs state, too, "the Defendant is now obviously incentivized to better enforce [compliance with important workplace regulations] within its organization." *Fees Mot.* 14:4-8.

The risk of further litigation, coupled with the contingent basis on which Class Counsel took this case, supports Plaintiffs' fee request.  The Court agrees with Plaintiffs that any "law firm undertaking representation of a large number of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy, and resources" "with the very real possibility of an unsuccessful outcome and no fee recovery of any kind." *Fees Mot.* 15:9-17; *see Vizcaino*, 290 F.3d at 1051 ("attorneys whose compensation depends on their winning the case must make up in compensation in the cases they win for the lack of compensation in the cases they lose").

As the Court expounded above, the risk of no recovery for Plaintiffs, as well as for Class Counsel, if they continued to litigate, were very real. Plaintiffs contend that their "claims were well suited for certification" but are very aware of the arguments that Defendants could mount against them both in terms of class certification and the merits of their claims. *Fees Mot.* 17:16-23.

The skill required and the quality of the work performed also support Plaintiffs' fee request.  The Court has reviewed the declarations filed by Class Counsel and agrees that Class Counsel "regularly litigate wage and hour claims through certification and on the merits, and have considerable experience settling wage and hour class actions." *Fees Mot.* 19:20-23; *see Declaration of Raul Perez* ¶¶ 13-17; *Declaration of D. Maimon Kirschenbaum* ¶¶ 9-22; *Declaration of David Harrison* ¶¶ 9-17; *Declaration of Marcus J. Bradley* ¶¶ 10-15.  The Court also appreciates the tremendous amount of work that Class Counsel engaged in during this litigation through multiple motions to dismiss as well as class certification briefing. *Fees Mot.* 20:2-20.  It is clear from the procedural history in this case that Defendant presented strong

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1802 PSG (PLAx) | Date | August 4, 2015 |
|---|---|---|---|

| Title | Evan Hightower and Ann Ross v. JPMorgan Chase Bank, N.A. |
|---|---|

defenses and challenges for Plaintiffs and Class Counsel was still able to negotiate a reasonable settlement on Plaintiffs' behalf.

Lastly, an award of 30% is consistent with awards granted in similar complex litigation. *See, e.g.*, *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) (finding that attorneys' fees award of 33% of the settlement fund was appropriate in wage and hour class action settlement); *Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856 (C.D. Cal. 2008) (awarding 34% of common fund in attorneys' fees in wage and hour class action settlement).

Plaintiff's request is reasonable under the common fund theory.

### iii.    *Lodestar Cross-Check*

Having determined that Plaintiffs' fee request is reasonable under the common fund method, the Court now assesses the request under the lodestar analysis. Plaintiffs submit that under the lodestar method, they are entitled to $3,594,640 and that their request of $3.6 million results in a multiplier of 1.1.

To determine attorneys' fees under the lodestar method a court must first calculate the lodestar by "multiplying the reasonable hours expended by a reasonable hourly rate. The Court may then enhance the lodestar with a 'multiplier,' if necessary, to arrive at a reasonable fee." *In re Washington Public Power Supply System Securities Litig.*, 19 F. 3d 1291, 1294 n.2 (9th Cir. 1994) (citations omitted).

### a.    *Reasonable Rate*

Class Counsel's requested billing rates are, for the most part, reasonable. The requested rates, as delineated in Class Counsel declarations vary by attorney and by law firm, which the Court finds appropriate. *See Bradley Decl.* ¶¶ 25, 26; *Perez Decl.* ¶ 18; *Kirschenbaum Decl.* ¶ 25; *Harrison Decl.* ¶ 20. To determine what rate is "reasonable," courts look to "prevailing market rates in the relevant community." *See Blum v. Stevenson*, 465 U.S. 886, 895 (1984); *see also Davis v. City & Cnty. of S.F.*, 976 F.2d 1536, 1545 (9th Cir. 1992). The requested rates are mostly consistent with the market rate for someone with Class Counsels' credentials and practice specialties as calculated using the model in the 2014 Real Rate Report ("Real Rate Report"), a CEB and TyMetrix publication that identifies attorney rates based on actual legal billing and paid invoices. *See, e.g., Hicks v. Toys 'R' Us-Delaware, Inc.*, Nos. CV 13-1302-DSF (JCGx), EDCV 13-1159 DSF (JCGx), 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014) (relying on the Real Rate Report). For example, while Attorney Marcus J. Bradley requests a billing rate of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1802 PSG (PLAx) | Date | August 4, 2015 |
|---|---|---|---|

| Title | Evan Hightower and Ann Ross v. JPMorgan Chase Bank, N.A. |
|---|---|

$750 per hour, the Court finds that the rate should be closer to $620 per hour.  *See Bradley Decl.*
¶¶ 25, 26.  However, because the Court finds it appropriate to apply a positive multiplier
considering many of the factors described above, it finds that the rate is reasonable under these
circumstances.

> *b.*     *Reasonable Hours Expended*

With regard to the hours expended, an attorney award should include compensation for all
hours reasonably expended prosecuting the matter, but "hours that are excessive, redundant, or
otherwise unnecessary" should be excluded.  *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F. 3d
1132, 1135 (9th Cir. 2012).

Here, Class Counsel state that they have expended 6,636 hours litigating this matter.
*Fees Mot.* 22:20-22.  Class Counsel has not provided the Court with an itemized list of the
different tasks for which they request fees.  *See Bradley Decl.* ¶¶ 25, 26; *Perez Decl.* ¶ 18;
*Kirschenbaum Decl.* ¶ 25; *Harrison Decl.* ¶ 20.  However, considering that this litigation has
been ongoing for more than four years, and the many tasks that Class Counsel has described, the
Court is satisfied that the claimed amount of hours are reasonable.  *See In re Immune Response
Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ("Although counsel have not provided a
detailed cataloging of hours spent, the Court [finds] the information provided to be sufficient for
purposes of lodestar cross-check.").  Among other tasks, Class Counsel have "[exchanged]
multiple sets of written requests for discovery . . . [analyzed] . . . more than three million payroll
records, seven million time-clock records, and 200 million transactions records . . . [prepared]
and [filed] an extensive and comprehensive motion for class certification . . . [and] [taken and
defended] many depositions, including 4 depositions of Defendant's 30(b)(6) witnesses, the
deposition of Plaintiffs' statistical expert . . . and the depositions of more than 30 Class Members
which were taken in 12 different states."  *Fees Mot.* 1:23-2:8.  Even if the Court felt inclined to
discount the number of hours expended by a small percentage to account for duplication,  it finds
a positive multiplier to be warranted in this case.

> *c.*     *Multiplier*

The Court finds it appropriate to enhance the lodestar by a positive multiplier.  Here,
Plaintiffs request a 1.1 multiplier, and the Court agrees that the multiplier is reasonable "given
the impressive results achieved for the Class and the risks and complexity of the litigation."
*Fees Mot.* 23:17-19.

> *iv.*     *Litigation Costs*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1802 PSG (PLAx) | Date | August 4, 2015 |
|---|---|---|---|
| Title | Evan Hightower and Ann Ross v. JPMorgan Chase Bank, N.A. | | |

In addition to attorneys' fees, Plaintiffs also request reimbursement of expenses incurred throughout litigation.  Plaintiffs request $140,000 in litigation costs.  *Fees Mot.* 24:18-25:7.  The litigation expenses for which Plaintiffs seek reimbursement include filing fees, deposition expenses, private investigation fees, and travel expenses. *Kirschenbaum Decl.* ¶ 28; *Bradley Decl., Ex. B*; *Perez Decl.* ¶ 22; *Harrison Decl.* ¶ 23.  The Court has reviewed Class Counsels' costs and is satisfied that they are reasonable.

Resultantly, the Court GRANTS Plaintiffs' motion for attorneys' fees and costs.

D.      Incentive Awards

Plaintiffs also request incentive awards for Plaintiffs and certain class members "who actively participated in this litigation."  *Fees Mot.* 2:13-15.  Specifically, Plaintiffs seek (1) $10,000 for each of the Lead Plaintiffs[8]; (2) $7,500 for each of the Additional Named Plaintiffs;[9] (3) $1,000 for each class member who was "deposed in connection with declarations they filed in support of Plaintiffs' Motion for Class Certification;" and (4) $500 for class members who submitted declarations in support of the same.  *Fees Mot.* 26:13-18.  This request makes up only 1.5% of the maximum settlement fund.  *Response to Objections* 11:3-4.  In assessing the reasonableness of this request, the Court is sensitive to the Rosario Objectors' arguments that these awards are excessive.  *Rosario Objections* 7:18-9:16.

"Incentive awards are fairly typical in class action cases."  *Rodriguez v. W. Publ'g Corp.*, 563 F. 3d 948, 958 (9th Cir. 2009) (citations omitted); *see In re Toys R Us-Delaware, Inc. Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014). When considering requests for incentive awards, courts consider five principal factors: (1) the risk to the class representative in commencing suit, both financial and otherwise ; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Van Vraken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

---

[8] According to the Settlement Agreement, Lead Plaintiffs are: Evan Hightower, Ann Ross, Carolyn Salazar, Roger Al-Chaikh, Dennis Khutorestky, Boris Shulman, and Tanesha Gunn. *See Settlement Agreement* ¶ 71(d)(iii).

[9]The Settlement Agreement lists the following individuals as Additional Named Plaintiffs: Regina Simpson, Regina Sturdivant, Estela Slikker, Marlena Gelbart, Malcolm Sweet, Michelle Nguyen, Shirley Wright, Scarleth Diaz, Jean Thompson, Kiaone Dillon, Joshua Groce, Michael Clark, Wendy McWilson, Tyler Nicholes, Latoya Stewart, Janet Rebholz, and Jose Yanez. *See Settlement Agreement* ¶ 71(d)(iii).  Plaintiffs inform the Court that Mr. Yanez will not receive an enhancement award because he did not sign the Settlement Agreement.  *Settlement Mot.* 7 n.6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1802 PSG (PLAx) | Date | August 4, 2015 |
|---|---|---|---|
| Title | Evan Hightower and Ann Ross v. JPMorgan Chase Bank, N.A. | | |

As an initial matter, the Court notes that the enhancement awards, which constitute 1.5% of the maximum settlement amount, do not significantly reduce the amount of settlement funds available to the rest of the class. *See West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *12 (E.D. Cal. June 13, 2006) (finding that enhancement payment was not unfair when it would not "significantly reduce the amount of settlement funds available to the rest of the class"). Furthermore, a review of the factors described above persuades the Court that the incentive awards are not impermissibly large. Plaintiffs have submitted declarations detailing their "respective contributions to the litigation" assuring the Court of their meaningful contribution to this litigation. *See* Dkt. # 175-7 ("Plaintiffs' Declarations"). As the Court noted in its *Preliminary Approval Order*:

> Plaintiffs have been actively involved in the litigation . . . and have agreed to releases that are much broader [than] the releases required of Class Members . . . The varying incentive awards seem warranted as the Lead Plaintiffs and Additional Named Plaintiffs assisted in different ways and for different amounts of time. *See generally Plaintiffs' Declarations* . . . A significantly smaller amount for putative class members who were deposed or provided declarations also seems reasonable in comparison with Plaintiffs who searched for documents during discovery and risk potential stigma by participating in this litigation as Named Plaintiffs.

*Preliminary Order* at 17. The Court, like the Rosario Objectors, was suspicious of the disparity between the estimated claim amounts for Class Members and the incentive awards for Lead and Additional Named Plaintiffs. *See id.* at 17-18. However, the Court is persuaded that these incentive awards are appropriate considering the proportion of the settlement that is spent on incentive awards and the work that Plaintiffs have contributed during more than four years of litigation. *See In Re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 947 (9th Cir. 2015) (affirming a district court granting incentive awards that were 417 larger than class member individual awards and noting that it focused on "the number of class representatives, the average incentive award amount, and the proportion of the total settlement that is spent on incentive awards").

Accordingly, the Court GRANTS Plaintiffs' motion for incentive awards.

III.    Conclusion

For the reasons stated above the Court GRANTS Plaintiffs' motion for final class settlement approval and GRANTS Plaintiffs' motion for attorneys' fees, costs, and incentive awards subject to the Cardona Objectors' withdrawal of their objections. Plaintiffs are ordered to submit supplemental briefing and a proposed order regarding the Cardona Objectors. The hearing on the Cardona Objections is set for **October 5, 2015 at 1:30pm**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1802 PSG (PLAx) | Date | August 4, 2015 |
|---|---|---|---|
| Title | Evan Hightower and Ann Ross v. JPMorgan Chase Bank, N.A. | | |

**IT IS SO ORDERED.**